Ari Holtzblatt (SBN 354631)
Claire Bergeron (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
ari.holtzblatt@wilmerhale.com
claire.bergeron@wilmerhale.com

Noah S. Guiney (SBN 324079)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1151
Facsimile: (628) 235-1001
noah.guiney@wilmerhale.com

*Attorneys for Defendant X Corp.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DON LEMON, <br><br> Plaintiff, <br><br> v. <br><br> ELON MUSK; X CORP. DOING BUSINESS IN CALIFORNIA AS X CORP., A NEVADA CORPORATION; and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No. 3:24-cv-06487-MMC <br><br> **DEFENDANT X CORP.'S COMBINED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Filed concurrently with [Proposed] Order]* <br><br> Hon. Maxine M. Chesney <br> Courtroom 7 <br> Hearing Date: November 1, 2024 <br> Time: 9:00 AM |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 2

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

I.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR
    FAILURE TO STATE A CLAIM ....................................................................................... 4

    A.  Plaintiff Fails To State A Breach Of Contract Claim ............................................... 5

        1.  Plaintiff Does Not Plead Whether The Alleged Contract Is Written
            Or Oral ........................................................................................................ 5

        2.  The Contract Is Barred By The Statute of Frauds ....................................... 6

        3.  Plaintiff Does Not Plausibly Allege A Contract .......................................... 7

        4.  Plaintiff Does Not Allege That He Performed Under The Contract .......... 11

    B.  Plaintiff's Fraud Claim Should Be Dismissed ......................................................... 11

        1.  Statement About "No Need" for a Formal Written Agreement ................. 11

        2.  Statement About Plaintiff Having "Full Authority and Control"
            Over His Work .......................................................................................... 15

    C.  Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed ................... 16

    D.  Plaintiff Fails To State Claims For Commercial Misappropriation ........................ 17

        1.  Plaintiff Consented Through His Conduct ................................................. 17

        2.  Plaintiff Does Not Plausibly Allege Any Injury ........................................ 18

    E.  Plaintiff's Unjust Enrichment Claim Should Be Dismissed ................................... 19

II.  PLAINTIFF'S CLAIMS SHOULD BE STRUCK UNDER CALIFORNIA'S
    ANTI-SLAPP STATUTE .................................................................................................. 19

    A.  Plaintiff's Claims Fall Under the Anti-SLAPP Statute .......................................... 20

        1.  X's Decision To Not Feature Plaintiff's Content on Its Platform Is
            Protected Speech And X's Conduct Furthers the Exercise of That
            Right ......................................................................................................... 20

        2.  Plaintiff's Claims Arise From X's Covered Conduct ................................ 22

        3.  X's Covered Conduct Is In Connection With an Issue of Public
            Interest ...................................................................................................... 24

    B.  Plaintiff Cannot Establish A Probability of Prevailing on His Claims ................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONCLUSION.................................................................................................................25

CERTIFICATE OF SERVICE .....................................................................................27

- ii -

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Tr. Co. v. Kindsfater*,
  9 Cal. Rptr. 840 (Ct. App. 1960) ................................................................6

*A.R. Thomson Grp. v. Harbor Seal Inc.*,
  2020 WL 6436967 (C.D. Cal. Sept. 23, 2020) .............................................7

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
  2018 WL 598689 (C.D. Cal. June 8, 2018) .................................................10

*Arif Khan Global, Inc. v. State Bank of India*,
  2023 WL 6138348 (Cal. Ct. App. Sept. 20, 2023) ......................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................4

*Bily v. Arthur Young & Co.*,
  834 P.2d 745 (Cal. 1992) .............................................................................13

*City Sols., Inc. v. Clear Channel Comm'ns, Inc.*,
  201 F. Supp. 2d 1035 (N.D. Cal. 2001) ........................................................9

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..................................................18, 19

*Collondrez v. City of Rio Vista*,
  275 Cal. Rptr. 3d 895 (Ct. App. 2021)........................................................22

*County of Marin v. Deloitte Consulting LLP*,
  836 F. Supp. 2d 1030 (N.D. Cal. 2011) ......................................................13

*Cross v. Facebook, Inc.*,
  222 Cal. Rptr. 3d 250 (Ct. App. 2017)........................................................24

*DeLeon v. Wells Fargo Bank, N.A.*,
  2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ...............................................12

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) .......................................................................17

*Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*,
   698 F. Supp. 3d 1210 (E.D. Cal. 2023).................................................................19

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   439 P.3d 1156 (Cal. 2019) ...............................................................................25

*Geiser v. Kuhns*,
   515 P.3d 623 (Cal. 2022) .................................................................................24

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) .............................................................................5

*Grant v. Aurora Loan Servs., Inc.*,
   736 F. Supp. 2d 1257 (C.D. Cal. 2010) ...........................................................16

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
   742 F.3d 414 (9th Cir. 2014) ...........................................................................21

*Guido v. Koopman*,
   2 Cal. Rptr. 2d 437 (Ct. App. 1991).................................................................14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   865 P.2d 633 (Cal. 1994) .................................................................................18

*Holcomb v. Wells Fargo Bank, N.A.*,
   66 Cal. Rptr. 3d 142 (Ct. App. 2007).................................................................5

*Hooked Media Grp., Inc. v. Apple Inc.*,
   269 Cal. Rptr. 3d 406 (Ct. App. 2020)..............................................................17

*Hunter v. CBS Broadcasting, Inc.*,
   165 Cal. Rptr. 3d 123 (Ct. App. 2013).................................................20, 21, 24

*Inamed Corp. v. Kuzmak*,
   275 F. Supp. 2d 1100 (C.D. Cal. 2002) .............................................................8

*IV Sols., Inc. v. United HealthCare Servs., Inc.*,
   2017 WL 3018079 (C.D. Cal. July 12, 2017) ..............................................14, 16

*Jones v. Corbis Corp.*,
   815 F. Supp. 2d 1108 (C.D. Cal. 2011) ...........................................................17

*Karns & Karns LLP v. Quintessa Mktg., LLC*,
   2023 WL 9894466 (C.D. Cal. July 25, 2023).....................................................11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................................5

*Kraft v. Rooke*,
    103 Cal. App. 552 (Ct. App. 1930)................................................................6

*McBride v. Boughton*,
    20 Cal. Rptr. 3d 115 (Ct. App. 2004).........................................................19

*MBM Paint, Inc. v. Miller Paint Co.*,
    2024 WL 3075273 (C.D. Cal. May 2, 2024) ...............................................9

*Merced Cnty. Sheriff's Emps. Assn. v. Cnty. of Merced*,
    233 Cal. Rptr. 519 (Ct. App. 1987)..........................................................10

*Moncada v. W. Coast Quartz Corp.*,
    164 Cal. Rptr. 3d 601 (Ct. App. 2013).....................................................16

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)..........................................................................20, 21

*Naidong Chen v. Fleetcor Techs., Inc.*,
    2017 WL 1092342 (N.D. Cal. Mar. 23, 2017)............................................7

*Navellier v. Sletten*,
    52 P.3d 703 (Cal. 2002) ..........................................................................22

*NetChoice, LLC v. Bonta*,
    2024 WL 3838423 (9th Cir. Aug. 16, 2024)............................................21

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
    103 Cal. Rptr. 2d 159 (Ct. App. 2000).....................................................12

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ..................................................................13

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ....................................................................17

*Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*,
    2006 WL 2319085 (N.D. Cal. Aug. 10, 2006) .........................................12

*Nygard, Inc. v. Uusi-Kerttula*,
    72 Cal. Rptr. 3d 210 (Ct. App. 2008)......................................................24

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
    68 Cal. Rptr. 3d 828 (Ct. App. 2007).......................................................14

*Park v. Bd. of Trustees of Calif. State Univ.*,
    393 P.3d 905 (Cal. 2017) ....................................................................22, 23

*People v. Harris*,
   155 Cal. Rptr. 472 (Ct. App. 1979) ...................................................................18

*Pemberton v. Nationstar Mortg. LLC*,
   331 F. Supp. 3d 1018 (S.D. Cal. 2018)..........................................................5, 13

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...........................................................25

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ........................................................................25

*Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc.*,
   172 Cal. Rptr. 3d 238 (Ct. App. 2014)......................................................12, 15

*Red Bull N. Am., Inc. v. KC Distrib., LLC*,
   2021 WL 8652238 (C.D. Cal. July 28, 2021) ................................................9

*Reeder v. Specialized Loan Servicing, LLC*,
   266 Cal. Rptr. 3d 578 (Ct. App. 2020)................................................12, 13, 15

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) .....................................................20, 25

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015) ...........................................................12

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
   291 P.3d 316 (Cal. 2013) ..............................................................................15

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ......................................................................7, 8

*Ryan-Beedy v. Bank of New York Mellon*,
   293 F. Supp. 3d 1101 (E.D. Cal. 2018)..........................................................11

*Second Measure, Inc. v. Kim*,
   143 F. Supp. 3d 961 (N.D. Cal. 2015) ...........................................................5

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021)............................................................11

*Stossel v. Meta Platforms, Inc.*,
   634 F. Supp. 3d 743 (N.D. Cal. 2022) ...........................................................4

*Sussex Finan. Enters, Inc. v. Bayerische Hypo-Und Vereinsbank AG.*,
   460 F. App'x 709 ........................................................................................16

*Tamkin v. CBS Broadcasting, Inc.*,
  122 Cal. Rptr. 3d 264 (Ct. App. 2011).....................................................................24

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal. Rptr. 2d 861 (Ct. App. 1991).........................................................................17

*In re Terrain Vehicle Litig.*,
  771 F. Supp. 1057 (C.D. Cal. 1991) .........................................................................13

*Throndson v. C.I.R.*,
  457 F.2d 1022 (9th Cir. 1972) ...................................................................................6

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..............................................................13, 15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................20

*Wilhelm v. Pray, Price, Williams & Russell*,
  231 Cal. Rptr. 355 (Ct. App. 1986) .....................................................................14, 16

*Wilson v. Cable News Network, Inc.*,
  444 P.3d 706 (Cal. 2019) ..............................................................................20, 21, 22

**Statutes**

28 U.S.C. §§ 1332(a), 1441(a), and 1446(a)................................................................4

Cal. Civ. Code § 1624(a)(1)........................................................................................6

Cal. Civ. Code § 3344.................................................................................................4

Cal. Civ. Proc. Code § 425.16 ....................................................................................1

Cal. Civ. Proc. Code § 425.16(a).....................................................................2, 20, 22

Cal. Civ. Proc. Code § 425.16(b)(1)..........................................................................20

Cal. Civ. Proc. Code § 425.16(e)(4)..........................................................................20

Cal. Civ. Proc. Code § 430.10 ....................................................................................5

California Code of Civil Procedure Section 425.16 *et seq.* .........................................1

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) and 9(b) ....................................................1

X'S MOT. TO DISMISS & STRIKE

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 1, 2024 at 9:00 AM, or as soon thereafter as the matter may be heard, in Courtroom 7 of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, California, Defendant X Corp. ("X") will and hereby does move (1) to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b); and (2) to strike all claims pursuant to Section 425.16 *et seq.* of the California Code of Civil Procedure. The motions to dismiss and to strike are based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers, and any other evidence or argument as may be presented at or before the hearing. X requests that the Court dismiss the Complaint with prejudice, strike all claims asserted, and award X its attorneys' fees for work associated with this motion pursuant to Cal. Civ. Proc. Code § 425.16.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Don Lemon seeks to recover more than $1.5 million based on preliminary negotiations for a potential deal between himself and X that went sour after Plaintiff conducted an invasive and charged interview with X's Owner, Chief Technology Officer, and Executive Chairman, Defendant Elon Musk. Shortly after being terminated from his prior role at CNN, Plaintiff began negotiating a potential content partnership deal with X in order to revive his journalism career. But before Plaintiff and X finalized a contract, Plaintiff repeatedly—and publicly—interrogated Mr. Musk in a sprawling interview about, among other topics, his ability to run his companies, including X; his political and ethical beliefs; his mental health; and his use of prescription medication. Following that interview, X reasonably determined that it did not want to enter into business with Plaintiff and ended the negotiations.

Upset with the rupture of the Parties' relationship and the all-too-foreseeable consequences of his actions, Plaintiff filed this lawsuit. But while the breakdown of a possible high-profile business deal may be grounds for upset feelings, it does not entitle Plaintiff to any legal remedy. For multiple reasons, Plaintiffs' complaint does not—and cannot—state a claim for relief against X. *First*, Plaintiff's contract claim must be dismissed because Plaintiff fails to

plausibly allege the existence of a contract (or the type of contract he alleges exists), let alone that he performed under the contract.  *Second*, Plaintiff's fraud and negligent misrepresentation claims must be dismissed because Plaintiff does not plausibly allege a single element of either claim.  Plaintiff fails to allege any false representation or broken promise.  Likewise, Plaintiff does not plausibly allege that X possessed the requisite knowledge or intent and cannot plausibly allege that he justifiably relied on the alleged statements.  *Third*, Plaintiff's commercial misappropriation claims must be dismissed because Plaintiff does not plausibly allege that he did not consent to X's minimal use of his name and likeness, that his consent was obtained by fraud, or that he was injured.  *Fourth*, Plaintiff's unjust enrichment claim fails because X committed no wrongdoing.

Beyond these defects, all of Plaintiff's claims also run afoul of California's anti-SLAPP law.  California enacted its anti-SLAPP law—which applies to state law claims asserted in federal court—to curb the proliferation of "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech."  Cal. Civ. Proc. Code § 425.16(a).  Plaintiff's claims place X's First Amendment rights squarely in the crosshairs by challenging X's decision not to feature Plaintiff on the X platform as a "face" of X.  X's choice of who it will (or will not) prominently highlight furthers X's First Amendment rights and thus enjoys anti-SLAPP protection.  And for the reasons explained above, Plaintiff cannot show any reasonable probability of success on the merits of his claims, as the anti-SLAPP statute requires.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should (1) dismiss the Complaint with prejudice because Plaintiff's claims are inadequately and implausibly pled under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and (2) strike Plaintiff's claims under California's anti-SLAPP statute because they arise from X's exercise of its protected speech rights in connection with an issue of public interest and Plaintiff cannot show any reasonable probability of success on the merits.

## BACKGROUND

Plaintiff Don Lemon, a high-profile journalist "known 'for sticking his finger in the eyes of powerful people,'" Compl. at 1, was terminated by his prior employer just before May 2023,

*id.* ¶ 17.[1]  Soon after, Plaintiff began searching for a career "revival."  *Id.* ¶ 23.  As early as June 16, 2023, Plaintiff spoke with Mr. Musk about a possible "partnership deal with X."  *Id.* ¶ 19.

In the following months, these discussions continued.  *E.g.*, Compl. ¶¶ 21-23.  They eventually shifted into a "series of negotiations with [Plaintiff]'s agents" about some of the business terms of the potential deal.  *Id.* ¶ 24.  According to the Complaint, on or around January 8, 2024, Plaintiff and X reached preliminary agreement on two such terms: first, Plaintiff would agree to provide X certain "exclusive rights"—yet to be defined—"to specific video content for a 24-hour period before it could be dispersed to other platforms," *id.*; and second, X would agree to pay Plaintiff $1,500,000, including a $200,0000 initial payment "within 3 business days" of some undefined event, in addition to additional incentives, *id.* ¶ 25.  The Complaint does not allege that Plaintiff and X signed or otherwise executed any document on or around January 8, 2024 (or any time thereafter) binding them to these or any other business terms.  Nor does the Complaint allege that X paid Plaintiff, or that Plaintiff sought payment from X, within three business days of purportedly reaching agreement on these terms.

Nonetheless, Plaintiff attended the CES conference, an annual trade show, and a dinner, during which he "praised X in front of the attendees."  Compl. ¶ 34.  Similarly, X held Client Council Meetings with potential partners, including Plaintiff, *id.* ¶ 37, to strategize the best way to advertise the partnership if Plaintiff and X ultimately reached agreement.

