Ari Holtzblatt (SBN 354631)
Claire Bergeron (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
ari.holtzblatt@wilmerhale.com
claire.bergeron@wilmerhale.com

Noah S. Guiney (SBN 324079)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone:  (628) 235-1151
Facsimile:  (628) 235-1001
noah.guiney@wilmerhale.com

*Attorneys for Specially Appearing Defendant*
*Elon Musk*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DON LEMON, | CASE NO.: 3:24-cv-06487-MMC |
| Plaintiff, | **SPECIALLY APPEARING DEFENDANT ELON MUSK'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER SERVICE, AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| ELON MUSK, X CORP. DOING BUSINESS IN CALIFORNIA AS X CORP. A NEVADA CORPORATION; AND DOES 1 TO 100, INCLUSIVE, | *[Filed concurrently with [Proposed] Order]* |
| Defendants. | Hon. Maxine M. Chesney |
| | Courtroom 7 |
| | Date: November 1, 2024 |
| | Time: 9:00am |

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

BACKGROUND .................................................................................................. 3

ARGUMENT ....................................................................................................... 5

I.      PLAINTIFF'S ATTEMPTED SERVICE ON MR. MUSK WAS IMPROPER ............... 5

        A.      Substitute Service Was Improper Because Plaintiff Was Not Reasonably
                Diligent in Attempting Personal Service ........................................................ 6

        B.      Plaintiff's Attempt at Substitute Service Was Insufficient ............................. 7

II.     THERE IS NO PERSONAL JURISDICTION OVER MR. MUSK ............................ 9

        A.      There is No General Jurisdiction Over Mr. Musk ........................................... 9

        B.      There Is No Specific Personal Jurisdiction Over Mr. Musk .......................... 10

        C.      Alternatively, This Case Should Be Transferred To Texas ............................ 15

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR
        FAILURE TO STATE A CLAIM AGAINST MR. MUSK ...................................... 16

        A.      Plaintiff's Claim That Mr. Musk's Statements Were Fraudulent Should Be
                Dismissed ..................................................................................................... 17

        B.      Plaintiff's Claim that Mr. Musk Made Negligent Misrepresentations
                Similarly Does Not Survive Scrutiny ............................................................ 22

        C.      Plaintiff Is Not Entitled To Unjust Enrichment ........................................... 23

CONCLUSION .................................................................................................. 24

CERTIFICATE OF SERVICE ........................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4
*AMA Multimedia LLC v. Wanat*,
5
    970 F.3d 1201 (9th Cir. 2020) ...........................................................................................11

6
*American Fire & Casualty Co. v. Sessions*,
    2024 WL 2209701 (E.D. Cal. May 16, 2024) .......................................................................6
7

8
*American Tire Distributors, Inc. v. American Tire Corp.*,
    2009 WL 10672266 (C.D. Cal. Mar. 2, 2009).......................................................................5

9
*Amity Rubberized Pen Co. v. Market Quest Group Inc.*,
10
    793 F.3d 991 (9th Cir. 2015) .............................................................................................15

11
*Asahi Metal Industries Co. v. Superiot Court of California*,
    480 U.S. 102 (1987)...........................................................................................................14
12

13
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................16

14
*Bell Atlantic Corp. v. Twombly*,
15
    550 U.S. 544 (2007) ...........................................................................................................16

16
*Bender v. National Semiconductor Corp.*,
    2009 WL 2912522 (N.D. Cal. Sept. 9, 2009) ......................................................................8
17

18
*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004) ...............................................................................................5

19
*Calder v. Jones*,
20
    465 U.S. 783 (1984)......................................................................................................11, 12

21
*ChemRisk, LLC v. Chappel*,
    2011 WL 1807436 (N.D. Cal. May 12, 2011) ...................................................................13
22

23
*Chevron Products Co. v. Advanced Corrosion Technologies & Training, LLC*,
    2021 WL 2156467 (N.D. Cal. May 27, 2021) ...................................................................16

24
*Cobalt Group, Inc. v. Spangenberg*,
25
    2008 WL 11338435 (C.D. Cal. June 10, 2008) .................................................................10

26
*Core-Vent Corp. v. Nobel Industries, AB*,
    11 F.3d 1482 (9th Cir. 1993) .............................................................................................14
27

28
*County of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011) .............................................................................18

*Daramola v. Oracle America, Inc.*,
  2020 WL 5577146 (N.D. Cal. Sept. 16, 2020) ..........................................................................9

*DeLeon v. Wells Fargo Bank, N.A.*,
  2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ............................................................................18

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
  840 F.2d 685 (9th Cir. 1988) ....................................................................................................5

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ................................................................................................11

*Echo & Rig Sacramento, LLC v. AmGuard Insurance Co.*,
  698 F. Supp. 3d 1210 (E.D. Cal. 2023) ..............................................................................22, 23

*Evony, LLC v. Aeria Games & Entertainment, Inc.*,
  2012 WL 12843210 (N.D. Cal. Sept. 28, 2012) ........................................................................5

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
  336 F.R.D. 574 (N.D. Cal. 2020) ............................................................................................15

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021) ................................................................................................................12

*Goldlawr, Inc. v. Heiman*,
  369 U.S. 463 (1962) ................................................................................................................15

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ..................................................................................................16

*Grant v. Aurora Loan Services, Inc.*,
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) ..................................................................................21

*Green v. First Tennessee Bank National Ass'n*,
  2021 WL 4846952 (N.D. Cal. Oct. 18, 2021) ........................................................................13

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..................................................................................................................9

*IV Solutions, Inc. v. United HealthCare Services, Inc.*,
  2017 WL 3018079 (C.D. Cal. July 12, 2017) ....................................................................20, 22

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................................................16

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) ..................................................................................................9

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ..................................................................................................9

*Miller v. Hambrick*,
   905 F.2d 259 (9th Cir.1990) ................................................................15

*Morrill v. Scott Financial Corp.*,
   873 F.3d 1136 (9th Cir. 2017) .............................................................11

*Newcal Industries, Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) .............................................................18

*Norcal Waste Systems, Inc. v. Apropos Technology, Inc.*,
   2006 WL 2319085 (N.D. Cal. Aug. 10, 2006) ....................................18

*Panavision International, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .............................................................13

*Pemberton v. Nationstar Mortgage LLC*,
   331 F. Supp. 3d 1018 (S.D. Cal. 2018)................................................19

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) .......................................................11, 12

*Republic of Kazakhstan v. Ketebaev*,
   2018 WL 2763308 (N.D. Cal. June 8, 2018)........................................10

*Republic of Kazakhstan v. Ketebaev ("Ketebaev I")*,
   2017 WL 6539897 (N.D. Cal. Dec. 21, 2017)......................................13

*RHUB Communications, Inc. v. Karon*,
   2017 WL 3382339 (N.D. Cal. Aug. 7, 2017) .......................................12

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015)....................................................17

*Rippey v. Smith*,
   16 F. App'x 596 (9th Cir. 2001) ..........................................................14

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ...............................................................13

*Ryan-Beedy v. Bank of New York Mellon*,
   293 F. Supp. 3d 1101 (E.D. Cal. 2018).................................................17

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...................................................9, 11, 15

*Shee Atika Languages, LLC v. Kershner*,
   2008 WL 11429797 (D. Alaska Feb. 22, 2008).....................................14

*Stevens v. Security Pacific National Bank*,
   538 F.2d 1387 (9th Cir. 1976) ...............................................................6