By early March 2024, Plaintiff and X still had not executed a partnership agreement.  Despite this, Plaintiff unilaterally moved forward with his plan to "create[e] his own media company."  Compl. ¶ 38.  Among other efforts, Plaintiff set up an interview with Mr. Musk for the planned first installment of Plaintiff's content.  *Id.*  During the interview, which was held on March 8, 2024, *id.*, Plaintiff asked Mr. Musk a series of invasive and charged questions, including, for example, whether Mr. Musk was "abus[ing] a prescribed medication" and whether that "may get in the way of [Mr. Musk's] government contracts and clearances and Wall

---

[1] The allegations discussed herein are drawn from the Complaint.  For purposes of this motion only, X accepts as true the Complaint's well-pleaded allegations.

Street."[2]  One day after the interview, X ended its negotiations with Plaintiff over the potential

partnership deal, Compl. ¶ 39, and no contract was ever signed.  Plaintiff subsequently published

a recording of the interview on YouTube, his personal account on X, and other platforms on

March 18, 2024.[3]

On August 1, 2024, Plaintiff filed a complaint entitled *Don Lemon v. Elon Musk et al.*,

Number CGC-24-616892, against X and Mr. Musk in the Superior Court of the State of

California for the County of San Francisco, alleging six claims for damages: (1) fraud;

(2) negligent misrepresentation; (3) misappropriation of name and likeness (common law);

(4) misappropriation of name and likeness (Cal. Civ. Code § 3344); (5) breach of express

contract; and (6) unjust enrichment.  Plaintiff served X on August 5, 2024.  On September 16,

2024, Mr. Musk timely removed this action to the Northern District of California pursuant to

28 U.S.C. §§ 1332(a), 1441(a), and 1446(a).

## ARGUMENT

Plaintiff's Complaint should be dismissed with prejudice because it does not—and

cannot—state any plausible claims to relief.  California's anti-SLAPP law also requires that

Plaintiff's claims be struck.  Plaintiff's claims target X's exercise of protected speech rights and

Plaintiff cannot show a probability of success on the merits of any of his claims.

## I.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  At this stage, the court need not accept "legal conclusions" or "[t]hreadbare

---

[2] Don Lemon, *Elon Musk on Racism, Bailing Out Trump, Hate Speech, and More - The Don Lemon Show (Full Interview)*, YouTube (Mar. 18, 2024),
https://www.youtube.com/watch?v=hhsfjBpKiTw; @donlemon, X (Mar. 18, 2024, 7:47 AM),
https://x.com/donlemon/status/1769692006551593144?lang=en.  Documents, including videos,
may be incorporated by reference into a complaint "if the plaintiff refers extensively to the
document or the document forms the basis of the plaintiff's claim."  *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 754 (N.D. Cal. 2022).  The Complaint refers to the interview
extensively, *see* Compl. ¶¶ 38-39, and it is central to Plaintiff's claims.  For these reasons, the
court should consider the video as incorporated by reference in the Complaint.
[3] *See supra* n.2.

recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, Plaintiff's fraud-based claims are subject to Rule 9(b) and must be pleaded with particularity such that defendants have "notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  Dismissal without leave to amend is proper if a complaint "could not be saved by any amendment." *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

Here, Plaintiff does not, and cannot, sufficiently allege necessary elements of his claims.

## A.    Plaintiff Fails To State A Breach Of Contract Claim

To state a claim for breach of contract, Plaintiff must sufficiently plead four elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff as a result of that breach.  *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1034 (S.D. Cal. 2018).  Plaintiff fails to plausibly allege that a contract exists at all, let alone that he performed under the terms of the contract.

### 1.    Plaintiff Does Not Plead Whether The Alleged Contract Is Written Or Oral

Under California law, to adequately plead a breach of contract claim, the plaintiff must plead "whether the contract is written, is oral, or is implied by conduct."  Cal. Civ. Proc. Code § 430.10; *Holcomb v. Wells Fargo Bank, N.A.*, 66 Cal. Rptr. 3d 142, 150 (Ct. App. 2007) ("Without specifying the nature of the contract, … the complaint fails to adequately state a cause of action for breach of contract."); *see also Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 971 (N.D. Cal. 2015).  The Complaint fails to meet this requirement.  At most, Plaintiff alleges (i) that the contract was "express," Compl. ¶ 93, without specifying what that "express" contract purportedly contained, and (ii) that Mr. Musk told him—six months before the agreement was allegedly reached—that there was "no need" for a "formal written agreement" or "paperwork." *Id.* ¶ 19.  Nowhere does Plaintiff allege whether the partnership deal purportedly reached by Plaintiff and X "on or around January 8, 2024" was written or oral.  *See id.* ¶¶ 24-25.  This is no mere technical defect.  It is a telling omission in the Complaint, fatal to Plaintiff's claim, that

reflects the fact that Plaintiff and X never actually formed a contract.  And since no contract was ever formed, it is impossible to identify what Plaintiff believes constitutes a contract.  For this reason alone, Plaintiff's breach of contract claim should be dismissed.

### 2.      The Contract Is Barred By The Statute of Frauds

Plaintiff's breach of contract claim also fails because the alleged agreement is invalid under California's statute of frauds.  Under the statute, a contract that "by its terms is not to be performed within a year from the making thereof" is invalid "unless [it], or some note or memorandum thereof, [is] in writing."  Cal. Civ. Code § 1624(a)(1).  Plaintiff does not allege that the contract is in writing, *see* Section I.A.1, and, for two reasons, the contract cannot plausibly be performed within a year of its making.

*First*, the supposed contract requires X to pay Plaintiff, "for a period of 48 months," a percentage of the revenue that X receives "for content creators that Lemon referred to X." Compl. ¶ 25.  Where, as here, a contract contemplates payments over multiple years, it must be in writing—this is a textbook statute of frauds issue.  *See Throndson v. C.I.R.*, 457 F.2d 1022, 1025 (9th Cir. 1972).

*Second*, Plaintiff alleges no effective date for the purported agreement, which renders it implausible that the "one-year deal," Compl. ¶ 24, can be performed within a year of its making. One-year contracts that commence in the future, rather than immediately, are invalid under the statute of frauds because they cannot be completed "within the one-year limitation."  *See, e.g.*, *Am. Tr. Co. v. Kindsfater*, 9 Cal. Rptr. 840, 842 (Ct. App. 1960) (oral agreement made for one-year term commencing three months after contract formation is invalid); *Kraft v. Rooke*, 103 Cal. App. 552, 554 (Ct. App. 1930) (agreement commencing seven days after its making and extending for one year thereafter must be in writing).  Even if Plaintiff had plausibly alleged that a contract was formed, he does not allege when it took effect.  *See* Compl. ¶ 26 (Plaintiff agreed to enter deal "on or about January 8, 2024").  And Plaintiff's failure to allege that he requested a $200,000 payment within three days of January 8 suggests, at a minimum, that the supposed contract did not become effective until some later date and thus renders it implausible that the

contract took effect immediately.  *See infra* Section I.A.3.  Accordingly, the contract must be in writing, and Plaintiff's failure to allege a written contract warrants dismissal of his claim.

### 3.      Plaintiff Does Not Plausibly Allege A Contract

Plaintiff's breach of contract claim is also deficient because Plaintiff does not plausibly allege the existence of a contract.  As described in the Complaint, the events on and around January 8, 2024 reflected one step in several months of negotiations concerning a potential partnership deal between Plaintiff and X that never came to fruition.  Rather than forming a contract, the allegations show, at most, that Plaintiff and X had reached a preliminary agreement on two—not all—of the essential elements of a possible deal.  In California, preliminary negotiations such as these "are not the functional equivalent of a valid, subsisting agreement," *Naidong Chen v. Fleetcor Techs., Inc.*, 2017 WL 1092342, at *7 (N.D. Cal. Mar. 23, 2017) (quoting *Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 703 (Ct. App. 2006)), and they do not "impose any duty on either party not to be unreasonable or not to break off negotiations, for any reason or for no reason," *A.R. Thomson Grp. v. Harbor Seal Inc.*, 2020 WL 6436967, at *4 (C.D. Cal. Sept. 23, 2020) (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 14 Cal. Rptr. 2d 335, 340 (Ct. App. 1992)).  Accordingly, X was free to break off negotiations for any reason, including because it did not want to feature Plaintiff on its platform.