*Stossel v. Meta Platforms, Inc.*,
634 F. Supp. 3d 743 (N.D. Cal. 2022) ..................................................................4

*Sussex Financial Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
460 F. App'x 709 (9th Cir. 2011) ........................................................................22

*UMG Recordings v. Global Eagle Entertainment, Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal 2015) ...................................................19, 20, 21

*Uttarkar v. Bajaj*,
2016 WL 393351 (N.D. Cal. Feb. 2, 2016) ..........................................................9

*Walden v. Fiore*,
571 U.S. 277 (2014).....................................................................................11, 12

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ...........................................................................11

*Young v. Actions Semiconductor Co.*,
386 F. App'x 623 (9th Cir. 2010) .......................................................................10

**State Cases**

*Arif Khan Global, Inc. v. State Bank of India*,
2023 WL 6138348 (Cal. Ct. App. Sept. 20, 2023) .............................................17

*Bein v. Brechtel-Jochim Group, Inc.*,
6 Cal. App. 4th 1387 (1992) ................................................................................8

*Bily v. Arthur Young & Co.*,
3 Cal 4th 370 (1992) ..........................................................................................18

*California Public Employees' Retirement System v. Moody's Investors Service,
Inc.*,
226 Cal. App. 4th 643 (2014) .....................................................................18, 20

*Cluney v. Sorour DMD PC*,
2023 WL 8444018 (Cal. Ct. App. Dec. 6, 2023) .................................................8

*Guido v. Koopman*,
1 Cal. App. 4th 837 (1991) ................................................................................19

*Hooked Media Group, Inc. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ..............................................................................22

*Kott v. Superior Court*,
45 Cal. App. 4th 1126 (1996) ...........................................................................6, 7

*McBridge v. Boughton*,
123 Cal. App. 4th 379 (2004) ............................................................................23

*Moncada v. West Coast Quartz Corp.*,
    221 Cal. App. 4th 768 (2013) .................................................................................22

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
    86 Cal. App. 4th 303 (2000) ....................................................................................17

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
    157 Cal. App. 4th 835 (2007) ..................................................................................19

*Reeder v. Specialized Loan Servicing, LLC*,
    52 Cal. App. 5th 795 (2020) ........................................................................17, 19, 21

*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n*,
    55 Cal. 4th 1169 (2013) ...........................................................................................21

*Wilhelm v. Pray, Price, Williams & Russell*,
    186 Cal. App. 3d 1324 (1986) ...........................................................................20, 22

**Federal Statutes**

28 U.S.C. § 1406.............................................................................................................1, 15

28 U.S.C. § 1631.............................................................................................................1, 15

Fed. R. Civ. Proc. 4...............................................................................................................6

Fed. R. Civ. Proc. 9.................................................................................................1, 16, 17

**State Statutes**

Cal. Civ. Proc. Code § 410.10 .............................................................................................9

Cal. Civ. Proc. Code § 415.20 .........................................................................................6, 7

**Other Authorities**

Don Lemon, *Elon Musk on Racism, Bailing Out Trump, Hate Speech, and More -
    The Don Lemon Show (Full Interview)*, YouTube (Mar. 18, 2024),
    https://www.youtube.com/watch?v=hhsfjBpKiTw ...................................................4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on November 1, 2024, at 9:00am, or as soon thereafter as the matter may be heard, in Courtroom 7 of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, CA 94102, Specially Appearing Defendant Elon Musk ("Mr. Musk") will and hereby does move (1) to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), and 9(b); or (2) in the alternative, to transfer this action pursuant to 28 U.S.C. §§ 1406 and 1631 to the U.S. District Court for the Western District of Texas.  Specially Appearing Defendant appears for the purpose of contesting jurisdiction and insufficient service of process, and does not consent or submit to the jurisdiction of this Court.  The motion to dismiss or, in the alternative, to transfer, is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers, and any other evidence or argument as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

In this case, Plaintiff Don Lemon, a New York resident, sues Elon Musk, a resident of Texas, regarding preliminary negotiations for a potential deal between Plaintiff and X Corp. that collapsed before a contract was finalized.[1]  Plaintiff asserts three claims against Mr. Musk for fraud, negligent misrepresentation, and unjust enrichment based entirely on two purportedly false statements Mr. Musk allegedly made to Plaintiff during a single phone call more than six months before Lemon supposedly finalized a contract with X.  Neither of those statements comes close to satisfying the stringent standards of Rule 9(b) that apply to allegations of fraud.  The first— that "there would be no need for a formal written agreement"—is not actionable as fraud for several reasons, including because it is a vague statement of opinion.  And the second statement—that Plaintiff would have "full authority and control over the work he produced even if disliked by Defendants"—is also not actionable, including because it is a promise that could

---

[1] Mr. Musk has specially appeared in this matter to contest the sufficiency of service of process and to argue that this Court does not have personal jurisdiction over him.

only support a fraud claim if Mr. Musk never intended to perform, which the Complaint nowhere plausibly alleges. Nor has Plaintiff plausibly alleged that he justifiably relied on either statement, instead of relying on his own sophisticated and experienced agents who allegedly negotiated a contract with X more than six months later.

But the Court does not even need to address these merits defects because Plaintiff's claims against Mr. Musk suffer from the threshold flaws that Plaintiff has not established proper service or personal jurisdiction over Mr. Musk. *First*, Mr. Musk was not served properly. Plaintiff attempted service on Mr. Musk via "substitute service" by handing the summons to an employee at X's former office on 1355 Market Street in San Francisco after employees at that building disclaimed any authority to accept service for Mr. Musk. But there is no evidence in the record that Plaintiff made a reasonably diligent attempt to serve Mr. Musk personally, as required before attempting substitute service. And, in any event, it was not reasonable—or even logical—to assume that substitute service on an employee in the lobby of an office where Mr. Musk does not work and that was in the process of being closed was likely to reach Mr. Musk. This case should be dismissed on these bases alone.

*Second*, Plaintiff's claims also should be dismissed or transferred to the Western District of Texas because this court does not have personal jurisdiction over Mr. Musk. Plaintiff's claims against Mr. Musk arise entirely from two allegedly fraudulent statements made by a Texas resident during a single phone call with a New York resident. The Complaint does not allege that either Mr. Musk or Plaintiff were in California during that call or that the statements were in any other way directed toward California. And to the extent Plaintiff suffered any harm at all, he suffered it in New York. Plaintiff thus fails to establish the claim-related contacts with California that due process requires.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss all claims against Mr. Musk for (1) insufficient service of process, (2) lack of personal jurisdiction, or (3) failure to state a claim; or (4) alternatively, whether the Court should transfer this case to the Western District of Texas.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND

### The Parties

The Complaint alleges that Specially Appearing Defendant Elon Musk is "a resident of Texas" now and at all times mentioned in the Complaint.  Compl. ¶ 2(b).  He has not been a resident of California since at least 2019.  *Id*.  As alleged, Mr. Musk is the Owner, "Chief Financial Officer" and "Secretary" of X Corp ("X").  In 2022, Mr. Musk completed his purchase of X, then known as Twitter.  Compl. ¶ 15.  The Complaint nowhere alleges any action by Mr. Musk in California that is in any way related to the alleged dispute with the Plaintiff, Don Lemon.  *See generally* Compl.