For several reasons, the allegations in Plaintiff's Complaint illustrate that, at most, Plaintiff and X were engaged in preliminary negotiations.  To begin, Plaintiff does not establish that he and X ever reached an agreement on all, or even most, of the essential terms of a prospective contract.  It is a fundamental principle of California contract law that "[i]f an essential element of a promise is reserved for future agreement by both parties there is no legal obligation until such future agreement is made."  *Roth v. Garcia Marquez*, 942 F.2d 617, 627 (9th Cir. 1991) (citation omitted).  *Roth*, which concerned negotiations between a movie producer and an author, is instructive.  Roth and Garcia Marquez were negotiating over the film rights to one of Garcia Marquez's books and eventually reached agreement on price.  *Id.* at 619. In a letter, signed by both parties, Roth agreed to pay Garcia Marquez $200,000 for a two-year option on the film rights, with additional monetary incentives based on the exercise of the option

and the film's development and performance.  *Id.*  Garcia Marquez's agent, upon returning the

signed letter to Roth's agent, expressed that he was "happy that this deal [was] finally

concluded" and "await[ed] the formal agreement."  *Id.*  But negotiations fell apart over some of

the terms in the formal, long-form agreement, and it was never signed.  *Id.* at 619-620.

The court concluded that "essential terms were missing" from the signed letter such that

there was no contract.  *Roth*, 942 F.2d  at 628.  While the letter included various terms

concerning price, other essential terms were absent from the agreement, including, for example,

"assignability and scope of the rights being transferred to Roth."  *Id.* at 627.  In short, "there

were still many items to be worked out between the parties," and because these "essential terms

were not set out, no binding contract existed."  *Id.* at 627-628.  The Ninth Circuit therefore

affirmed the district court's dismissal for failure to state a claim.  *Id.* at 628.

No contract was formed here for similar reasons.  Plaintiff alleges only two terms to

which the Parties purportedly agreed: (1) X would receive "exclusive rights" to one piece of

Plaintiff's long-form video content per week, and ten pieces of Plaintiff's short-form video

content per month, and (2) X would pay Plaintiff $1,500,000, $200,000 of which would be paid

"within 3 business days" and the remainder in quarterly installments, with "additional

incentives," including "10 percent of the net revenue that X receives once it exceeds $350,000

for content creators that Lemon referred to X" for a period of 48 months.  Compl. ¶¶ 24-25.

These terms are too indefinite to comprise an enforceable agreement.  *Inamed Corp. v.

Kuzmak*, 275 F. Supp. 2d 1100, 1127-1128 (C.D. Cal. 2002) (agreement must be definite enough

to "determine the parties' respective duties and whether they have been breached").  The

Complaint, for example, does not allege the parameters of the "rights" that X supposedly would

have received, which, coupled only with Plaintiff's conclusory assurance that he "performed all

duties required of him under the agreement," Compl. ¶ 93, renders it impossible to determine

whether Plaintiff granted X the rights contemplated by the alleged agreement.  Nor does the

Complaint allege any details about the type of "video content" for which he granted X these

rights, except that some is "long-form" (that is "not breaking news," though this is not defined)

and some is "short-form."  *Id.* ¶ 24.  The supposed "incentives" to which he was apparently

entitled under the payment provision are similarly ill-defined, with no explanation of the process by which Plaintiff could "refer[]" "content creators" to X and receive payment, *id.* ¶ 25, and no explanation of what types of advertising would constitute "programmatic" advertising, *id.*, for which Plaintiff was allegedly to be entitled to a portion of gross advertising revenue.

Moreover, the Parties still had to negotiate many other essential provisions relating to these terms, without which no contract could be formed. "It is a fundamental principle of California contracts law that no contract is formed where essential elements are reserved for future agreement." *City Sols., Inc. v. Clear Channel Comm'ns, Inc.*, 201 F. Supp. 2d 1035, 1040-1041 (N.D. Cal. 2001). Here, numerous essential terms remained to be negotiated by legal counsel for Plaintiff and X, including, for example, provisions governing the grounds for termination, warranties, limitations on liability, and indemnification. Plaintiff and X had not yet determined what choice of law would govern or how disputes would be adjudicated. They had not even determined the supposed contract's effective date. *See also supra* Section I.A.2.

These are all especially important contractual terms. Take termination. A provision delineating permissible grounds for termination would be critical in this very dispute to determine whether X impermissibly canceled the alleged contract. *See* Compl. ¶ 94; *see also Red Bull N. Am., Inc. v. KC Distrib., LLC*, 2021 WL 8652238, at *3 (C.D. Cal. July 28, 2021) (no breach of contract when an at-will contract is terminated by the contracting party). Failure to reach an agreement on a termination provision is one indication that "important aspects of the parties' business relationship were still up in the air"—*i.e.*, Plaintiff and X were engaged in preliminary negotiations. *Clear Channel*, 201 F. Supp. 2d at 1041; *see also MBM Paint, Inc. v. Miller Paint Co.*, 2024 WL 3075273, at *5 (C.D. Cal. May 2, 2024) (grounds for termination are "fundamental" to breach of contract claim). In *Clear Channel*, for example, the plaintiff alleged it had entered into an agreement with the defendant to submit a proposal to the City and County of San Francisco. The plaintiff argued that the parties entered into an oral contract after reaching an agreement to prepare and submit the proposal. *Id.* at 1040. The court held otherwise, concluding that, at the time of the alleged agreement, the parties had not agreed on several

essential terms, including "what constituted cause upon which the parties could terminate the relationship." *Id.* at 1041.  The same is true here.

Similarly, the Complaint does not allege that Plaintiff and X reached agreement on *when* the contract would take effect, which makes it impossible for the court to determine whether Plaintiff has plausibly alleged his performance and X's breach.  *See, e.g.*, *Alpha GRP, Inc. v. Subaru of Am., Inc.*, 2018 WL 598689, at *10 (C.D. Cal. June 8, 2018) (dismissing claim because, *inter alia*, plaintiff pled "[n]o details" regarding the effective date of the contract).

Plaintiff and X's alleged conduct following the supposed "contract" date ("on or around January 8, 2024," Compl. ¶ 93) further confirms that Plaintiff has alleged only preliminary negotiations, rather than formation of a contract.  According to the Complaint, one of the only supposed terms of the alleged contract was that Lemon would be paid $200,000 within three business days of some event—presumably, the execution of the contract.  *Id.* ¶ 25.  But tellingly, the Complaint never alleges that Plaintiff sought payment or that X made a payment of $200,000 on or around January 11, 2024.  The absence of any such allegations renders implausible Plaintiff's assertion that even Plaintiff (let alone X) understood that a contract had been formed "on or around January 8, 2024."  *See Merced Cnty. Sheriff's Emps. Assn. v. Cnty. of Merced*, 233 Cal. Rptr. 519, 524 (Ct. App. 1987) ("the primary focus in determining the existence of mutual consent," and thus the existence of a contract, "is upon the acts of the parties involved").

Finally, Plaintiff and X's background and the "customary form" of agreements between sophisticated parties further confirms that the Complaint does not allege the existence of a contract.  It defies common sense to think that Plaintiff and X—both of whom are sophisticated and experienced dealmakers, *see* Compl. ¶ 76 (Plaintiff is "paid to endorse products and services through advertisements")—would not have expected to formalize a contract for services worth upwards of $1.5 million.  *See* Am. Jur Contracts § 38 (the "necessity of putting the agreement in final form, as indicated by the customary form of such transactions" is relevant in determining whether there is a contract).  Rather Plaintiff's allegations—even if taken as true—show that at most, Plaintiff and X were engaged in preliminary negotiations, with many aspects of their proposed partnership still left to be negotiated and finalized.