The Complaint alleges that Plaintiff is a journalist who worked at CNN from September 2006 to April 2023.  Compl. ¶ 11.  He is a resident of New York.  *Id*. at ¶ 1.  Plaintiff likewise is not alleged to have been in California for any claim-related interactions with Mr. Musk.  *See generally* Compl.

### Factual Allegations Regarding Mr. Musk

As explained more fully in Defendant X's motion to dismiss, filed concurrently with this motion (*see* ECF No. 13), Plaintiff's Complaint attempts to convert a series of preliminary contract negotiations between Plaintiff and X into fraud and breach of contract claims.

Only a handful of Plaintiff's allegations refer to Mr. Musk specifically.  According to the Complaint, on May 9, 2023, shortly after Plaintiff was terminated by CNN, Mr. Musk responded to one of Plaintiff's posts on X with a public post of his own saying: "[h]ave you considered doing your show on this platform? Maybe worth a try. Audience is much bigger."  Compl. ¶ 17.  Mr. Musk reiterated his suggestion that Plaintiff post his show on X on June 8, 2023 and allegedly had a follow-up phone conversation with Plaintiff on June 16, 2023.  *Id*. ¶¶ 18-19.  On this phone call, Mr. Musk allegedly asked Plaintiff if he would be interested in an exclusive partnership deal with X.  *Id*. ¶ 19.  Plaintiff further alleges that Mr. Musk said that "there would be no need for a formal written agreement" and that Plaintiff would have "full authority and control over the work he produced even if disliked by Defendants."  *Id*.  Plaintiff bases his claims

1   against Mr. Musk entirely on these two alleged statements.  The Complaint does not allege

2   where either Mr. Musk or Plaintiff were located during the June 16 phone call.

3       The Complaint then alleges that Plaintiff had a series of further interactions with X that

4   spanned almost eight months. These included certain meetings and conversations with X

5   employees including X CEO Linda Yaccarino and X Head of Content, Talent, and Brand Sales

6   Brett Weitz about the terms of an alleged proposed partnership between Plaintiff and X Corp.

7   (Compl. ¶¶ 21, 23-5), Plaintiff's attendance at a conference in Las Vegas in January 2024 (*id*.

8   ¶¶ 27, 30, 34-5), and Plaintiff's participation in a panel discussion at the behest of X in February

9   2024 (*id*. ¶ 37).  Plaintiff does not allege that Mr. Musk participated in any of these events.

10      For the first episode of Plaintiff's show, Plaintiff interviewed Mr. Musk on March 8,

11  2024.  Compl. ¶ 38.  Although the Complaint does not allege the location of the interview,

12  Plaintiff subsequently posted it in its entirety online, and during the interview Plaintiff states that

13  the interview was conducted in Texas.[2]  Within one day of the interview, Mr. Musk allegedly

14  sent Plaintiff's agent a text message stating that Plaintiff's prospective partnership with the

15  Defendants was canceled.  *Id*. at ¶ 39.  While Plaintiff alleges that his agents are generally based

16  in California (*id*. at ¶ 10(b)), the Complaint does not allege that the agent was located in

17  California at the time of this single text message or that Mr. Musk knew anything about the

18  agent's location.  And the Complaint does not base any claim against Mr. Musk on this text

19  message.  *See generally* Compl; *id* at ¶ 39.

20

21

22

23      [2] Don Lemon, *Elon Musk on Racism, Bailing Out Trump, Hate Speech, and More - The Don Lemon Show (Full Interview)*, YouTube (Mar. 18, 2024),
    https://www.youtube.com/watch?v=hhsfjBpKiTw.  The court may consider the interview

24  between Plaintiff and Mr. Musk when deciding this motion to dismiss.  *Stossel v. Meta

25  Platforms, Inc.*, 634 F. Supp. 3d 743, 754 (N.D. Cal. 2022).  Documents, including videos, may
    be incorporated by reference into a complaint "if the plaintiff refers extensively to the

26  document or the document forms the basis of the plaintiff's claim."  *Id*.  The Complaint refers
    to the interview extensively, *see* Compl. ¶¶ 38-39, and it is central to all of Plaintiff's claims.

27  For these reasons, the court should consider the video as incorporated by reference in the
    Complaint.

28

*Attempted Service on Mr. Musk*

Plaintiff filed suit in San Francisco Superior Court on August 1, 2024.  *See generally Complaint.*  Plaintiff asserts that he then served Mr. Musk with substitute service.  Notice of Removal, Ex. G (ECF No. 1).  According to the process server's declaration of diligence, the server first attempted personal service on Mr. Musk on August 19, 2024 at X's now-closed office at 1355 Market Street in San Francisco.  *Id.*  Security at the office allegedly told the process server that Mr. Musk was not at that location and denied access.  *Id.*  The process server tried again later that day, and the security guard at the office allegedly told the process server that there was no way to give legal documents to Mr. Musk, and that service would have to go through Mr. Musk's legal team.  *Id.*  The process server tried again the following day, and again on August 21, 2024, when the process server attempted service on Mr. Musk through an "employee of X Corp." purportedly named Julia "Doe."  *Id.*  Julia "Doe" told the process server that Mr. Musk was "not available for service" at which point the server gave her the documents.  Notice of Removal, Ex. G (ECF No. 1).  On August 22, 2024, the process server mailed the Summons, the Complaint, the Alternative Dispute Package, and the Civil Case Cover Sheet to the 1355 Market Street address, addressing them to Mr. Musk.  *Id.*

Plaintiff has submitted no evidence that the process server attempted to ascertain Mr. Musk's actual whereabouts before attempting personal service or that Mr. Musk was at the 1355 Market Street office (or anywhere in California) at the time service was attempted, or indeed, at any time during the alleged dispute.

## ARGUMENT

### I.   PLAINTIFF'S ATTEMPTED SERVICE ON MR. MUSK WAS IMPROPER

As an initial matter, the claims against Mr. Musk must be dismissed because the attempted service against him was improper.

"It is axiomatic that a federal court does not have jurisdiction over a defendant if the defendant is not properly served."  *Am. Tire Distributors, Inc. v. Am. Tire Corp.*, 2009 WL 10672266, at *3 (C.D. Cal. Mar. 2, 2009) (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)).  "Once service of process has

been challenged by the defendant, plaintiff bears the burden of proving valid service in accordance with Rule 4." *Evony, LLC v. Aeria Games & Ent., Inc.*, 2012 WL 12843210, at *5 (N.D. Cal. Sept. 28, 2012); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If the court finds that the method of service of process was not proper, the remedy is to quash service and require plaintiff to effectuate proper service. *Stevens v. Sec. Pacific Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

Rule 4(e)(1) provides that process may be served "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed. R. Civ. Proc. 4(e)(1). Plaintiff states that Mr. Musk was served using "substitute service" as defined in Section 415.20 of the California Code of Civil Procedure. Cal. Civ. Proc. Code § 415.20(b) (West).

### A.   Substitute Service Was Improper Because Plaintiff Was Not Reasonably Diligent in Attempting Personal Service

Before a plaintiff may attempt substitute service, he must first show that he was "reasonably diligent" in attempting personal service. The "reasonable diligence" requirement "denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney." *Kott v. Super. Ct.*, 45 Cal. App. 4th 1126, 1137, 53 Cal. Rptr. 2d 215, 221 (1996). A plaintiff will generally satisfy its burden through "[a] number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location." *Id.* Plaintiff's attempts at personal service did not display such diligence.