### 4. Plaintiff Does Not Allege That He Performed Under The Contract

Plaintiff also fails to sufficiently allege the performance element of a breach of contract claim.  Tellingly, Plaintiff refers to performance only in conclusory terms, alleging that Plaintiff "performed all duties required of him under the agreement."  Compl. ¶ 93.  Plaintiff does not, however, specify what those duties were, or how it was that he performed them.  Plaintiff alleges that the Parties "agreed" that he would provide X exclusive rights to certain long-form and short-form video content for a 24-hour period before it could be dispersed to other platforms, *id.* ¶ 24—but he does not allege that he performed on those obligations, or, even, when those obligations took effect.  This warrants dismissal of the claim.  *See, e.g.*, *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 951 (S.D. Cal. 2021) ("conclusory allegations" that plaintiff "performed all conditions … required by it to be performed in accordance with … the Contract" are insufficient to establish performance); *Karns & Karns LLP v. Quintessa Mktg., LLC*, 2023 WL 9894466, at *4 (C.D. Cal. July 25, 2023) (similar).

### B. Plaintiff's Fraud Claim Should Be Dismissed

As with his breach of contract claim, Plaintiff's fraud claim should be dismissed for failure to state a claim.  Plaintiff alleges that X "intentionally made false representations and/or promises" to Plaintiff so that he would "enter into an exclusive partnership deal with Defendants."  Compl. ¶ 49.  He alleges two such statements: *first*, that "there would be no need for a formal written agreement or to 'fill out paperwork,'"; and *second*, that "Lemon would have full authority and control over the work he produced even if disliked by Defendants."  *Id.* Plaintiff fails to plausibly allege a fraud claim based on either statement.

### 1. Statement About "No Need" for a Formal Written Agreement

X's purported representation that "there would be no need for a formal written agreement or to 'fill out paperwork,'" Compl. ¶ 49, fails to support Plaintiff's claim for fraud.  Where, as here, a fraud claim is based on intentional misrepresentations, *see id.*, the Complaint must sufficiently plead the following elements: "(1) a material misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101, 1109 (E.D. Cal.

2018).  Plaintiff fails to sufficiently plead nearly every element, pointing only to "general and conclusory" allegations about business negotiations that went sour.  *Reeder v. Specialized Loan Servicing, LLC*, 266 Cal. Rptr. 3d 578, 585 (Ct. App. 2020) (citation omitted).

a.   <u>Plaintiff Fails to Sufficiently Allege A Misrepresentation</u>

*First*, Plaintiff does not plausibly allege the most basic requirement of fraud: that the representation that "there would be no need for a formal written agreement or to 'fill out paperwork'" was false.  Compl. ¶ 49.  To establish falsity, Plaintiff must plead—with specificity—*see* Fed. R. Civ. P. 9(b)), the "circumstances indicating falseness" or "manner in which the representations at issue were false and misleading."  *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015).   Plaintiff fails to do so.  There are no allegations whatsoever—let alone allegations that would satisfy the heightened pleading standard for fraud—that X *mandated* a written agreement with Plaintiff.

*Second*, any representation that there was "no need for a formal written agreement" is a mere statement of opinion that cannot serve as grounds for Plaintiff's misrepresentation claim. *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 103 Cal. Rptr. 2d 159, 162 (Ct. App. 2000) ("expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action").  According to the Complaint, Mr. Musk made this statement before any contract existed to convey how easy it would be for Plaintiff and X to contract; he was not describing a fact about an existing contract.  Such a statement is "fundamentally forward-looking" and thus a non-actionable opinion.  *Arif Khan Global, Inc. v. State Bank of India*, 2023 WL 6138348, at *10 (Cal. Ct. App. Sept. 20, 2023); *see also Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc.*, 172 Cal. Rptr. 3d 238, 252 (Ct. App. 2014) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.").  Moreover, the statement merely reflects the belief and judgment of Mr. Musk—a quintessential opinion—rather than a statement of factual certainty.  *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (defendant's "expression of confidence" was "a statement of opinion that does not support a claim of fraud"); *see also Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*,

- 12 -

2006 WL 2319085, at *5 (N.D. Cal. Aug. 10, 2006).  The Complaint alleges nothing that would transform Mr. Musk's opinion into a representation of fact about the form of a contract that was not yet (or ever) in existence.[4]

*Third*, the statement is "vague, exaggerated, generalized [and] highly subjective[]," or, in other words, "puffery," which is not actionable as a misrepresentation.  *County of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011); *In re Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (describing puffery as "making generalized or exaggerated statements such that a reasonable [person] would not interpret the statement as a factual claim upon which he or she could rely"); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (noting that, in general, "the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim").  The statement is clearly subjective, as contracting parties must determine for themselves their preferred form of contract.  Moreover, the statement is highly generalized—it was allegedly communicated to Plaintiff during his conversation with Mr. Musk in June 2023, Compl. ¶ 19, long before the negotiations took shape, and thus unmoored from the specifics of any agreement.

          b.     <u>Plaintiff Fails To Sufficiently Allege Knowledge Or Intent</u>

Plaintiff summarily alleges that X "intentionally" made the statement while "[k]nowing" that it was false.  Compl. ¶¶ 49, 52.  But Plaintiff's bare allegations that X "knew [its] representations were false when they were made," *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015), and made this representation "with the intent to induce Plaintiff" to engage in certain conduct, *Reeder*, 266 Cal. Rptr. 3d at 585, are "the very sort of general and conclusory allegations that are insufficient to state a fraud claim," *id.*; *see also Pemberton*, 331 F. Supp. 3d at 1047.

---

[4] In circumstances not present here, a party's opinion may be treated as a representation of fact if the "party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise."  *Bily v. Arthur Young & Co.*, 834 P.2d 745, 768 (Cal. 1992).  The Complaint does not allege that Mr. Musk possesses or holds himself out to possess superior knowledge on contract law—both sides were sophisticated and represented in the negotiations—so this exception is inapplicable.

c.   <u>Plaintiff Fails to Sufficiently Allege Justifiable Reliance</u>

To establish justifiable reliance, Plaintiff must plausibly allege that he (1) "actually relied" on the purported representations and (2) was "reasonable" in doing so.  *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 68 Cal. Rptr. 3d 828, 855 (Ct. App. 2007).  He fails to do either.

To plead actual reliance, Plaintiff must plausibly allege a "complete causal relationship" between "the alleged misrepresentations and the harm claimed to have resulted therefrom"—that the representation "played a substantial part … in influencing his decision."  *Id.* at 855-856 (citation omitted).  Plaintiff fails to do so.  He says that he would not have entered into an "exclusive partnership deal with X" and devoted "time, effort, and resources" to creating content had he known the "actual facts," Compl. ¶ 54, but there is no plausible connection between X's representation that a written contract is unnecessary and Plaintiff's decision to enter into a contract with X.  If anything, such a representation would have introduced uncertainty and thereby *discouraged* Plaintiff from entering into any deal.

Regardless, any reliance would have been patently unreasonable because of Plaintiff's and his agents' knowledge and experience.  *See Guido v. Koopman*, 2 Cal. Rptr. 2d 437, 440-441 (Ct. App. 1991) ("In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, the knowledge, education and experience of the person claiming reliance must be considered.").  As a sophisticated party experienced in dealmaking, it was unreasonable for Plaintiff to rely on vague and subjective representations that a written agreement was unnecessary to structure a multi-million-dollar deal.  *See, e.g.*, *IV Sols., Inc. v. United HealthCare Servs., Inc.*, 2017 WL 3018079, at *8 (C.D. Cal. July 12, 2017) (California courts "treat allegations of reliance with substantially more skepticism" where "an experienced party who should have known better claims to have been misled").  This statement was allegedly made at the outset of a negotiation process that spanned many months.  Plaintiff subsequently relied on his team of "agents" to guide him through the negotiation process, which, as a matter of law, renders unreasonable any reliance on puffery from Mr. Musk months earlier in deciding whether to enter the alleged agreement.  *See Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr.

355, 358 (Ct. App. 1986) (no justifiable reliance on statement of an adversary where both parties were represented).  Indeed, Plaintiff does not allege that he and X ultimately decided against reducing their negotiations to writing.  Plaintiff has not—and cannot—plausibly allege that he entered a contract *because of* the statement that a written contract was unnecessary.