Plaintiff himself alleges that Mr. Musk is a resident of Texas, not California. Compl. ¶ 2(b). Indeed, Plaintiff concedes that Mr. Musk has not resided in California since before "2019"—nearly five years before the events at issue. *Id.* Beyond that, when attempting service, the process server encountered individuals who put him on notice that Mr. Musk was not present at 1355 Market Street, San Francisco on August 19, 2024. Notice of Removal, Ex. G (ECF No.

1). That information, along with readily accessible public information that Mr. Musk lives in Texas, would have prompted "a reasonable person who truly desired to give notice" to attempt personal service in Texas, not California. *See Am. Fire & Cas. Co. v. Sessions*, 2024 WL 2209701, at *4 (E.D. Cal. May 16, 2024) (citation omitted).

The law is clear on what such efforts entail. A plaintiff must try to ascertain the defendant's location through "[a] number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location." *Kott v. Superior Ct.*, 45 Cal. App. 4th 1126, 1137, 53 Cal. Rptr. 2d 215, 221 (1996). Plaintiff has provided no evidence that he attempted to undertake any of these efforts. Plaintiff has thus failed to demonstrate "reasonable diligence" in attempting personal service and was therefore barred from attempting substitute service on Mr. Musk. *Id.*

### B.      Plaintiff's Attempt at Substitute Service Was Insufficient

Plaintiff's attempt to show effective substitute service also fails for independent reasons. Effective substitute service has three components. *First*, the process server must leave a copy of the summons and complaint at either the defendant's dwelling, "usual place of business," or usual mailing address. Cal. Civ. Proc. Code § 415.20(b) (West). *Second*, if attempting service on an individual at their place of work, the process server must leave the documents with "a person apparently in charge of his or her office, [or] place of business." *Id. Third*, the process server must mail a copy of the documents "to the person to be served at the place where a copy of the summons and complaint were left." *Id.* If these three requirements are met, service is deemed complete 10 days after the mailing. *Id.*

As an initial matter, Plaintiff's attempt at substitute service was ineffective for the same reason that his attempt at personal service was not diligent: Plaintiff cannot claim that X's former San Francisco office location is Mr. Musk's "usual place of business." Cal. Civ. Proc. Code § 415.20(b) (West). Mr. Musk runs many businesses including Tesla, Inc. and SpaceX—both of which are located in Texas (ECF No. 1, Ex. K ¶ 4 ("Hollander Decl."))—so no office of X is his

1   "usual" place of business.  And even if an X office could qualify, Plaintiff has not established

2   that it was the 1355 Market Street location.  Plaintiff himself alleges that Mr. Musk "is . . . a

3   resident of Texas." Compl. ¶ 2(b).  Mr. Musk announced publicly in July 2024 that X was

4   moving its headquarters to Texas, before the Complaint was filed.  Hollander Decl. ¶ 4.  And by

5   the time service was attempted, X was already in the process of closing the 1355 Market Street

6   location.  For example, on August 5, 2024 X CEO Linda Yaccarino sent an email to all X

7   employees informing them that the San Francisco office would be closing "over the next few

8   weeks" and that workers based there would "need to switch to working out of other X offices."

9   *Id*. at ¶ 7.  Once the process server got there, individuals at 1355 Market Street informed

10  Plaintiff's process server that Mr. Musk was not at that location during his first attempt at

11  personal service.  These facts defeat any claim that 1355 Market Street was Mr. Musk's "usual"

12  place of business.  *See Cluney v. Sorour DMD PC*, 2023 WL 8444018, at *4 (Cal. Ct. App. Dec.

13  6, 2023) (service ineffective when receptionist informed the process server that the "individual

14  defendants had not been at that location 'for a while,'" and that their business had multiple

15  locations).

16          Plaintiff has also failed to show that Julia "Doe," the employee at the 1355 Market Street

17  facility who purportedly received the papers from the process server, was an appropriate person

18  to serve.  Under California law, substitute service cannot be made on just anyone who happens to

19  be present at a corporate office associated with a defendant.  Instead, "[s]ervice must be made

20  upon a person whose relationship with the person to be served makes it more likely than not that

21  they will deliver process to the named party." *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App.

22  4th 1387, 1393, 8 Cal. Rptr. 351, 354 (1992) (internal quotation marks omitted).  There is no

23  evidence to suggest that Mr. Musk, a resident of Texas, and Julia "Doe," an unnamed employee

24  at X's former San Francisco office, have such a relationship.  *Id*.  Courts have repeatedly held

25  that service on a front-line employee of a large organization is improper.  *See, e.g.*, *Cluney*, 2023

26  WL 8444018, at *4; *Bender v. Nat'l Semiconductor Corp.*, 2009 WL 2912522, at *1-3 (N.D.

27  Cal. Sept. 9, 2009) (finding service of process insufficient where receptionist served "did not

28  advise [process server] that she was authorized to accept service" and there was no evidence she

1    "play[ed] a large role in the overall structure of [the company]").  Without such a showing,

2    Plaintiff's attempt at substitute service is fatally flawed.

3    **II.    THERE IS NO PERSONAL JURISDICTION OVER MR. MUSK**

4            When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears

5    the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin*

6    *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  To determine if there is personal jurisdiction over

7    a defendant, "the Court must apply the law of the state in which it sits."  *Uttarkar v. Bajaj*, 2016

8    WL 393351, at *3 (N.D. Cal. Feb. 2, 2016).  "California's long-arm statute, Cal. Civ. Proc. Code

9    § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses

10   under state law and federal due process are the same."  *Martinez v. Aero Caribbean*, 764 F.3d

11   1062, 1066 (9th Cir. 2014) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

12   1223 (9th Cir. 2011)).  Therefore, the defendant "must have at least 'minimum contacts' with the

13   relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair

14   play and substantial justice.'"  *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v.*

15   *Washington*, 326 U.S. 310, 316 (1945)).

16           A federal court may exercise either general or specific jurisdiction over a non-resident

17   defendant.  General jurisdiction exists where a defendant has "continuous and systematic"

18   contacts with the forum state such that the defendant may be "haled into court in the forum state

19   to answer for any of its activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at 801.

20   Specific jurisdiction is more limited in scope and can be exercised where the defendant has

21   sufficient minimum contacts with the forum state, and the plaintiff's claims arise out of those

22   contacts.  *Id.* at 801-02.

23   **A.    There is No General Jurisdiction Over Mr. Musk**

24           "[G]eneral jurisdiction over an individual defendant typically exists only in a defendant's

25   domicile."  *Daramola v. Oracle Am., Inc.*, 2020 WL 5577146, at *2 (N.D. Cal. Sept. 16, 2020).

26   Here, Plaintiff does not allege that Mr. Musk is "domiciled" in California.  On the contrary,

27   Plaintiff concedes that he is a resident of Texas, and only lived in California "[p]rior to 2019"

28   Compl. ¶ 2(b).  That alone defeats general jurisdiction over Mr. Musk.

To the extent general jurisdiction can ever exist over a non-domiciliary defendant Plaintiff would have to allege that Mr. Musk's contacts with California were sufficiently "continuous and systematic" enough to "approximate physical presence in the forum." *Republic of Kazakhstan v. Ketebaev*, 2018 WL 2763308, at *13-14 (N.D. Cal. June 8, 2018). Plaintiff does not come close to meeting this high bar.