### 2. Statement About Plaintiff Having "Full Authority and Control" Over His Work

Plaintiff also alleges that X promised him months before the alleged agreement that he would have "full authority and control" over his work.  Compl. ¶¶ 19, 22.  Forward-looking statements such as this generally are not actionable as fraud.  *Moody's*, 172 Cal. Rptr. 3d at 252.  Instead, to state a claim for "promissory fraud," a plaintiff must plausibly allege not only the typical elements of fraud, but also that "the defendant made a promise to him that it had no intention of performing" from the moment the promise was made.  *UMG Recordings*, 117 F. Supp. 3d at 1109.  Plaintiff has not satisfied that demanding standard.

#### a. Plaintiff Does Not Sufficiently Allege That X Did Not Intend to Keep Its Promise

To start, Plaintiff fails to "plead[] facts from which it can be inferred" X did not intend to perform the promise when made.  *UMG Recordings*, 117 F. Supp. 3d at 1108-1109.  The Complaint offers only the bald allegations that X "had no intention of performing" the promise "and [has] not performed as promised."  Compl. ¶ 51.  These are "the very sort of general and conclusory allegations that are insufficient to state a fraud claim."  *Reeder*, 266 Cal. Rptr. 3d at 585.  The Complaint nowhere even explains how X did not perform this supposed promise, as X is not alleged to have taken any action to control or change Lemon's work; Plaintiff's allegations are merely that X took steps to disassociate itself from that work following the Musk interview.  And even if it had, promissory fraud requires more than just "an unkept but honest promise, or mere subsequent failure of performance"—which is, at most, all that Plaintiff has alleged.  *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 291 P.3d 316, 325 (Cal. 2013); *see also UMG Recordings*, 117 F. Supp. 3d at 1109.

- 15 -

1    Furthermore, Plaintiff's allegations hardly show that X never intended to follow through

2   on any supposed promise. To the contrary, they demonstrate the opposite—that X genuinely

3   believed that it could form a productive and mutually beneficial partnership with Plaintiff and

4   that X changed course only after Plaintiff soured the relationship by conducting an invasive and

5   inappropriate interview of Mr. Musk.  Nothing in the Complaint indicates that X acted based on

6   a long harbored intent to defraud Plaintiff.

7                    b.    Plaintiff Does Not Sufficiently Allege Justifiable Reliance

8           This claim also fails because, for reasons explained in Section I.B.1.c, Plaintiff cannot

9   plausibly allege that he justifiably relied on the alleged promise that he would have "full

10  authority and control," Compl. ¶ 49, over his work, which is a necessary element of a promissory

11  fraud claim, *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010).

12  The Complaint fails to plausibly allege that Plaintiff relied on X's purported promise to enter

13  into the contract, let alone that his reliance was reasonable.  Plaintiff has decades of experience

14  reinforced by the experience of his team of agents.  Compl. ¶¶ 11, 24.  If the promise was

15  material to Plaintiff's decision to enter into the contract, then he and his agents should have—and

16  would have—made sure that the agreement included this term.  Moreover, it was unreasonable

17  for Plaintiff, as a represented, sophisticated, and educated party, to rely on the vague promise,

18  made early in the negotiation process, that he would be guaranteed "full authority and control

19  over the work," *id.* ¶ 49, particularly when that requirement was not included in the alleged

20  agreement.  *See IV Sols., Inc.*, 2017 WL 3018079, at *8; *Wilhelm*, 231 Cal. Rptr. at 358; *Sussex*

21  *Finan. Enters, Inc. v. Bayerische Hypo-Und Vereinsbank AG.*, 460 F. App'x 709, 712 (9th Cir.

22  2011).  The Complaint contains no allegations that transform Plaintiff's clearly unreasonable

23  reliance on this alleged promise—to the extent that he relied on it at all—into actionable fraud.

24  **C.    Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed**

25          Plaintiff alleges that these same two statements also support a claim for negligent

26  misrepresentation.  Compl. ¶ 62.  The elements of a negligent misrepresentation claim and a

27  fraud claim are "very similar"—indeed, only "the state of mind requirements are different."

28  *Moncada v. W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 611 (Ct. App. 2013).  Plaintiff's

negligent misrepresentation claim therefore fails for many of the same reasons that his fraud claim fails—he fails to sufficiently allege falsity, justifiable reliance, and intent.  *See supra* Section I.B.  Additionally, regarding X's alleged promise that Plaintiff would retain full authority and control over his work, Plaintiff cannot plead a false promise as negligent misrepresentation. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863-864 (Ct. App. 1991).  As courts have recognized, "making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise," such that there is no cause of action for negligent false promises.  *See id.* at 864 (affirming dismissal of claim for negligent misrepresentation based on a false promise because no such cause of action exists); *Hooked Media Grp., Inc. v. Apple Inc.*, 269 Cal. Rptr. 3d 406, 412 (Ct. App. 2020) ("there is no recognized cause of action for a negligent misrepresentation based on a false promise").

### D.        Plaintiff Fails To State Claims For Commercial Misappropriation

To sufficiently plead a common law or statutory claim for commercial misappropriation, Plaintiff must plausibly allege the following elements: (1) X's use of Plaintiff's identity; (2) the appropriation of Plaintiff's name or likeness to X's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  Plaintiff alleges no plausible facts that he did not consent to X's minimal use of Plaintiff's name and likeness or that he was injured.

### 1.        Plaintiff Consented Through His Conduct

The Complaint asserts that X did not have Plaintiff's consent to use his name or likeness and that, even if he had consented, any such consent is unenforceable, Compl. ¶¶ 72-73, 82-83, but Plaintiff's allegations belie both assertions.  Consent for purposes of a commercial misappropriation claim "need not be express or in writing" and instead "may be implied from the consenting party's conduct and the circumstances of the case."  *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011); *see Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994) (plaintiff consented through his conduct by expressing excitement about the use of his likeness and never objecting to the use of his likeness over several months).  Put another way, in

- 17 -

order to show a lack of consent, Plaintiff must have acted "in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 648 (Cal. 1994).

Plaintiff's conduct clearly evinces consent for X to use his likeness.  Plaintiff appeared at multiple events as a partner of X, including the CES conference in early January 2024, Compl. ¶¶ 30, 34, and the Talent Panel at X's Client Council Meeting, *id.* ¶ 37.  And not only did he appear—he "praised X in front of the attendees" during the CES conference.  *Id.* ¶ 34.  Likewise, Plaintiff does not allege that he objected to the use of his likeness in posts by X or any other marketing and promotional activities.  *See, e.g.*, *id.* ¶¶ 31, 36.  Taken together, and in the absence of any allegations suggesting the opposite, these facts are more than sufficient to establish that Plaintiff provided his implied consent to X's limited use of his likeness.

To overcome this, Plaintiff summarily alleges that his consent is unenforceable due to "unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or … unclean hands." *Id.* ¶¶ 72, 82.  He fails to explain, however, how any of these issues are present. For example, he alleges that he could not consent due to "a lack of mental capacity/competence," *id.* ¶¶ 72, 82, thereby suggesting—without explanation—that he was not mentally competent during this period.  To the extent that Plaintiff attempts to connect these issues to his allegations about X's supposed fraud, *see id.* ¶¶ 73, 83, that argument fails because X committed no fraud, *see supra* Section I.B, and, regardless, absent "statutory language to the contrary," which is not present here, "consent … obtained through misrepresentation will not supply the essential element of nonconsent," *People v. Harris*, 155 Cal. Rptr. 472, 478 (Ct. App. 1979).