*Cobalt Grp., Inc. v. Spangenberg*, is instructive. 2008 WL 11338435, at *4 (C.D. Cal. June 10, 2008). In that case, the court analyzed whether an individual defendant who used to reside in California but at the time of filing resided in Texas had contacts with California that were "continuous and systematic" enough to confer general jurisdiction, and concluded they did not. *Id*. at *4-5. In particular, the court noted that the defendant Spangenberg "served as the President or Registered Agent of California companies" (*id*. at *4); resided in California up to a year before the suit was filed (*id*.); is a trustee of a trust that owns property in California (*Id*.); had a California real estate license (*id*. at *5) and listed a California address as his personal residence on some political campaign contributions (*id*.). The court reasoned that none of these contacts, either individually or taken together, were enough to approximate physical presence in California. *Id*.

The Complaint alleges that Mr. Musk has even fewer contacts with California than Spangenberg did. Mr. Musk left California in 2019, almost 5 years before this suit was filed. Compl. ¶ 2(b). And unlike Spangenberg, there is no allegation that Mr. Musk either owns any real estate in California or has listed a California address as his personal residence on any public filing. In fact, Plaintiff does not allege *any* contacts between Mr. Musk and California apart from his connection to X, which is registered in Nevada (Compl. ¶ 2(a)) and now has its principal place of business in Texas (Notice of Removal, ECF No. 1). As such, the Court cannot find that Mr. Musk's contacts with California "approximate physical presence in the forum." *Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 626 (9th Cir. 2010).

## B. There Is No Specific Personal Jurisdiction Over Mr. Musk

Plaintiff also fails to meet his burden of establishing specific personal jurisdiction over Mr. Musk. To adequately plead specific jurisdiction over a foreign defendant, a plaintiff must

establish: (i) the defendant either purposefully directed its activities toward the forum or purposefully availed itself of the benefits afforded by the forum; (ii) that the claim arises from or relates to the defendant's forum-related activities; and (iii) the exercise of jurisdiction comports with "fair play and substantial justice," *i.e.*, is reasonable. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citation omitted). A plaintiff bears the burden of satisfying the first two prongs of the analysis. *Schwarzenegger*, 374 F.3d at 802.

### 1. Plaintiffs Cannot Meet The Purposeful Direction Prong Because None Of Mr. Musk's Allegedly Tortious Conduct Was Purposefully Directed At California

Where, as here, the underlying claims concern alleged tortious conduct, a plaintiff must show that the defendant's alleged conduct was purposefully directed at the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). To establish purposeful direction, a plaintiff must satisfy a three-prong test: (1) the defendant must have committed an intentional act; (2) the defendant's act must have been expressly aimed at the forum state; and (3) the defendant must have known that the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). Plaintiff fails to allege either the second or third prongs.

With respect to the second prong, Plaintiff's allegations do not show that Mr. Musk "expressly aimed" any of his supposedly tortious actions at California. The express-aiming test "focus[es]" on the defendant's "contacts with the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (*discussing Walden v. Fior*e, 571 U.S. 277, 279-80 (2014). Where, as here, Plaintiff alleges tort claims, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fior*e, 571 U.S. at 286. Here, Plaintiff's claims against Mr. Musk are based entirely on two allegedly fraudulent statements made during a June 2023 phone call with Plaintiff. Compl. ¶¶ 17-19. The Complaint does not allege that Mr. Musk

was in California when he made that call.  *Id.*  Nor does it allege that Mr. Musk aimed the call *at* California:  Plaintiff is not alleged to have been in California and is allegedly a resident of New York.  To the extent it was aimed anywhere, then, Mr. Musk's call was aimed at New York, not California.  The Complaint thus identifies no "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286.

Plaintiff's allegations likewise fail to satisfy the third prong—that Mr. Musk knew the brunt of the alleged harm was likely to be suffered in California.  In a fraud case, this prong typically requires a showing that "intentional interactions with [the plaintiff] in California were performed for the very purpose of having their consequences felt in the forum state." *RHUB Commc'ns, Inc. v. Karon*, 2017 WL 3382339, at *6 (N.D. Cal. Aug. 7, 2017) (internal quotation marks omitted).  Mere "untargeted negligence" is not enough.  *Id.*  Here, any harm Plaintiff supposedly suffered from Mr. Musk's call was "personal to him and would follow him wherever he might choose to live or travel." *Picot*, 780 F.3d at 1215.  The "brunt of that injury," in other words, "would be felt by [Plaintiff] in the State in which []he lives and works." *Calder v. Jones*, 465 U.S. 783, 789-90, (1984).  Plaintiff, again, allegedly lives in New York, not California—and so it is in New York, not California, where Plaintiff would have suffered any injury.  Thus, the effects of Mr. Musk's actions, even assuming they were tortious, are "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." *Picot*, 780 F.3d at 1215 (quoting *Walden* 571 U.S. at 1125).

### 2. Plaintiff Fails To Meet The "Arise From Forum-Related Activities" Prong

Plaintiff also fails to demonstrate that his claims against Mr. Musk "arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).  To meet this test, Plaintiff must allege either a "causal" connection between Mr. Musk's allegedly tortious conduct and the forum or "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that took place in the forum State." *Id.* at 359-60, 362.

Here, Mr. Musk's two allegedly fraudulent statements to Plaintiff during their June 2023 phone call are the only claim-related conduct that Plaintiff identifies.  Once again, that phone call has no connection to California.  It is not alleged to have been made or received in California and it was carried out by a Texas resident speaking with a New York resident. These "facts presented do not demonstrate any direct, causal nexus between Defendant's limited contact with California and [Plaintiff's] allegations."  *Green v. First Tenn. Bank Nat'l Ass'n*, 2021 WL 4846952, at *5 (N.D. Cal. Oct. 18, 2021); *see also ChemRisk, LLC v. Chappel*, 2011 WL 1807436, at *7 (N.D. Cal. May 12, 2011) (finding no specific jurisdiction over defendant because plaintiff "has made no showing that Defendants had any contact with the forum, or that such contact gave rise to its claims.").  As for Mr. Musk's alleged text message to Plaintiff's agent after the interview, any connection to California would be irrelevant because none of Plaintiff's claims against Mr. Musk arise from or relate to that lone text.  But even if the text was jurisdictionally relevant, there is no allegation in the Complaint that the agent was even in California at the time the text was sent— just that the agent in general lives and works in California.  Compl. ¶ 10e.  Nor is there any allegation that Mr. Musk even knew the agent was based in California to begin with; indeed, there is no allegation in the Complaint that Mr. Musk and the agent had even communicated with each other before the text in question.  In short, because Plaintiff's claims against Mr. Musk are based entirely on a single June 16, 2023 phone call that had no connection to California, Plaintiff cannot satisfy this prong.  *Green*, 2021 WL 4846952 at *5.