### 2.    Plaintiff Does Not Plausibly Allege Any Injury

Plaintiff alleges that he was injured by X's use of his likeness in several ways, including deprivation of the monetary value of having his likeness used by X, emotional distress damages, and loss of reputation and standing in the community.  Compl. ¶¶ 76, 78, 86, 88.  But Plaintiff's "conclusory assertion[s]" of injuries are insufficient to state a claim; instead, he must allege "facts that would suffice to show a plausible entitlement to relief."  *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011).  The Complaint contains no allegations about how the mere announcement of Plaintiff's new project, Compl. ¶ 31, and a single reference to Plaintiff as

1   X's "partner," *id.* ¶ 34, somehow injured Plaintiff.  If anything, such announcements were

2   precisely the kind of career "revival" that Plaintiff hoped to achieve.  *Id.* ¶ 23.  Indeed, X's

3   announcement made Plaintiff a "top trending topic in the United States," which inured to his

4   benefit.  *Id.* ¶ 32.  And despite the Complaint's repeated statements that Plaintiff's likeness was

5   used to "entice" and "woo" advertisers, *id.* ¶¶ 35-37, Plaintiff tellingly does not allege that X

6   actually secured any advertisers as a consequence of the alleged partnership with Plaintiff such

7   that Plaintiff was deprived of the monetary value of his likeness.  Accordingly, the

8   misappropriation claims should be dismissed because Plaintiff fails to plead a "plausible

9   supporting factual basis" for his alleged injuries.  *Cohen*, 798 F. Supp. 2d at 1097.

10   **E.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed**

11          Plaintiff asserts a claim for unjust enrichment, which is not a separate cause of action

12   under California law.  *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210,

13   1218 (E.D. Cal. 2023).  If he intends to seek restitution, that remedy may be awarded only

14   "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or

15   similar conduct," *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121-122 (Ct. App. 2004), and there

16   "must be some showing of wrongdoing in obtaining the benefit," *AmGuard*, 698 F. Supp. 3d at

17   1218.  As explained *supra* Section I.B, Plaintiff fails to sufficiently allege that X engaged in

18   fraud or similar misconduct.  Accordingly, he is not entitled to restitution.

19          Additionally, Plaintiff fails to allege that his actions actually enriched X.  Instead, the

20   Complaint conclusorily states that "Lemon's well-known reputation, likeness, identity, and good

21   name was [sic] used by Defendants for their commercial benefit."  Compl. ¶ 33.  But there are no

22   allegations that X received any advertising revenue or other specific benefit from Plaintiff's

23   actions, and any benefit to X was more than offset by the commercial harm caused by X's

24   association with Plaintiff and the interview of Mr. Musk which Plaintiff subsequently released.

25   **II.     PLAINTIFF'S CLAIMS SHOULD BE STRUCK UNDER CALIFORNIA'S ANTI-
26           SLAPP STATUTE**

27          Plaintiff's claims should also be struck under California's anti-SLAPP statute.  That

28   statute requires that claims with no probability of success on the merits must be struck when they

arise from a defendant's exercise of its protected speech rights in connection with an issue of

public interest.  *See* Cal. Civ. Proc. Code § 425.16(b)(1).  Federal courts in this circuit resolve

motions to strike by first considering whether "the plaintiff's suit arises from an act in

furtherance of the defendant's rights of petition or free speech" in connection with a public issue.

*See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).  If so, "the burden

shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims."  *Id.*

(internal citations and quotation marks omitted); *see also Resolute Forest Prods., Inc. v.

Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1025 (N.D. Cal. 2017).

## A.    Plaintiff's Claims Fall Under the Anti-SLAPP Statute

The anti-SLAPP statute protects not just speech, but also "any other conduct" that is "in

furtherance of the exercise" of constitutional speech rights "in connection with … an issue of

public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).  This provision, which must be interpreted

broadly, *id.* § 425.16(a), protects, *inter alia*, conduct that "facilitates expression," even if it does

not itself contain any expressive elements, *Wilson v. Cable News Network, Inc.*, 444 P.3d 706,

719 (Cal. 2019); *see also Hunter v. CBS Broadcasting, Inc.*, 165 Cal. Rptr. 3d 123, 131 (Ct. App.

2013) (anti-SLAPP statute applies not just to protected speech itself, but to conduct that "helps to

advance that right or assists in the exercise of that right").  Each of Plaintiff's claims in this case

depends on X's decision, taken after Plaintiff's invasive and charged interview with Mr. Musk

and in anticipation of its publication, not to feature Plaintiff on the platform as a "face" of X that

would represent the company to the general public, *e.g.*, Compl. ¶¶ 31, 34 (alleging that X

featuring Plaintiff's content would bring Plaintiff's "unique and honest voice" and "diverse

perspective and powerful voice" to X's platform).  Each claim thus falls within § 425.16's scope.

### 1.    X's Decision To Not Feature Plaintiff's Content on Its Platform Is Protected Speech And X's Conduct Furthers The Exercise of That Right

X's decision not to feature Plaintiff or his content on the platform is protected by the First

Amendment.  As the Supreme Court recently confirmed, a social media platform "'exercis[ing]

editorial discretion in the selection and presentation' of content is 'engage[d] in speech

activity.'"  *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2402 (2024) (quoting *Ark. Ed. Television*

1  *Comm'n v. Forbes*, 523 U.S. 666, 674 (1998)) (alterations in original); *NetChoice, LLC v. Bonta*,

2  2024 WL 3838423, at *10 (9th Cir. Aug. 16, 2024) (editorial choices by online platforms are

3  protected by First Amendment).  "[T]he decisions made as to content, the treatment of public

4  issues—whether fair or unfair—all these constitute the exercise of editorial control and

5  judgment" "[f]or a paper, and for a platform too." *Moody*, 144 S. Ct. at 2405 (alterations and

6  quotation marks omitted).  It makes no difference if the decision excludes a particular third

7  party's speech from the platform—indeed, "that kind of focused editorial choice packs a

8  peculiarly powerful expressive punch." *Id.* at 2402.

9        Conduct that "helps to advance" or "assists in" that editorial judgment is conduct in

10  furtherance of the exercise of protected speech covered by the anti-SLAPP statute.  *Hunter*,

11  221 Cal. App. 4th at 1521.  Such conduct encompasses decisions about how content will be

12  presented.  *See Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d

13  414, 424-425 (9th Cir. 2014) ("[W]here … an action directly targets the way a content provider

14  chooses to deliver, present, or publish news content on matters of public interest, that action is

15  based on conduct in furtherance of free speech rights and must withstand scrutiny under

16  California's anti-SLAPP statute.").  And it encompasses actions taken in advance of production

17  or publication.  *See Hunter*, 221 Cal. App. 4th at 1521 (prepublication or preproduction acts like

18  investigating, newsgathering, and interviewing are conduct furthering exercise of speech rights).

19        As California courts have recognized, such conduct also encompasses decisions about

20  who will produce and deliver content.  For example, in *Hunter v. CBS Broadcasting Inc.*, an

21  applicant not selected as a weather anchor sued CBS for discrimination.  165 Cal. Rptr. at 125.

22  The court found that CBS's choice of weather anchors to deliver content on-air was conduct in

23  furtherance of the organization's exercise of speech rights in delivering the news or creating a

24  show, and thus protected under the anti-SLAPP statute.  *Id.* at 131-132.  Similarly, in *Wilson v.*

25  *Cable News Network, Inc.*, a former employee fired by CNN sued for discrimination.  444 P.3d

26  at 711.  The court concluded that CNN's choice of a content producer with authority to

27  determine content can be conduct in furtherance of the organization's exercise of First

28  Amendment speech rights.  *Id.* at 720-722.  As the court explained, the selection of producers

- 21 -

1    with authority to "determine" content would "have a substantial effect on the organization's

2    ability to speak as it chooses on matters of public concern" and could thus "chill participation in

3    the discussion of public issues, as surely as suits targeting the act of speaking itself." *Id.* at 721.

4         So too here.  X's decision not to feature Plaintiff on the platform is protected activity

5    under the anti-SLAPP statute no matter how you slice it.  Just like the choice of an anchor to

6    deliver the weather report to the public was conduct in furtherance of speech rights in *Hunter*,

7    X's choice of who (not Plaintiff) would deliver video content as a featured "face" of X furthers

8    X's speech rights in selecting and presenting content on the platform.  165 Cal. Rptr. at 125.

9    Further, just as the court recognized in *Wilson*, X's choice of who (not Plaintiff) would have

10   authority to produce content featured by the organization similarly furthers its speech rights in

11   selecting and presenting content on the platform.  444 P.3d at 720-722.