### 3. Exercising Personal Jurisdiction Over Mr. Musk Would Be Unreasonable And Unfair

Because Plaintiff has failed to satisfy the first two prongs, the Court need not proceed to the third prong of the specific personal jurisdiction analysis.  *Green*, 2021 WL 4846952, at *5. In any event, the third prong also weighs against exercising jurisdiction over Mr. Musk.  Under this prong, "the Ninth Circuit considers seven factors:  '(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

1    forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an

2    alternative forum.'"  *Republic of Kazakhstan v. Ketebaev ("Ketebaev I")*, 2017 WL 6539897, at

3    *9 (N.D. Cal. Dec. 21, 2017) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th

4    Cir. 1998)).

5           These factors do not support jurisdiction over Mr. Musk.  As to the first prong, because

6    Plaintiff cannot show any claim-related connection between Mr. Musk and California, he cannot

7    show that Mr. Musk "purposefully interjected" himself into the forum.  *ChemRisk*, 2011 WL

8    1807436, at *7 (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) ("In light of

9    the first prong of purposeful availment, analysis of this first factor in the third prong would be

10   redundant.")).  The fourth factor—the forum state's interest in adjudicating the dispute—raises

11   similar concerns.  California has little interest in adjudicating the claims against Mr. Musk—

12   asserted by a New York plaintiff against a Texas defendant over alleged actions with no ties to

13   California.  *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("Because

14   the plaintiff is not a California resident, California's legitimate interests in the dispute have

15   considerably diminished.").  For the same reason, neither the third nor the sixth factor supports a

16   finding of personal jurisdiction over Mr. Musk.

17          As to the fifth factor, litigation in California will not facilitate efficient judicial resolution

18   of this controversy.  This factor focuses primarily on the location of witnesses and evidence.

19   *Core-Vent Corp. v. Nobel Indus., AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).  Plaintiff is, again, a

20   New York resident.  Compl. ¶ 1.  Both Defendants are now based in Texas.  *Id.* at ¶ 2(b); *see*

21   *also* Notice of Removal (ECF No. 1).  While the Complaint alleges that both Brett Weitz and

22   Plaintiff's agents are residents of California, it does not say that they live in this District.  And

23   Linda Yaccarino is a resident of New York.  *Id.* at ¶¶ 3-4.  Similarly, the actions at issue, to the

24   extent their locations are specified at all, occurred in New York (Compl. ¶ 21), in Nevada (*id.* at

25   ¶¶ 27-34), or in Texas (*supra* n.2).  Litigating this matter in California will thus not be efficient

26   for any party—and certainly not sufficiently efficient to overcome the other factors.  *See Shee*

27   *Atika Languages, LLC v. Kershner*, 2008 WL 11429797, at *9 (D. Alaska Feb. 22, 2008)

28   (finding that the fifth factor weighed against a finding of personal jurisdiction when "witnesses

are located around the country and it appears many more witnesses" reside outside the forum).

As for the last factor, Plaintiff cannot possibly bear "the burden of proving the unavailability of

an alternative forum," given the ready availability of jurisdiction in Texas. *Rippey v. Smith*, 16

F. App'x 596, 600 (9th Cir. 2001) (citing *Core-Vent Corp.. AB*, 11 F.3d at 1490).

### C.    Alternatively, This Case Should Be Transferred To Texas

This case should be dismissed for lack of personal jurisdiction over Mr. Musk.  But if the

court finds that dismissal is not warranted, the case should at least be transferred to the Western

District of Texas, where there would be personal jurisdiction.

"Where personal jurisdiction is lacking, courts within [the Northern District of

California] have variously transferred actions under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631."

*Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 586 (N.D. Cal. 2020) (citation omitted).

"Under either statute, cases generally should be transferred if a transfer serves the interest of

justice."  *Id*. (citation omitted); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)

(observing that the purpose of 28 U.S.C. § 1406(a) was to avoid "the injustice which had often

resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous

guess with regard to the existence of some elusive fact of the kind upon which venue provisions

often turn."); *Amity Rubberized Pen Co. v. Market Quest Group Inc.*, 793 F.3d 991, 997-98 (9th

Cir. 2015) (concluding that where appellate jurisdiction was lacking, a transfer to the Federal

Circuit pursuant to 28 U.S.C. § 1631 "would be in the interest of justice").  Transfer is

appropriate to a district where a case could have been filed in the first place.  28 U.S.C. §§ 1406,

1631.

*First*, this case could have been filed originally in the Western District of Texas.  As

Plaintiff alleges, Mr. Musk is a resident of Texas (Compl. ¶ 2(b)) and therefore there is general

jurisdiction over him in Texas.  Likewise, X is also now headquartered in the Western District of

Texas.  Hollander Decl. ¶ 8.  Moreover, a key event at issue in Plaintiff's claims against X

occurred in Austin, Texas:  the interview between Plaintiff and Mr. Musk that Plaintiff purports

would have been the "first episode of the Don Lemon show."  Compl. ¶ 38; *see also supra* n.2.

That also establishes that X "purposely availed" itself "of the privilege of doing business" in

Texas sufficient to establish specific personal jurisdiction over X in the Western District of Texas. *Schwarzenegger*, 374 F.3d at 802.

*Second*, transfer would serve the interest of justice in this case. Courts generally take a "broad view of when transfer is appropriate" when personal jurisdiction is lacking but another judicial district with jurisdiction is available. *Amity Rubberized Pen Co.*, 793 F.3d at 996. As the Western District of Texas has jurisdiction over both defendants, transfer there would be in the interest of justice. *Id*. (citing *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990) ("[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'"). That is especially true given that X's headquarters is located there, Mr. Musk is a resident of Texas, and a key event in Plaintiff's claims against X—Plaintiff's interview with Mr. Musk—happened there.

## III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM AGAINST MR. MUSK

Plaintiff brings three claims against Mr. Musk: fraud, negligent misrepresentation, and unjust enrichment. Should the Court find that there is personal jurisdiction over Mr. Musk, it should dismiss all three claims against him on the merits.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, the court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, claims that sound in fraud, such as Plaintiff's fraud and negligent misrepresentation claims, are subject to Rule 9(b) and must be pleaded with particularity such that defendants have "notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted); *see also Chevron Prods. Co. v. Advanced Corrosion Techs. & Training*, LLC, 2021 WL 2156467, at *2 (N.D. Cal. May 27, 2021) (Rule 9(b) applies to claims of negligent misrepresentation). Dismissal without leave to amend is proper if a complaint "could not be saved by any amendment." *See Gompper v.*

*VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).  None of the claims brought against Mr. Musk

meet this high bar, and therefore they should be dismissed.

**A.      Plaintiff's Claim That Mr. Musk's Statements Were Fraudulent Should Be Dismissed**

Plaintiff alleges that Mr. Musk "intentionally made false representations and/or

promises" to Plaintiff so that he would "enter into an exclusive partnership deal with

Defendants."  Compl. ¶ 49.  He alleges two such statements: *first*, that "there would be no need

for a formal written agreement or to 'fill out paperwork,'"; and *second*, that "Lemon would have

full authority and control over the work he produced even if disliked by Defendants."  *Id.*

Plaintiff fails to plausibly allege a fraud claim based on either statement.

**1.      Statement About "No Need" for a Formal Written Agreement**

Mr. Musk's purported representation that "there would be no need for a formal written

agreement or to 'fill out paperwork,'" Compl. ¶ 49, fails to support Plaintiff's claim for fraud.

Where, as here, a fraud claim is based on intentional misrepresentations, *see* Compl. ¶ 49, the

Complaint must sufficiently plead the following elements: "(1) a material misrepresentation; (2)

knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5)

resulting damage."  *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101, 1109 (E.D.