12        **2.    Plaintiff's Claims Arise From X's Covered Conduct**

13        A claim "aris[es] from" X's covered conduct—a statutory requirement that should be

14   "construed broadly," Cal. Civ. Proc. Code § 425.16(a)—when the covered conduct "underlies or

15   forms the basis for" liability, *Park v. Bd. of Trustees of Calif. State Univ.*, 393 P.3d 905, 908

16   (Cal. 2017).  A defendant's covered conduct underlies liability when a "claim[] would have no

17   basis [but for]" the defendant's conduct.  *Navellier v. Sletten*, 52 P.3d 703, 709 (Cal. 2002).  As

18   specific elements of the claims show, each depends on X's covered conduct in furtherance of its

19   decision not to feature Plaintiff or his content on the platform.  The claims' labels make no

20   difference:  Plaintiff "cannot avoid" the anti-SLAPP statute "by attempting, through artifices of

21   pleading, to characterize an action as a garden variety breach of contract or fraud claim when in

22   fact the liability claim is based on protected speech or conduct."  *Collondrez v. City of Rio Vista*,

23   275 Cal. Rptr. 3d 895, 902 (Ct. App. 2021) (internal quotation omitted).

24        Start with the contract claim:  Plaintiff alleges that X entered into an agreement to feature

25   Plaintiff's content, like the interview with Mr. Musk, exclusively on the platform.  Compl. ¶ 93.

26   Plaintiff then alleges that X breached that alleged contract, apparently by deciding—the day after

27   the interview and before it could be featured—to not feature Plaintiff's content on the platform.

28   *See id.* ¶¶ 94-95.  As a result, the interview was posted by Plaintiff on other platforms and on his

personal account on X, but was not featured or promoted by X on its platform.  *See supra* n.2.

Any alleged agreement and any purported breach are necessarily based on X's decision whether

to feature Plaintiff or his content, including the interview with Mr. Musk specifically, on the

platform and X's conduct in furtherance of that protected speech.  X's covered conduct thus

"underlies or forms the basis for" the contract claim.  *Park*, 393 P.3d at 908.  Indeed, the

Complaint alleges that Plaintiff "continues," Compl. ¶ 95, to suffer damages, including "losses of

earnings and benefits" to which he would have been entitled had X decided instead to feature his

content on the platform.  Plaintiff would only be entitled to such earnings and benefits—

particularly on a continuing basis—if X had decided instead to feature his content on the

platform.  The contract claim thus arises from X's covered conduct.

Now take the fraud claim.  Plaintiff cannot possibly contend that X was liable to him

before X actually decided not to feature him on the platform.  Consider the allegedly false

promise identified by Plaintiff: that Defendants purportedly said he "would have full authority

and control over the work he produced."  Compl. ¶ 49.  As explained, *see supra* Section I.B.2.a,

Plaintiff does not even allege that X failed to fulfill this promise.  But if Plaintiff has alleged any

kind of performance or nonperformance, it can be nothing other than X's decision whether to

feature Plaintiff on the platform—meaning that the only way X could be liable for intending to

make a false promise is because X in fact exercised editorial control over content on its platform.

So, too, for the misrepresentation claim, which rests on the same statement.  Compl. ¶ 62.

This is true, too, for the commercial misappropriation claims, which allege that the

misappropriation was for the purpose of promoting the show on the platform.  *Id.* ¶¶ 71, 81.  The

Complaint identifies no injury from the purported misappropriation independent of X's decision

not to proceed to feature Plaintiff on the platform.  At best, the Complaint suggests injury by

referencing the announcement that Plaintiff would be featured on the platform and to Plaintiff as

a content "partner."  *Id.* ¶¶ 31, 34.  Any damages on these claims would be traceable to X only

because X decided not to proceed with featuring Plaintiff on the platform.

In sum, Plaintiff cannot possibly contend that X is liable to him but for X's decision not to feature him on the platform and X's conduct in furtherance of that protected speech—making elements of all claims dependent on and thus "arising from" X's covered conduct.

### 3.     X's Covered Conduct Is In Connection With an Issue of Public Interest

A challenged act is sufficiently "in connection with" an issue of public interest if the content of the act implicates an issue of public interest and if, in light of the context in which it occurred, it contributes to public discussion of the issue.  *See Geiser v. Kuhns*, 515 P.3d 623, 630 (Cal. 2022).  The bar is not high:  "[A]n issue of public interest … is any issue in which the public is interested," *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 220 (Ct. App. 2008) (internal quotation marks omitted), that is "of concern to a substantial number of people," *Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250, 258 (Ct. App. 2017).

As the Complaint itself points out, X's decision not to feature Plaintiff's content on the platform was taken as a result of the invasive and charged March 8 interview with Mr. Musk and in anticipation of the interview's publication.  *See* Compl. ¶¶ 38-39.   X's decision thus implicates an issue of public interest—a Don Lemon show (that could have been featured on X, but ultimately was not).  *See Geiser*, 515 P.3d at 633 (timing of protected activity and event precipitating it relevant to connection with issue of public interest).  Editorial decisions implicating a show broadcast to a wide audience necessarily satisfy this requirement.  *See, e.g.*, *Tamkin v. CBS Broadcasting, Inc.*, 122 Cal. Rptr. 3d 264, 272 (Ct. App. 2011) (episode creation and broadcast was public interest issue because "the public was demonstrably interested … as shown by the posting of the casting synopses on various Web sites and the ratings for the episode"); *see also Hunter*, 165 Cal. Rptr. 3d at 136 (weather reporting on large local television newscast was public interest issue).  The public's interest in the show is demonstrated by Plaintiff's self-publication of the interview, which had over 2.4 million views on YouTube.  *See supra* n.2.  That both Mr. Musk and Plaintiff are people in the public eye further strengthens the public interest implication.  *See FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1162 (Cal. 2019) (that subject is "a person or entity in the public eye" indicates public interest).

"[C]ontext matters," *id.* at 1164, and confirms this conclusion.  The interview was posted on a public website, thus "contributi[ng]" to "public discussion" of the issue.  *Id.* (courts must consider "whether [the activity] was private or public, to whom it was said, and for what purpose").  Further, the over 63,000 comments on the video indicate that the public was indeed discussing the show, including specifically X's decision not to feature it on the platform.[5] @JonMuckyMuck, Comment on *Elon Musk on Racism, Bailing Out Trump, Hate Speech, and More - The Don Lemon Show (Full Interview)*, *see supra* n.2 ("This is how you get fired from your own show."); @GiovanniGirelli-w3z ("Don Lemon single-handedly cancelled his show on X.  Great job.").  These comments prompted further replies and public discussion.  *See, e.g.*, @danraney5284 (435 replies to "It's hilarious to see Elon change his mind about financing Don's show in real-time during this interview"); @chrissilva4500 (13 replies to "Elon was probably thinking … 'Yup, we are def cancelling this deal immediately after this' lol").

### B.  Plaintiff Cannot Establish A Probability of Prevailing on His Claims

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended by* 897 F.3d 1224 (9th Cir. 2018), *and cert. denied*, 139 S. Ct. 1446 (2019).  If Plaintiff "cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then Plaintiff[] as a matter of law cannot meet the probability of success on the merits standard."  *Resolute Forest Prods.*, 302 F. Supp. 3d at 1026.  As explained *supra* Section I, Plaintiff's claims fail.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

---

[5] The existence of these comments on a publicly accessible website is properly subject to judicial notice.  *See, e.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).

Dated: September 23, 2024

Respectfully submitted,

*/s/ Ari Holtzblatt*
Ari Holtzblatt (SBN 354631)
Claire Bergeron (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
ari.holtzblatt@wilmerhale.com
claire.bergeron@wilmerhale.com

Noah S. Guiney (SBN 324079)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone:  (628) 235-1151
Facsimile:  (628) 235-1001
noah.guiney@wilmerhale.com

*Attorneys for Defendant X Corp.*

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on September 23, 2024, I electronically filed the above document

3 with the Clerk of the Court using CM/ECF which will send electronic notification of such filing

4 to all registered counsel.  I also caused the above document to be sent to plaintiff's counsel by

5 email on September 23, 2024 and by overnight FedEx on September 24, 2024.

6

7 Dated: September 23, 2024                    By:    */s/ Ari Holtzblatt*                           

        ARI HOLTZBLATT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28