Cal. 2018).  Plaintiff fails to sufficiently plead nearly every element, pointing only to "general

and conclusory" allegations about business negotiations that went sour.  *Reeder v. Specialized

Loan Servicing, LLC*, 52 Cal. App. 5th 795, 803-804, 266 Cal. Rptr. 3d 578, 585 (2020).

a)      Plaintiff Fails to Sufficiently Allege A Misrepresentation

*First*, Plaintiff does not plausibly allege the most basic requirement of fraud: that the

representation that "there would be no need for a formal written agreement or to 'fill out

paperwork'" was false.  Compl. ¶ 49.  To establish falsity, Plaintiff must plead—with

specificity—*see* Fed. R. Civ. P. 9(b)), the "circumstances indicating falseness" or "manner in

which the representations at issue were false and misleading."  *Rieckborn v. Jefferies LLC*, 81

F. Supp. 3d 902, 913 (N.D. Cal. 2015) (citations omitted).  Plaintiff fails to do so.  There are no

allegations whatsoever—let alone allegations that would satisfy the heightened pleading standard for fraud—that Mr. Musk *mandated* a written agreement with Plaintiff.

*Second*, any representation that there was "no need for a formal written agreement" is a mere statement of opinion that cannot serve as grounds for Plaintiff's misrepresentation claim. *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308, 103 Cal. Rptr. 2d 159, 162 (2000). According to the Complaint, Mr. Musk made this statement before any contract existed to convey how easy it would be for the Parties to contract; he was not describing a fact about an existing contract. Such a statement is "fundamentally forward-looking" and thus a non-actionable opinion. *Arif Khan Global, Inc. v. State Bank of India*, 2023 WL 6138348, at *10 (Cal. Ct. App. Sept. 20, 2023); *see also Cal. Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc.*, 226 Cal. App. 4th 643, 662, 172 Cal. Rptr. 3d 238, 252 (2014) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." (citations omitted)). Moreover, the statement merely reflects the belief and judgment of Mr. Musk rather than a statement of factual certainty. *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (defendant's "expression of confidence" was "a statement of opinion that does not support a claim of fraud"); *see also Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*, 2006 WL 2319085, at *5 (N.D. Cal. Aug. 10, 2006). The Complaint alleges nothing that would transform Mr. Musk's opinion into a representation of fact about the form of a contract that was not yet (or ever) in existence.[3]

*Third*, the statement is "vague, exaggerated, generalized [and] highly subjective[]," or, in other words, "puffery," which is not actionable as a misrepresentation. *County of Marin v.*

---

[3] In circumstances not present here, a party's opinion may be treated as a representation of fact if the "party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise." *Bily v. Arthur Young & Co.*, 3 Cal 4th 370, 408, 834 P.2d 745, 768 (1992). The Complaint does not allege that Mr. Musk possesses or holds himself out to possess superior knowledge on contract law—both sides were sophisticated and represented by counsel—so this exception is inapplicable.

*Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011); *see also Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (noting that, in general, "the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim"). The statement is clearly subjective, as contracting parties must determine for themselves their preferred form of contract. Moreover, the statement is highly generalized—it was allegedly communicated to Plaintiff during his conversation with Mr. Musk in June 2023, Compl. ¶ 19, long before the negotiations took shape, and thus unmoored from the specifics of any agreement.

b)    Plaintiff Fails To Sufficiently Allege Knowledge Or Intent

Plaintiff summarily alleges that Mr. Musk "intentionally" made the statement while "[k]nowing" that it was false. Compl. ¶¶ 49, 52. But Plaintiff's bare allegations that Mr. Musk "knew [his] representations were false when they were made," *UMG Recordings v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal 2015), and made this representation "with the intent to induce Plaintiff" to engage in certain conduct, *Reeder*, 52 Cal. App. 5th at 803, are "the very sort of general and conclusory allegations that are insufficient to state a fraud claim." *Id.* at 804. *See also Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018).

c)    Plaintiff Fails to Sufficiently Allege Justifiable Reliance

To establish justifiable reliance, Plaintiff must plausibly allege that he (1) "actually relied" on the purported representations and (2) was "reasonable" in doing so. *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 863, 68 Cal. Rptr. 3d 828, 855 (2007). He fails to do either.

To plead actual reliance, Plaintiff must plausibly allege a "complete causal relationship" between "the alleged misrepresentations and the harm claimed to have resulted therefrom"—that the representation "played a substantial part … in influencing his decision." *OCM Principal Opportunities Fund*, 157 Cal. 4th at 864 (citation omitted). Plaintiff fails to do so. He says that he would not have entered into an "exclusive partnership deal with X" and devoted "time,

1   effort, and resources" to creating content had he known the "actual facts," Compl. ¶ 54, but

2   Plaintiff does not allege that the reason he agreed to partner with X was because the terms of the

3   deal would not be written down.  If anything, such a representation would have introduced

4   uncertainty and thereby *discouraged* Plaintiff from entering into any deal.

5          Regardless, any reliance would have been patently unreasonable because of Plaintiff's

6   and his agents' knowledge and experience.  *See Guido v. Koopman*, 1 Cal. App. 4th 837, 843, 2

7   Cal. Rptr. 2d 437, 440 (1991) ("In determining whether one can reasonably or justifiably rely on

8   an alleged misrepresentation, the knowledge, education and experience of the person claiming

9   reliance must be considered.").  As a sophisticated party experienced in dealmaking, it was

10  unreasonable for Plaintiff to rely on vague and subjective representations that a written

11  agreement was unnecessary to structure a multi-million-dollar deal.  *See, e.g.*, *IV Sols., Inc. v.*

12  *United HealthCare Servs., Inc.*, 2017 WL 3018079, at *8 (C.D. Cal. July 12, 2017) (California

13  courts "treat allegations of reliance with substantially more skepticism" where "an experienced

14  party who should have known better claims to have been misled").  This statement was allegedly

15  made at the outset of a negotiation process that spanned many months.  Plaintiff subsequently

16  relied on his team of "agents" to guide him through the negotiation process, which, as a matter of

17  law, renders unreasonable any reliance on puffery from Mr. Musk months earlier in deciding

18  whether to enter the alleged agreement.  *See Wilhelm v. Pray, Price, Williams & Russell*, 186

19  Cal. App. 3d 1324, 1331, 231 Cal. Rptr. 355, 358 (1986) (no justifiable reliance on statement of

20  an adversary where both parties were represented).  Indeed, Plaintiff does not allege that the

21  Parties did not ultimately determine that their negotiations should be reduced to writing.

22  Plaintiff has not—and cannot—plausibly allege that he entered into a contract *because of* the

23  statement that a written contract was unnecessary.

            **2.     Statement About Plaintiff Having "Full Authority and Control"
                     Over His Work**

25

26         Plaintiff also alleges that X promised him months before the alleged agreement that he

27  would have "full authority and control" over his work.  Compl. ¶¶ 19, 22.  Forward-looking

28  statements such as this generally are not actionable as fraud.  *Moody's*, 172 Cal. Rptr. 3d at

252.  Instead, to state a claim for "promissory fraud," a plaintiff must plausibly allege not only

the typical elements of fraud, but also that "the defendant made a promise to him that it had no

intention of performing" from the moment the promise was made.  *Moody's Invs. Serv., Inc.*,

226 Cal. App. 4th at 662.  Instead, to state a claim for "promissory fraud," a plaintiff must

plausibly allege not only the typical elements of fraud, but also that "the defendant made a

promise to him that it had no intention of performing" from the moment the promise was made.

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015).

Plaintiff has not satisfied that demanding standard.

a)   <u>Plaintiff Does Not Sufficiently Allege That Mr. Musk Did Not<br>Intend to Keep His Alleged Promise</u>

To sufficiently allege that Mr. Musk had no intention of performing the alleged promise

when it was made, Plaintiff must "plead[] facts from which it can be inferred" Mr. Musk did not

intend to perform the promise.  *UMG Recordings*, 117 F. Supp. 3d at 1108-1109.  These facts

must go beyond "an unkept but honest promise, or mere subsequent failure of performance."

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1183

(2013); *see also see also UMG Recordings*, 117 F. Supp. 3d at 1109.

The Complaint falls far short.  It offers only the bald allegations that Mr. Musk "had no

intention" of performing" the promise "and [has] not performed as promised."  Compl. ¶ 51.

These are "the very sort of general and conclusory allegations that are insufficient to state a fraud

claim," *Reeder*, 52 Cal. App. 5th at 804, and Plaintiff's allegation that Mr. Musk did not perform

the promise is insufficient as a matter of law to support his promissory fraud claim.  *Riverisland*,

55 Cal. 4th at 1183; *UMG Recordings*, 117 F. Supp. 3d at 1109.  Plaintiff attempts to overcome

his lack of facts by alleging that Defendants' true intent was to "publicize a partnership between

X and Lemon, and thereby associate and promote the X brand with Lemon's good name."

Compl. ¶¶ 29, 53.  But, again, Plaintiff alleges no facts to support this theory.  His allegations do

not show that Mr. Musk never intended to follow through on any supposed promise.  To the

contrary, they demonstrate the opposite—that Mr. Musk genuinely believed that Plaintiff and X

could form a productive and mutually beneficial partnership and that Mr. Musk changed course

only after Plaintiff soured the relationship by conducting an invasive and inappropriate interview of him.  At most, Plaintiff pleads that the contract was canceled one day after the interview, but he does not connect this back to Mr. Musk's alleged promise in any way.  Accordingly, Plaintiff has not plausibly alleged that X did not intend to fulfill its promise.

<strong>b)</strong> <u>Plaintiff Does Not Sufficiently Allege Justifiable Reliance</u>

This claim also fails because, for reasons explained in Section III.A, Plaintiff cannot plausibly allege that he justifiably relied on the alleged promise that he would have "full authority and control," Compl. ¶ 49, over his work, which is a necessary element of a promissory fraud claim.  *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010). The Complaint fails to plausibly allege that Plaintiff relied on Mr. Musk's purported promise to enter into the contract, let alone that his reliance was reasonable.  Plaintiff has decades of experience reinforced by the experience of his team of agents.  Compl. ¶¶ 11, 24.  If the promise was material to Plaintiff's decision to enter into the contract, then he and his agents should have—and would have—made sure that the agreement included this term.  Moreover, it was unreasonable for Plaintiff, as a represented, sophisticated, and educated party, to rely on the vague promise, made early in the negotiation process, that he would have "full authority and control over his work," Compl. ¶ 49, particularly when that requirement was not included in the alleged agreement.  *See IV Sols., Inc.*, 2017 WL 3018079, at *8; *Wilhelm*, 186 Cal. App. 3d at 1131; *Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 F. App'x 709, 712 (9th Cir. 2011).  The Complaint contains no allegations that transform Plaintiff's clearly unreasonable reliance on this alleged promise—to the extent that he relied on it at all—into actionable fraud.

**B.     Plaintiff's Claim that Mr. Musk Made Negligent Misrepresentations Similarly Does Not Survive Scrutiny**

Plaintiff alleges that these same two statements also support a claim for negligent misrepresentation.  Compl. ¶ 62.  The elements of a negligent misrepresentation claim and a fraud claim are "very similar"—indeed, only "the state of mind requirements are different." *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 781, 164 Cal. Rptr. 3d 601, 611

1  (2013).  As discussed above, Plaintiff fails to plead a misrepresentation, justifiable reliance, and

2  facts sufficient to show that Mr. Musk did not have a "reasonable ground" to believe his

3  statements were true.  *Id.*  Thus, Plaintiff cannot support his negligent misrepresentation claim.

4  *See supra* Section III.A.  Additionally, Plaintiff cannot plead a false promise as negligent

5  misrepresentation.  *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 331, 269 Cal.

6  Rptr. 3d 406, 412 (2020) ("[T]here is no recognized cause of action for a negligent

7  misrepresentation based on a false promise…").

8       **C.**     **Plaintiff Is Not Entitled To Unjust Enrichment**

9       "There is no separate cause of action for unjust enrichment under California law."  *Echo*

10  *& Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210, 1218 (E.D. Cal. 2023).

11  Accordingly, to the extent Plaintiff seeks to assert a claim for unjust enrichment against Mr.

12  Musk independent of the deficient fraud claims discussed above, Plaintiff's claim necessarily

13  fails.

14       To the extent Plaintiff is seeking restitution as a remedy for his fraud claims against Mr.

15  Musk, that remedy may be awarded only "where the defendant obtained a benefit from the

16  plaintiff by fraud, duress, conversion, or similar conduct," *see McBridge v. Boughton*, 123 Cal.

17  App. 4th 379, 388, 20 Cal. Rptr. 3d 115, 121-122 (2004), and there "must be some showing of

18  wrongdoing in obtaining the benefit," *AmGuard*, 698 F. Supp. 3d at 1218.  As explained *supra*

19  Section III.A-B, Plaintiff fails to plausibly allege that Mr. Musk engaged in fraud or any similar

20  wrongdoing.  If the court dismisses Plaintiff's fraud claim, then he likewise is not entitled to

21  restitution.

22       Even if Plaintiff sufficiently pleaded fraud, he nonetheless fails to allege that his actions

23  actually enriched Mr. Musk.  Instead, the Complaint states that "Lemon's well-known reputation,

24  likeness, identity, and good name was [sic] used by Defendants for their commercial benefit."

25  Compl. ¶ 33.  But there is no allegation that Mr. Musk personally received any monetary benefit

26  from Plaintiff's actions.  Instead, it is more plausible that Mr. Musk was commercially harmed

27  by any association with Plaintiff and the interview of Mr. Musk which Plaintiff subsequently

28  released.

-23-

## **CONCLUSION**

Mr. Musk respectfully requests the Court dismiss Plaintiff's claims against Mr. Musk for improper service and lack of personal jurisdiction, and to dismiss those claims with prejudice for failure to state a claim.  Alternatively, Mr. Musk respectfully requests that this case be transferred to the Western District of Texas.

Respectfully submitted,

Dated: September 23, 2024

WILMER CUTLER PICKERING
 HALE AND DORR LLP

By:   */s/ Ari Holtzblatt*

Ari Holtzblatt (SBN 354631)
Claire Bergeron (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
ari.holtzblatt@wilmerhale.com
claire.bergeron@wilmerhale.com

Noah S. Guiney (SBN 324079)
Wilmer Cutler Pickering
 Hale and Dorr LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone:  (628) 235-1151
Facsimile:  (628) 235-1001
noah.guiney@wilmerhale.com

*Attorneys for Specially Appearing Defendant
Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.  I also caused the above document to be sent to Plaintiff's counsel by email on September 23, 2024 and by overnight FedEx on September 24, 2024.

Dated: September 23, 2024                    By:   */s/ Ari Holtzblatt*
                                                        ARI HOLTZBLATT