Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
Bryan Kirsh, Esq., State Bar No. 318238
BKirsh@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
DON LEMON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DON LEMON,<br><br>        Plaintiff,<br><br>vs.<br><br>ELON MUSK; X CORP. DOING BUSINESS IN CALIFORNIA AS, X CORP., A NEVADA CORPORATION; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No.:  3:24-cv-06487-MMC<br><br>**The Honorable Maxine M. Chesney**<br><br>**PLAINTIFF DON LEMON'S OPPOSITION TO DEFENDANT X CORP.'S COMBINED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**<br><br>(Filed concurrently with Declaration of Bryan Kirsh and Exhibit; Objection to Defendant X Corp.'s Request for Judicial Notice; [Proposed] Order Denying Defendant X's Motion to Dismiss)<br><br>Date:      November 1, 2024<br>Time:      9:00 a.m.<br>Ctrm.:     7<br><br><br>Trial Date:      None Set<br>Action Filed:    August 1, 2024<br>Removal Date:    September 16, 2024 |

# TABLE OF CONTENTS

**Page**

1.  INTRODUCTION ............................................................................................. 1

2.  STATEMENT OF ISSUES TO BE DECIDED. ............................................. 2

3.  PROCEDURAL HISTORY. ........................................................................... 3

    A.  Plaintiff's Complaint. ........................................................................... 3

    B.  Lemon's Pending Motion to Remand Following Musk's Notice of Removal. .... 3

4.  THE OPERATIVE FACTS OF LEMON'S COMPLAINT. ......................... 3

    A.  Lemon's Exemplary Career as a Journalist. ....................................... 3

    B.  Defendants Sought Out Lemon to Enter Into an Exclusive Partnership Deal Amid Their Ongoing Struggle to Retain Advertisers. ......... 3

    C.  Defendants Make False Representations and Promises to Lemon. ..... 4

    D.  Lemon Enters Into The Contract Based Upon Defendants False Representations. .... 4

    E.  While Defendants Wrongfully Benefited, Lemon is Harmed As a Result of His Justifiable Reliance on Defendants' Misrepresentations. .... 4

5.  LEGAL STANDARD. ..................................................................................... 5

    A.  Lemon's Complaint is Subject to a Liberal Pleading Standard. ......... 5

    B.  Courts Apply Strict Standards for Granting Motions to Dismiss, Which Are *Disfavored* and *Rarely* Granted. .... 5

6.  ARGUMENT. ................................................................................................... 6

    A.  This Court Should Rule on Lemon's Motion to Remand Before Any Dispositive Motion As Subject Matter Jurisdiction is a Threshold Issue. .... 6

    B.  This Court Cannot Consider Defendants Extensic Facts and Uncitable Cases. .... 6

    C.  Lemon Sufficiently Pleads His Fifth Claim for Breach of Contract. ... 6

        (1)  Lemon Sufficiently Pleads The Existence of a Contract. ........ 7

            (a)  Lemon Sets Forth Sufficiently Definite Contract Terms. .... 7

            (b)  Defendants Arguments Regarding Indefinite Terms is Misguided. .... 8

            (c)  Lemon Sufficiently Pleads Enforceable Contract with Material Terms. .... 9

        (2)  Lemon Sufficiently Pleads His Performance of the Contract. ... 10

        (3)  Lemon Sufficiently Pleads the Remaining Breach of Contract Elements. .... 10

PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS AND MOTION TO STRIKE

(4)  X's Procedural Defect Argument Fails.                                                          11

(5)  Despite X's Arguments to the Contrary, the Statute of Frauds Does Not Apply.    11

    (a)  Based on the Allegations, the Contract Can Be Performed in One Year.    11

    (b)  The Term Providing for Compensation Beyond One Year is Immaterial.    12

    (c)  X Otherwise Failed to Prove its Statute of Frauds Affirmative Defense.    12

D.  Lemon Sufficiently Pleads His First Claim for Fraud (Misrepresentation).    13

    (1)  Lemon Sufficiently Pleads a Multitude of Actionable Misrepresentations.    13

        (a)  The Misrepresentations are Statements of Fact, Not Puffery.    13

        (b)  The Misrepresentations are Statements of Past or Existing Facts.    14

        (c)  Alternatively, the Misrepresentations are Actionable as False Promises.    14

        (d)  Alternatively, the Misrepresentations are Actionable as Special Opinions.    14

    (2)  Lemon Sufficiently Pleads Knowledge of Falsity (Scienter).    15

    (3)  Lemon Sufficiently Pleads X's Intent to Defraud and Induce Reliance.    16

    (4)  Lemon Sufficiently Pleads Actual and Justifiable Reliance.    18

E.  Lemon Sufficiently Pled His Fourth Claim for Negligent Misrepresentation.    20

F.  Lemon Sufficiently Pled His Third and Fourth Claims of Misappropriation.    20

    (1)  Lemon Did Not Consent to X's Use of His Name or Likeness.    20

    (2)  Lemon was Damaged Due to Defendants Misappropriation.    21

G.  Lemon Sufficiently Pled His Sixth Claim for Unjust Enrichment.    22

H.  Lemon's Claims Are Not Covered By Nor Invoke The Anti-SLAPP Statute.    24

I.  Leave to Amend Should be Granted if This Court is Inclined to Grant X's Motion.    25

7.  CONCLUSION.                                                                                    25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdul-Jabbar v. Gen. Motors Corp.* (9th Cir. 1996) 85 F.3d 407 .................................................. 22

*Ahn v. Scarlett*, 2017 U.S. Dist. LEXIS 49797, at *8 (N.D. Cal. Mar. 31, 2017) ................................. 14

*Allen v. City of Beverly Hills,* 911 F.2d 367 (9th Cir. 1990) ....................................................... 25

*Alliance Mortg. v. Rothwell*, 10 Cal.4th 1226 (1995) .................................................................. 20

*Anderson v. Deloitte & Touche*, 56 Cal.App.4th 1468 .................................................................. 16

*Annunziato v. Guthrie*, 2021 U.S. Dist. LEXIS 201288, at *7 (C.D. Cal. May 20, 2021) ...................................................................................................................... 8

*Arif Khan Glob. v. State Bank of India*, 2023 Cal.App.Unpub.LEXIS 5534 (Sep. 20, 2023) ...................................................................................................................... 6

*Astiana v. Hain Celestial Grp.*, 783 F.3d 753 (9th Cir. 2015) ..................................................... 23

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir. 1988) ............................................. 2, 5

*Beckwith v. Dahl*, 205 Cal. App.4th 1039 (2012) .................................................................. 15, 16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................... 1, 4, 5, 8

*Browand v. Ericsson Inc.*, 2018 U.S. Dist. LEXIS 129263, at *20 (N.D. Cal. Aug. 1, 2018) ...................................................................................................................... 13

*Buschman v. Anesthesia Bus. Consultants*, 42 F.Supp.3d 1244 (N.D. Cal. May 13, 2014) .................................................................................................................. 6, 10

*Bustamante v. Intuit*, 141 Cal.App.4th 199 (2006) ................................................................ 7, 9

*Card v. Ralph Lauren Corp.*, 2018 U.S. Dist. LEXIS 204473, at *3 (N.D. Cal. Dec. 3, 2018) ...................................................................................................................... 12

*Cavender v. Wells Fargo*, 2016 U.S. Dist. LEXIS 120176, at *4 (N.D. Cal. Sept. 6, 2016) ...................................................................................................................... 14

*CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226 (2008) ..................................................... 6

*Chapman v. Skype*, 220 Cal.App.4th 217 (2013) .................................................................... 20

*Choi v. 8th Bridge Capital*, 2018 U.S. Dist. LEXIS 118421, at *38 (C.D. Cal. July 16, 2018) ...................................................................................................................... 12

*Cohen v. Facebook*, 798 F.Supp.2d 1090 (N.D. Cal. 2011) ......................................................... 21

*Colle v. Brazos County,* 981 F.2d 237 (5th Cir. 1993) ............................................................... 5

*Collondrez v. City of Rio Vista,* (2002) 61 Cal.App.5th 1039 .............................................. 24

*Conley v. Gibson,* 355 U.S. 41 (1957) ......................................................................... 1, 4, 5

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir. 1990) ................................. 14

*Curley v. Wells Fargo*, 2014 U.S. Dist. LEXIS 177338, at *23 (N.D. Cal. Dec. 23, 2014).......................................................................................................... 18

*De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir. 1978) ............................................................. 5

*Dedicato Treatment v. Cigna Health & Life*, 2017 U.S. Dist. LEXIS 220004, at *4 (C.D. Cal. Aug. 24, 2017) ...................................................................................... 8

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995).............................................................. 25

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)............................................. 20

*Duran v. Duran* 150 Cal.App.3d 176 (1983) .................................................................... 9

*Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951 ......................................... 15, 18

*Ersa Grae Corp. v. Fluor Corp.*, 1 Cal.App.4th 613 (2006) .................................................. 7

*Foman v. Davis*, 371 U.S. 178 (1962) .......................................................................... 25

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip.*, 868 F.Supp.2d 983 (E.D. Cal. 2012)........................................................................................................... 14

*Fraley v. Facebook*, 830 F.Supp.2d 785 (N.D. Cal. 2011)................................................ 21, 22

*Furla v. Jon Douglas Co.*, 65 Cal.App.4th 1069 (1998) ...................................................... 14

*Galaxia Elecs. Co. v. Luxmax*, 2024 U.S. Dist. LEXIS 78060, at *26 (C.D. Cal. Mar. 6, 2024)................................................................................................... 16, 18

*Galea v. Lincoln Nat'l Corp.*, 2013 U.S. Dist. LEXIS 203509, at *11-12 (S.D. Cal. Oct. 31, 2013)...................................................................................................... 20

*Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246 (9th Cir. 1997) ....................................... 1, 5

*Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542 (9th Cir. 1989) .......................... 1, 6

*Hall v. S. Beach Skin Care*, 2014 U.S. Dist. LEXIS 47065, at *9 (C.D. Cal. Apr. 2, 2014)........................................................................................................... 21

*Harris v. Rudin, Richman & Appel*, 74 Cal.App.4th 299 (1999)............................................. 9

*Hart v. Darwish*, 12 Cal.App.5th 218 (2017) .................................................................. 25

*Hebberd-Kulow Enterprises v. Kelomar*, 218 Cal.App.4th 272 (2013) ................................... 9

*Hidden Empire Holdings v. Angelone*, 2023 U.S. Dist. LEXIS 82247, at *30 (C.D. Cal. May 10, 2023)................................................................................................ 9, 23

*Hinesley v. Oakshade Town Center*, 135 Cal.App.4th 289 (2005)............................................................. 13

*Hodgson v. Roper*, 2020 U.S. Dist. LEXIS 155340, at *30 (E.D. Cal. Aug. 25, 2020) ........................ 15

*Holmes v. Lerner*, 74 Cal.App.4th 442 (1999) ...................................................................................... 11

*Hsieh v. Xu*, 2016 U.S. Dist. LEXIS 197737, at *40 (C.D. Cal. Apr. 7, 2016)..................................... 19

*Hunter v. CBS Broadcasting* (2013) 221 Cal.App.4th 1510..................................................................... 24

*Idc Logistics Inc. v. Dile Sols. LLC*, 2023 U.S. Dist. LEXIS 128050, at *47-49 (C.D. Cal. June 16, 2023)........................................................................................................................... 23

*In re Ronduen*, 2023 U.S. Dist. LEXIS 116337, at *36 (C.D. Cal. July 6, 2023) ................................ 16

*In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017).............................. 23

*Keating v. City of Miami,* 598 F.3d 753 (11th Cir. 2010)........................................................................... 6

*Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612 (1993)............................................................... 9

*Lazar v. Sup. Ct.* (1996) 12 Cal.4th 631 ............................................................................................. 13, 14

*Lightbourne v. Printroom* (C.D. Cal. 2015) 122 F.Supp.3d 942 .............................................................. 21

*Long v. Authentic Athletix LLC*, 2017 U.S. Dist. LEXIS 39916, at *16 (N.D. Cal. Mar. 20, 2017)................................................................................................................................ 8, 12

*Marin County v. Deloitte*, 836 F.Supp.2d 1030 (N.D. Cal. 2011) ........................................................... 13

*MBM Paint, Inc. v. Miller Paint Co.*, 2024 WL 3075273, at *5 (C.D. Cal. May 2, 2024)......................................................................................................................................... 6

*McBride v. Boughton*, 123 Cal.App.4th 379 (2004) ................................................................................ 23

*Medallion Film LLC v. Loeb & Loeb LLP*, 100 Cal.App.5th 1272 (2024) ............................................ 19

*Mewawalla v. Middleman*, 601 F.Supp.3d 574 (N.D. Cal. 2022) ............................................................ 8

*Moncada v. West Coast Quartz*, 221 Cal.App.4th 768 (2013) ................................................................. 7

*Murdock v. Marolina Outdoor*, 2024 U.S. Dist. LEXIS 73100, at *5 (C.D. Cal. Apr. 22, 2024)..................................................................................................................................... 25

*Navellier v. Sletten* 29 Cal.4th 82 (2002)............................................................................................... 25

*Opperman v. Path, Inc.*, 87 F.Supp.3d 1018 (N.D. Cal. 2014)................................................................ 21

*Orthopedic Sys., Inc. v. Schlein* (2011) 202 Cal.App.4th 529 ................................................................. 22

*P&H Casters Co. v. P&H Indus.*, 2024 U.S. Dist. LEXIS 152954, at *15 (C.D. Cal. Aug. 26, 2024)................................................................................................................................. 15

*Pareto v. FDIC,* 139 F.3d 696 (9th Cir. 1998) ........................................................................................ 5

*Patel v. Liebermensch*, 45 Cal.4th 344 (2008)............................................................... 7

*Peloza v. Capistrano United School Dist.,* 37 F.3d 517 (9th Cir. 1994) ........................ 5

*People v. Harris*, 93 Cal.App.3d 103 (1979)................................................................. 21

*Planned Parenthood v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018).............. 25

*Plumlee v. Poag*, 150 Cal.App.3d 541 (1984) ............................................................... 11

*R Power Biofuels, LLC v. Chemex LLC*, 2017 U.S. Dist. LEXIS 47129, at *31 (N.D. Cal. Mar. 29, 2017) ................................................................................................ 17

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 539 (9th Cir. 1984)......................... 1

*Rutherford Holdings v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014) .......................... 23

*Sabatini v. Hensley*, 161 Cal.App.2d 172 (1958) ........................................................... 8

*Sanchez-Scott v. Alza Pharm.*, 86 Cal.App.4th 365 (2001) ......................................... 21

*Sanjuan v. Am. Bd. of Psychiatry & Neurology,* 40 F.3d 247 (7th Cir. 1995)................. 5

*Seeger v. Odell* (1941) 18 Cal.2d 409 ........................................................................... 19

*State Farm v. Penske Truck Leasing Co.*, 2021 U.S.App.LEXIS 30921, at *5 (9th Cir. Oct. 15, 2021)........................................................................................................... 6

*Stockton Mortgage v. Tope* (2014) 233 Cal.App.4th 437 ............................................. 20

*Sunrise Senior Living Mgmt. v. Midstone, Inc.*, 2022 U.S. Dist. LEXIS 181036, at *11 (C.D. Cal. Sep. 30, 2022) ....................................................................................... 18

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)........................................................ 4

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18 (1985) .......................................................... 17

*Thompson v. Schurman*, 65 Cal.App.2d 432 (1944)....................................................... 9

*Thrifty Payless v. Americana at Brand*, 218 Cal.App.4th 1230 (2013)......................... 15

*Thrifty-Tel v. Bezenek* (1996) 46 Cal.App.4th 1559 ..................................................... 17

*Toumajian v. Frailey*, 135 F. 3d 648 (9th Cir. 1998) ..................................................... 6

*Tyco Industries v. Sup. Ct.*, 164 Cal.App.3d 148 (1985) ............................................. 15

*UMG Recordings v. Glob. Eagle Entm't*, 117 F.Supp.3d 1092 (C.D. Cal. 2015)............ 15, 20

*Union Flower Mkt. v. Southern Cal. Flower Mkt.* (1938) 10 Cal. 2d 671 .................... 14

*United States v. Gay*, 967 F.2d 322 (9th Cir. 1992)....................................................... 13

*United States v. Harkonen*, 510 F.App'x.633 (9th Cir. 2013) ...................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS AND MOTION TO STRIKE

*United States v. Redwood City,* 640 F.2d 963 (9th Cir. 1981) ........................................... 5

*Universal By-Products v. City of Modesto* (1974) 43 Cal.App.3d 145 ................................ 17

*White Lighting Co. v. Wolfso*, 68 Cal.2d 336 (1968) ........................................... 11, 12

*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324 ......................... 19

*Wilson v. Cable News Network*, 7 Cal.5th 871 ........................................... 24, 25

*Zhai v. Zhang*, 2018 U.S. Dist. LEXIS 223804, at *11 (C.D. Cal. Nov. 5, 2018) ............... 8, 16

**Statutes**

Civil Code § 1610 ........................................................................................................... 8

Civil Code § 1624 ......................................................................................................... 11

Civil Code § 3344 ...................................................................................................... 2, 21

Code of Civil Procedure § 430.10 ................................................................................ 11

**Other Authorities**

Rest. (2d) of Torts § 892B (1979) ................................................................................. 21

**Rules**

California Rules of Court, Rule 12 ........................................................................ 1, 5, 6, 24

California Rules of Court, Rule 8.1115 ........................................................................... 6

Federal Rules of Civil Procedure, Rule 9 ..................................................................... 16

**Treatises**

Weil & Brown, *Fed. Civ. Pro. Bef. Trial* (The Rutter Group), § 9:187 ............................. 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Defendant X Corp.'s ("X") motion to dismiss and strike Plaintiff Don Lemon's Complaint fails to properly analyze the Complaint under the pleading standards before this Court and instead relies on conclusory arguments supported by extrinsic facts without evidentiary support.

**First**, **Lemon respectfully requests the Court adjudicate the motion to remand before Defendants dispositive motions because subject matter jurisdiction is a threshold issue**, as stated in greater detail in his Motion to Remand. (Dkt No. 15, Lemon's Motion to Remand, at 22:26-23:25).

**Second, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."** *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). Further, parties **cannot** present and courts **cannot** consider evidence outside the complaint when deciding a Rule 12(b)(6) motion to dismiss. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 (9th Cir. 1989). Rather than consider only the four corners of the Complaint and the inferences drawn therefrom, X's motion fails in light of the high standard placed before it, as it relies on extrinsic facts without evidentiary support that this Court cannot consider in an attempt to circumvent meritless arguments.

**Third**, **X fails to meet its burden of establishing that Lemon's claims suffer from (1) a lack of a cognizable theory or (2) insufficient facts under a cognizable legal theory**. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 539 (9th Cir. 1984). Lemon's well pleaded Complaint provides X with "fair notice" of what his claims are, as well as the grounds upon which they rest, and therefore satisfies the federal rules. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007), *citing Conley v. Gibson,* 355 U.S. 41, 47-48 (1957) (so long as a federal complaint gives the defendant a "fair notice of what the . . . claim is and the grounds upon which it rests . . ." it satisfies the federal rules).

**Fourth**, **Lemon sufficiently pleads a claim for breach of contract**, including that the Parties agreed to a **"one-year deal"** where in exchange for Lemon providing long-form and short-form video content, Defendants agreed to pay $1,500,000 with additional incentives a percentage of advertising revenue. The terms are sufficiently definite because a **motion to dismiss "for uncertainty is strictly construed, even where a complaint is in some respects uncertain."** Moreover, X has not proved its statute of frauds affirmative defense applies as a matter of law.

**Fifth**, **Lemon sufficiently pleads a claim for fraud and negligent misrepresentation**. Lemon specifies the misrepresentations—including that Musk told him: **(1)** *"I want you on the [X] platform;"* **(2)** *Lemon "would have full authority and control over the work he produced even if disliked by Defendants;"* and **(3)** *"there would be no need for a formal written agreement or to 'fill out paperwork.'"* Likewise, that Yaccarino and Wietz told him Lemon that he: **(4)** *"had Defendants' full support;"* **(5)** *"would have full authority over his work;"* and **(6)** *"should not have concerns about Defendants imposing on his work or not agreeing with anything he does."* These representations are "quantifiable, actionable misstatements that go significantly beyond "general assertions" and can be proven or disproven. Moreover, Lemon sufficiently pleads *in detail* how Defendants had a fraudulent state of mind, an intent to defraud and induce reliance, and Lemon's subsequent reasonable reliance.

**Sixth**, **Lemon sufficiently pleads his claims for misappropriation**, and in particular, that **Defendants did not have consent to use Lemon's name and likeness** when they knowingly and intentionally did so without his authorization or consent, **which was improper based upon fraud**.

**Seventh**, **Lemon sufficiently pleads a claim for unjust enrichment** because despite X's argument to the contrary, Lemon alleges that **X was enriched by the benefits and services he provided to X, and the law is clear that this is an actionable claim**.

If the Court is inclined to grant X's motion, the Court should allow Lemon leave to amend, as "the standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). For these reasons and the additional ones below, Lemon respectfully requests that this Court deny defendants' motion to dismiss his Complaint.

## 2.   STATEMENT OF ISSUES TO BE DECIDED.

Whether the Court should: **(1)** first rule on Lemon's motion to remand before defendants' dispositive motions because subject matter jurisdiction is a threshold issue; **(2)** deny X's motion to dismiss because Lemon has adequately alleged sufficient allegations for each cause of action pursuant to FRCP Rule 8, 12(b)(6), and 9(b); **(3)** deny X's motion to strike Lemon's claims either because **(a)** the claims do not invoke California's anti-SLAPP statute; and/or **(b)** Lemon alleged sufficient allegations for each cause of action; and **(4)** grant Lemon leave to amend the complaint should the Court not be able to fully deny X's motion as pled.

### 3.   PROCEDURAL HISTORY.

#### A.   Plaintiff's Complaint.

Lemon filed the instant action in the San Francisco County Superior Court on August 1, 2024 (Case No. CGC-24-616892), alleging only state law claims. As originally filed, the Complaint included claims for: (1) fraud, (2) negligent misrepresentation, (3) misappropriation of name and likeness (common law), (4) misappropriation of name and likeness (California Civil Code § 3344), (5) breach of express contract, and (6) unjust enrichment. (Declaration of Bryan Kirsh ("Kirsh Decl."), ¶ 2, Exh. 1, Lemon's Complaint for Damages ("Compl.").)

#### B.   Lemon's Pending Motion to Remand Following Musk's Notice of Removal.

On September 16, 2024, defendant Elon Musk ("Musk") filed his Notice of Removal to Federal Court. (Dkt No. 1.) On October 2, 2024, Lemon filed his Motion to Remand to State Court, which, as of the time of this motion, is still pending. (Dkt No. 15, Motion to Remand.)

### 4.   THE OPERATIVE FACTS OF LEMON'S COMPLAINT.

#### A.   Lemon's Exemplary Career as a Journalist.

Lemon is an American journalist best known for his work with CNN from 2006 until April 2023. (Kirsh Decl., ¶ 2, Exh. 1, Compl., at 1:5-11.) At all times, Lemon has been an exemplary journalist known "for sticking his finger in the eyes of powerful people," "asking uncomfortable questions," and "as a Black, gay man, fighting to make diverse viewpoints heard." (*Id.*)

#### B.   Defendants Sought Out Lemon to Enter Into an Exclusive Partnership Deal Amid Their Ongoing Struggle to Retain Advertisers.

Following Musk completing his move to purchase X (then known as Twitter) in or around October 2022, Musk fired top executives, laid off a significant portion of staff, and reinstated banned accounts. (*Id.* at 1:12-19.) In response, major companies suspended and decreased advertising on X. (*Id.*) Amid Defendants struggle to retain advertisers, they sought to affiliate with reputable figures whose name, likeness and reputation they could use as leverage to retain advertisers. (*Id.*) Lemon was a top prospect, and thus, Defendants saw an opportunity and sought to reach an exclusive partnership deal with Lemon in or around May/June 2023, following his termination at CNN, when he was vulnerable. (*Id.*)

///

**C.   Defendants Make False Representations and Promises to Lemon.**

After Lemon expressed reservations about an exclusive partnership deal given the ongoing controversies on the X platform, Defendants remained undeterred, going on to induce Lemon through false representations about what would be expected of them and how much Lemon would be compensated to get him to agree, all while concealing material facts from him. (*Id.* at 1:20-2:1.)

Musk represented to Lemon in a June 16, 2023 phone call: **(1)** *"I want you on the [X] platform;"* **(2)** *that he "would have full authority and control over the work he produced even if disliked by Defendants;"* and **(3)** *"there would be no need for a formal written agreement or to fill out paperwork."* (*Id.* at ¶¶ 19, 21). Yaccarino and Wietz represented to Lemon in a December 14, 2023 meeting that he: **(4)** *"had Defendants' full support;"* **(5)** *"would have full authority over his work;"* and **(6)** *"should not have concerns about Defendants imposing on his work or not agreeing with anything he does."* (*Id.*)

Defendants did this to accomplish what they truly intended to do—publicize a partnership between X and Lemon, and thereby associate the X brand with Lemon's good name, likeness, and reputation, to: (a) rehabilitate Defendants' reputation; (b) sell advertisers on the X platform; and (c) otherwise gain an advantage commercially. (*Id.* at 1:20-2:1.)

**D.   Lemon Enters Into The Contract Based Upon Defendants False Representations.**

In reliance upon Defendants representations and after X engaged in a series of negotiations with Lemon's agents, Lemon agreed to a ***"one-year deal"*** that was closed on or about January 8, 2024 (*Id.* at ¶ 24.) Pursuant to its terms, in exchange for Lemon providing Defendants 1 piece of long-form video content per week and 10 pieces of short-form video content per month, Defendants agreed to pay him $1,500,000 with additional incentives including performance threshold payments, a percentage of advertising revenue, a percentage of advertising revenue from content creators that Lemon referred to X, and allow Lemon the option to renew the one-year deal his sole discretion. (*Id.* at ¶¶ 24-26.)

**E.   While Defendants Wrongfully Benefited, Lemon is Harmed As a Result of His Justifiable Reliance on Defendants' Misrepresentations.**

Contrary to the representations made to Lemon, once Defendants were enriched and gained the benefits of using Lemon's name, likeness, and reputation, they reneged on their express agreement with Lemon in or around March 2024 and failed to compensate him, citing to false pretenses for their breach

of the partnership agreement. (*Id.* at 2:3-14.) This breach came after Lemon had gone to great lengths and incurred hundreds of thousands of dollars of expenses in forming his own media company. (*Id.*)

## 5.  LEGAL STANDARD.

### A.  Lemon's Complaint is Subject to a Liberal Pleading Standard.

The U.S. Supreme Court has described the standard for a federal complaint as a *very low threshold.* *Bell Atlantic Corp.*, *supra*, 550 U.S. at 554, *citing Conley*, 355 U.S. at 47-48 (so long as a complaint gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests . . . ," it satisfies the federal rules). In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), the court emphasized the general notice pleading requirement:

> "[FRCP Rule] 8(a)(2), which provides that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."

*Id.* at 522 (citation omitted); *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998) (facts in a complaint, and reasonable inferences, must be accepted as true and construed in the light most favorable to plaintiff).

### B.  Courts Apply Strict Standards for Granting Motions to Dismiss, Which Are *Disfavored* and *Rarely* Granted.

"The motion to dismiss for failure to state a claim is viewed with *disfavor* and is *rarely* granted." Weil & Brown, *supra*, at § 9:210, *citing Gilligan*, *supra*, 108 F.3d at 249; *Colle v. Brazos County,* 981 F.2d 237, 243 (5th Cir. 1993) ("[C]hallenges to 'bare-bones pleadings' are doomed with respect to an attack based on a failure to state a claim). Rule 12(b)(6) dismissals are proper only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). The pleadings in the operative complaint "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano United School Dist.,* 37 F.3d 517, 521 (9th Cir. 1994). Specifically, the purpose of a Rule 12(b)(6) motion to dismiss is to test the *legal sufficiency* of the complaint, *not to resolve the case on its merits. De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978).

In ruling on a motion to dismiss for failure to state a claim, the court must construe the complaint on the assumption that all allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp., supra*,

550 U.S. at 544. Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza*, *supra*, 37 F.3d at 521. The court must decide whether the facts alleged, if true, would entitle plaintiff to relief. Unless the answer is unequivocally "no," the motion *must* be denied. *Conley*, 355 U.S. at 45-46; *De La Cruz*, *supra*, 582 F.2d at at 48. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*, 901 F.2d 696, 699 (9th Cir. 1990). If any facts, even hypothesized facts, could be proven consistent with the complaint, the complaint must not be dismissed. *Sanjuan v. Am. Bd. of Psychiatry & Neurology,* 40 F.3d 247, 251 (7th Cir. 1995).

### 6.  ARGUMENT.

#### A.  This Court Should Rule on Lemon's Motion to Remand Before Any Dispositive Motion As Subject Matter Jurisdiction is a Threshold Issue.

*"Challenges to the court's power to rule must of necessity be determined before the court may rule on the merits.*" *Toumajian v. Frailey*, 135 F. 3d 648, 657-58 (9th Cir. 1998). As a result, ***Lemon respectfully requests the Court adjudicate the motion to remand before Defendants dispositive motions because subject matter jurisdiction is a threshold issue,*** as stated in greater detail in his Motion to Remand. (Dkt No. 15, Lemon's Motion to Remand, at 22:26-23:25).

#### B.  This Court Cannot Consider Defendants Extensic Facts and Uncitable Cases.

*First*, a Rule 12(b)(6) motion does not permit evidence outside the pleadings, and the pleadings must be accepted as true. *Hal Roach*, *supra*, 896 F.2d at 1555; *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010). X's extrinsic facts with no admissible evidentiary support *must* not be considered.

*Second*, Defendants cite to unpublished and uncitable opinions including *Arif Khan Glob. v. State Bank of India*, 2023 Cal.App.Unpub.LEXIS 5534 (Sep. 20, 2023). This should be disregarded as Courts and parties are prohibited from citing or relying on such opinions pursuant to California Rules of Court, Rule 8.1115. *State Farm v. Penske Truck Leasing*, 2021 U.S.App.LEXIS 30921, at *5 (9th Cir. Oct. 15, 2021). Moreover, X's citation to *MBM Paint, Inc. v. Miller Paint Co.*, 2024 WL 3075273, at *5 (C.D. Cal. May 2, 2024) does not relate to what X asserts in its motion. (Dkt No. 13, at 9:21-23.)

#### C.  Lemon Sufficiently Pleads His Fifth Claim for Breach of Contract.

To state a claim for breach of express contract, Lemon must allege: (1) the existence of a contract;

(2) his performance of the contract or excuse for nonperformance; (3) defendant's breach; and (4) damages resulting from the breach. *Buschman v. Anesthesia Bus. Consultants*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. May 13, 2014) (*citing CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)). Breach of contract claims are subject to the notice pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

### (1) Lemon Sufficiently Pleads The Existence of a Contract.

#### (a) Lemon Sets Forth Sufficiently Definite Contract Terms.

*First*, X argues that Lemon fails to plead the existence of a contract with sufficient certainty. To survive a motion to dismiss, an alleged contract must be sufficiently definite, so that the court may "ascertain the parties' obligations and . . . determine whether those obligations have been performed or breached." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal.App.4th 613, 623 (2006). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Bustamante v. Intuit*, 141 Cal.App.4th 199, 209 (2006). "[I]f, by contrast, a supposed contract does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." *Id.* (citations and quotations omitted). The "law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained." *Moncada v. West Coast Quartz*, 221 Cal.App.4th 768, 777 (2013); *Patel v. Liebermensch*, 45 Cal.4th 344, 349 (2008).

Here, Lemon has alleged sufficiently definite terms of an express contract with X:

> "24. After a series of negotiations with Lemon's agents and Lemon's transparency about his hesitations—Defendants, as a means to induce Lemon to agree to this exclusive partnership deal with X, then represented to Lemon on or around January 8, 2024 that he would receive a ***one-year deal*** with X if he agreed to provide Defendants exclusive rights to specific video content for a 24-hour period before it could be dispersed to other platforms: **(1)** one piece of long-form video content (that is not breaking news) per week; and **(2)** ten pieces of short-form video content per month."

> "25. In exchange, Defendants agreed they would pay him $1,500,000 guaranteed ($200,000 paid up-front within 3 business days and the remainder paid in quarterly installments), with additional incentives including—**(1)** the option to renew the one-year deal two times with the same terms, at Lemon's sole discretion; **(2)** 60 percent of the gross advertising revenue that X received for programmatic advertising generated from Lemon's content on X; **(3)** performance threshold payments ($250,000 for reaching 4 million followers, $500,000 for

reaching 6 million followers, $750,000 for reaching 8 million followers, and $1,000,000 for reaching 10 million followers); **(4)** $500,000 in advertising credits on the X Platform; **(5)** for a period of 48 months, 10 percent of the net revenue that X receives once it exceeds $350,000 for content creators that Lemon referred to X; and **(6)** that all content created by Lemon (and its underlying intellectual property) originating on or distributed on X is wholly-owned by him."

"26. … Lemon agreed to enter this exclusive partnership deal with Defendants on or about January 8, 2024."

(Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 24-26.)

Thereafter, Defendants publicly announced on social media "a new content partnership with [Don Lemon] for his new project," "touted Lemon as their partner" during an exclusive dinner with major advertising brands, and between January and February 2024, "continued to use Lemon's name, likeness, identity, and reputation in marketing and promotional activities . . . for Defendants' commercial benefit." (*Id.* at ¶¶ 31, 34, 36.) As a result, and in conjunction with X's contact substantiating the existence of a contract, Lemon sufficiently alleges a valid contract with sufficiently definite terms. *See Long v. Authentic Athletix LLC*, 2017 U.S. Dist. LEXIS 39916, at *16 (N.D. Cal. Mar. 20, 2017); *Mewawalla v. Middleman*, 601 F.Supp.3d 574, 605 (N.D. Cal. 2022) ("Although mutual assent is a prerequisite for contract formation, an adequate pleading need only allege the contract's existence.").

### (b)   Defendants Arguments Regarding Indefinite Terms is Misguided.

**Second**, X argues that the alleged contract is indefinite because it does not specify: (1) the type of video content that Lemon granted X rights (it does), (2) the incentives that Lemon was entitled too (it does), (3) what constitutes programmatic advertising, (4) the process by which Lemon could refer content creators to X and receive payment, and (5) the contract's effective date. (Dkt No. 13, X's Motion to Dismiss, at 8:19-9:4, 9:9-13.) However, Lemon does allege specific detail about the type of video content and incentives that he was entitled to. (Kirsh Decl., Exh. 1, Compl., ¶¶ 24-26.). It is also not material Lemon specify the procedure in which he receives the monetary incentives. Cal. Civ. Code § 1610.

***Moreover, Lemon does not need to plead his breach of contract claim "with such specificity as this stage,"*** including allegations about the definition of programmatic advertising or when the effective date of the contract is. *Annunziato v. Guthrie*, 2021 U.S. Dist. LEXIS 201288, at *7 (C.D. Cal. May 20, 2021) (denying motion to dismiss on plaintiff's breach of contract claim when plaintiff did not need to specify who made the offer, who accepted the offer, where the contract was formed, or the contract's

duration). ***Rather, Lemon merely needs to provide "enough facts to state a claim to relief that is plausible on its face."*** *Zhai v. Zhang*, 2018 U.S. Dist. LEXIS 223804, at *11 (C.D. Cal. Nov. 5, 2018) (*citing Twombly*, 550 U.S. at 570); *Dedicato Treatment v. Cigna Health & Life*, 2017 U.S. Dist. LEXIS 220004, at *4 (C.D. Cal. Aug. 24, 2017) (plaintiff "need only plead a 'short and plain statement' of the claim showing that it is entitled to relief" to survive a motion to dismiss on a breach of contract claim).

As such, these **terms are sufficiently definite and enforceable because a motion to dismiss "for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures."** *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 616 (1993).

### (c)   Lemon Sufficiently Pleads Enforceable Contract with Material Terms.

***Third***, X argues that Lemon fails to allege that he and X reached an agreement on all "the essential terms of a prospective contract," that "the Parties still had to negotiate many other essential provisions, without which no contract could be formed," and that the alleged agreement reflects "only preliminary negotiations, rather than formation of a contract," (Dkt. No. 13, X's Motion to Dismiss, at 10:8-10); in essence, an "agreement to agree" which is unenforceable. *Bustamante*, *supra*, 141 Cal.App.4th at 213 ("Preliminary negotiations or [agreements] for future negotiations are not the functional equivalent of a valid, subsisting agreement."); *but see Thompson v. Schurman*, 65 Cal.App.2d 432, 440-441 (1944) (agreement contemplating execution of a more formal written contract is still a contract if it contains all essential terms and conditions). However, unlike cases where "the evidence establishes at best an agreement to agree was formed, . . . ***there are no allegations in [Lemon's Complaint] that suggest the [exclusive] partnership [deal] was contingent on some future event that never transpired. . . ."*** *Hidden Empire Holdings v. Angelone*, 2023 U.S. Dist. LEXIS 82247, at *30 (C.D. Cal. May 10, 2023). To the contrary, Lemon alleged "sufficient facts, taken as true, [that] nudge his theory over the line of plausibility and [show] an agreement to form a[n] [exclusive] partnership [deal] materialized. . . ." *Id.*

Moreover, ***the intent of the parties***, including whether all material terms were agreed to or whether the parties intended to formalize a contract as argued by X despite their being no allegations reflecting anything to such effect, ***is a factual question not to be resolved in a motion to dismiss***. *Duran v. Duran* 150 Cal.App.3d 176, 181 (1983). At this stage, the Court is not permitted to inquire further because

"[w]hether the parties intended their communications to be a binding . . . agreement or an agreement to further negotiate after a formal draft was prepared is a factual question not properly the subject of a demurrer." *Harris v. Rudin, Richman & Appel*, 74 Cal.App.4th 299, 308-309 (1999); *Hebberd-Kulow Enterprises v. Kelomar*, 218 Cal.App.4th 272, 283-284 (2013) (finding "whether parties have reached a contractual agreement and on what terms are questions for the fact finder when conflicting versions of the parties' negotiations require a determination of credibility.").

**(2)   Lemon Sufficiently Pleads His Performance of the Contract.**

For the second element, Lemon must allege facts showing his performance of the contract, *Buschman*, 42 F.Supp.3d at 1250. Here, Lemon sufficiently pleads his performance of the contract:

> "93.   Defendants, through their employees and agents, entered into an express agreement [and] ***Lemon performed all duties required of him under the agreement***."

> "38.   Lemon interviewed Musk on March 8, 2024. . . . ***By this time, Lemon had spent a considerable amount of time, effort, and resources in creating exclusive content for Defendants, all to his detriment. Lemon had spent hundreds of thousands of dollars*** creating his own media company, collaborated with his agents based in California on what his new show would look like, sought business proposals from numerous production companies, entered into a production deal with a content studio and production company, created a production studio where he could record his video content, purchased production equipment, hired a production staff, and assembled a production team. . . ."

(Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 38, 98.)

Furthermore, while X claims that Lemon "never alleges that Plaintiff sought payment or that X made a payment of $200,000 on or around January 11, 2024" (Dkt No. 13, X's Motion to Dismiss, at 10:12-14), Lemon makes clear that "Defendants . . . failed to issue a single payment to Lemon despite his requests pursuant to their express agreement." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 38.)

**(3)   Lemon Sufficiently Pleads the Remaining Breach of Contract Elements.**

For the third and fourth elements, Lemon must allege facts showing X's breach of the contract and that Lemon suffered damages resulting from the breach. *Buschman*, 42 F.Supp.3d at 1250. While X raises no argument to the contrary, Lemon sufficiently pleads X's breach, and the resulting damages he suffered:

> "38.   [Defendants] failed to issue a single payment to Lemon despite his requests pursuant to their express agreement."

> "94.   Defendants falsely claim that the contract was cancelled and/or that an express agreement was never agreed to, violating the express agreement they had with Lemon."

"95.   As a proximate result of Defendants' willful breach of the express
contract, Lemon has suffered and continues to suffer special and general damages,
including losses of earnings and benefits, in a sum according to proof."

(Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 38, 94-95.) Moreover, because Lemon alleges a breach of contract

based on a "complete[] renounce[ment]," as opposed to "enforcement of a single term," the "agreement

that was made and the subsequent acts of the parties supply sufficient certainty to determine the existence

of a breach and a remedy." *Holmes v. Lerner*, 74 Cal.App.4th 442, 459 (1999).

### (4)   X's Procedural Defect Argument Fails.

X raises a procedural defect with the Complaint claiming it does not comply with California Code

of Civil Procedure § 430.10(g), which requires that the nature of the contract—written, oral, or implied

by conduct—be "ascertain[able]" from the complaint. However, Lemon alleges that X, through its

"employees and agents, entered into an express agreement referred to as an exclusive content partnership

deal with Lemon that was closed on or around January 8, 2024" after X engaged in a "series of

negotiations with Lemon's agents." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 24.) Reading these allegations,

along with the remainder of the Complaint, it is clear how the contract was manifested.

### (5)   Despite X's Arguments to the Contrary, the Statute of Frauds Does Not Apply.

### (a)   Based on the Allegations, the Contract Can Be Performed in One Year.

***First***, the statute of frauds provides that an "agreement that by its terms ***is not to be performed***

***within a year from the making thereof***" is invalid unless the agreement, or some note of memorandum

thereof, is in writing. Cal. Civ. Code § 1624(a)(1). The statute of frauds is ***construed narrowly and***

***"applies only to those contracts which, by their terms, cannot possibly be performed within one year."***

*White Lighting Co. v. Wolfso*, 68 Cal.2d 336, 343 (1968). Accordingly, ***"if by its terms performance of***

***a contract is possible within one year, the contract does not fall within the statute even though it is***

***probable that it will extend beyond one year."*** *Plumlee v. Poag*, 150 Cal.App.3d 541, 548-49 (1984).

Here, the contract between Lemon and Defendants was closed on or about January 8, 2024 after X

engaged in a "series of negotiations with Lemon's agents." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 24.) The

contract was explicitly a ***"one-year deal"*** with Lemon having the option to renew at his sole discretion.

(*Id.*) Pursuant to its terms, Defendants agreed to pay Lemon $1,500,000 with additional incentives

including performance threshold payments, a percentage of advertising revenue, and a percentage of

advertising revenue from content creators that Lemon referred to X. In exchange, Lemon agreed to provide Defendants one piece of long-form video content per week and ten pieces of short-form video content per month. (*Id.* at ¶¶ 25-26.) ***The alleged terms do not state that the agreement cannot be performed within one year***. (*Id.*) In other words, Lemon could have fulfilled his end of the bargain by providing video context to X in less than a year or exactly one year from the making of the contract. *See Choi v. 8th Bridge Capital*, 2018 U.S. Dist. LEXIS 118421, at *38 (C.D. Cal. July 16, 2018) (finding party could have fulfilled his end of the bargain by working for exactly one year).

### (b)   The Term Providing for Compensation Beyond One Year is Immaterial.

***Second***, X argues the contract cannot be performed within one year because X has to pay for "48 months, 10 percent of the net revenue that X receives once it exceeds $350,000 for content creators that Lemon refer[s]." (Dkt No. 13, X's Motion to Dismiss, at 8:17-18). However, in addition to conveniently excluding the qualifier "once it exceeds $350,000" from its motion, these terms do not clearly state that the agreement cannot be performed within one year because: **(a)** X may not achieve net revenue over $350,000 and **(b)** Lemon may not refer content creators. (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 24-26.)

Moreover, this argument is foreclosed by the California Supreme Court's decision in *White Lighting Co.*, *supra*, 68 Cal.2d 336, where the Court held that, if a contract can otherwise be performed in a year, the statute of frauds does not apply when ***"the compensation for the [plaintiff's] services is to be measured by their value to the [company] over a period of more than one year."*** *Id.* at 345. In other words, ***because this term in Lemon's contract simply provides "compensation [beyond] one year," it does not in itself convert the "contract into one which by its terms cannot be performed within a year."*** *Long*, *supra*, 2018 U.S. Dist. LEXIS 173778, at *6 (citations and quotations omitted). Separately, even if the statute of frauds did apply here (it does not), this provision can be disregarded as the statute of frauds does not apply to an entire contract if the court can separate those promises not falling within the statute of frauds from those that do. *White Lighting Co.*, *supra*, 68 Cal. 2d 336 at 345.

### (c)   X Otherwise Failed to Prove its Statute of Frauds Affirmative Defense.

***Third***, X's argument that Lemon does not allege the contract is in writing is a misapplication of the law. "[E]ven if the agreement falls within the statute of frauds (which has not been shown), there may be writings that would satisfy the statute." *Card v. Ralph Lauren Corp.*, 2018 U.S. Dist. LEXIS 204473, at

*3 (N.D. Cal. Dec. 3, 2018). Lemon alleges that X, through its "employees and agents, entered into an express agreement referred to as an exclusive content partnership deal with Lemon that was closed on or around January 8, 2024" after X engaged in a "series of negotiations with Lemon's agents." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 24, 93.) Reading these allegations in the light most favorable to Lemon, it is ascertainable that contract negotiations were done in writing. Thus, "[X has] not proved [its] statute of frauds affirmative defense as a matter of law." *Card*, *supra*, 2018 U.S. Dist. LEXIS 204473, at *3. (finding defendants failed to prove statute of frauds applies as a matter of law in a motion to dismiss).

### D.   Lemon Sufficiently Pleads His First Claim for Fraud (Misrepresentation).

To state a claim for fraud, Lemon must allege: (1) a misrepresentation; (2) knowledge of its falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *Hinesley v. Oakshade Town Center*, 135 Cal.App.4th 289, 294 (2005); *Lazar v. Sup. Ct.* (1996) 12 Cal.4th 631, 638.

### (1)   Lemon Sufficiently Pleads a Multitude of Actionable Misrepresentations.

***First***, Lemon specifies the time, place, and content of Defendants misrepresentations. *Browand v. Ericsson Inc.*, 2018 U.S. Dist. LEXIS 129263, at *20 (N.D. Cal. Aug. 1, 2018) (heightened pleading requirements require facts showing how, when, where, and to whom the representations were made).

Lemon alleges Musk induced him to enter a contract during a June 16, 2023 phone conversation when Musk told him: **(1)** ***"I want you on the [X] platform;"*** **(2)** *Lemon **"would have full authority and control over the work he produced even if disliked by Defendants;"*** and **(3)** ***"there would be no need for a formal written agreement or to 'fill out paperwork.'"*** (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 19).

Lemon also alleges Yaccarino and Wietz induced him to enter a contract with X during a December 14, 2023 in-person meeting when Yaccarino and Wietz told him that: **(4)** *Lemon **"had Defendants' full support;"*** **(5)** ***"Lemon would have full authority over his work;"*** **(6)** *Lemon **"should not have concerns about Defendants imposing on his work or not agreeing with anything he does."*** (*Id.* at ¶ 21).

### (a)   The Misrepresentations are Statements of Fact, Not Puffery.

***Second***, contrary to X's motion, these statements do not reflect "opinion," "belief," "judgment," or "puffery," but rather, are expressions of affirmative and definitive facts. These representations consist of "quantifiable, actionable misstatements that go significantly beyond "general assertions" and can be proven or disproven. *See Marin County v. Deloitte*, 836 F.Supp.2d 1030, 1039 (N.D. Cal. 2011) (puffery

reflects highly subjective, generalized statements); *United States v. Gay*, 967 F.2d 322, 329 (9th Cir. 1992) (puffery concerns expressions of opinion and not false statements of fact); *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Moreover, ***"[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury."*** *Furla v. Jon Douglas Co.*, 65 Cal.App.4th 1069, 1080-1081 (1998).

**(b)   The Misrepresentations are Statements of Past or Existing Facts.**

*Second*, X claims these statements do not involve past or existing facts, but rather, facts that are "forward-looking." (Dkt No. 13, X's Motion to Dismiss, at 12:17-24); *Cavender v. Wells Fargo*, 2016 U.S. Dist. LEXIS 120176, at \*4 (N.D. Cal. Sept. 6, 2016) (plaintiff must allege a false representation as to a past or existing material fact to state an action for fraud) ***However, X's "characterization of these facts as 'future events' is not convincing. . . . The verb 'would' states a present condition, not a future possibility."*** *Ahn v. Scarlett*, 2017 U.S. Dist. LEXIS 49797, at \*8 (N.D. Cal. Mar. 31, 2017).

**(c)   Alternatively, the Misrepresentations are Actionable as False Promises.**

*Third*, even if the representations concern facts about the future, they are still actionable as false promises, which is a type of intentional misrepresentation. *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip.*, 868 F.Supp.2d 983, 995 (E.D. Cal. 2012). "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar*, *supra*, 12 Cal.4th at 638 ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.")

**(d)   Alternatively, the Misrepresentations are Actionable as Special Opinions.**

*Fourth*, even if the representations were deemed opinions (they are not), "a false statement of opinion fraudulently made may form the basis of an action, as where the party making it possesses superior knowledge or special information regarding the subject-matter of the representation." For example, in *Union Flower Mkt. v. Southern Cal. Flower Mkt.* (1938) 10 Cal. 2d 671, the Supreme Court reversed a trial court's judgment on the pleadings in an action based on a promise made without any intention of performing it, holding that the defendants' representations, ***including a statement of opinion, were actionable***. *Id.* at 676-677. The Court held that statements of opinion made by defendant's corporate officers may be actionable because "directors, officers, and holders of a large financial interest in the

corporate defendant, had superior means of ascertaining and influencing the views of the corporation's members concerning" a contract, thus holding them to a higher standard of knowledge. *Id.*

As a result, because Musk (X's CFO and Secretary), Yaccarino (X's CEO), and Weitz (X's Head of Content, Talent, Brand Sales) were the individuals making these representations, they are actionable even if opinions because they possess superior knowledge and special information that was relied upon by Lemon. (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 2(b), 3, 4, 26, 27, 43); *Thrifty Payless v. Americana at Brand*, 218 Cal.App.4th 1230, 1241 (2013) ("statement couched as an opinion, by one having special knowledge of the subject, may be treated as an actionable misstatement of fact").

### (2)   Lemon Sufficiently Pleads Knowledge of Falsity (Scienter).

For the second element, Lemon must allege that X knew the representations were false when they were made or that X made the representations recklessly and without regard for their truth. *Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 974; *Hodgson v. Roper*, 2020 U.S. Dist. LEXIS 155340, at *30 (E.D. Cal. Aug. 25, 2020).

***First***, Lemon alleges X's representations were: **(a)** "false when they were made . . . [k]nowing they would not be able to fulfill their representations and their falsity;" **(b)** "made [them] recklessly and without regard for their truth," and **(c)** "made them with the intent of inducing Lemon to rely on them [so] Defendants could publicize a partnership between X and Lemon, and . . . promote the X brand with Lemon's good name [and] likeness." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 29, 38, 50-53, 62-64.)

***Second***, as to Lemon's promissory fraud component, he must plead facts "from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings v. Glob. Eagle Entm't*, 117 F.Supp.3d 1092, 1108 (C.D. Cal. 2015). However, "the falsity of the promise and the knowledge of that falsity (scienter) are interconnected." *Beckwith v. Dahl*, 205 Cal. App.4th 1039, 1062 (2012). Here, Lemon alleges that Defendants "had no intention of performing these promises at the times they were made, and that Defendants have "not performed as promised." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 50-51). Thus, Lemon sufficiently pleads the scienter element. *P&H Casters Co. v. P&H Indus.*, 2024 U.S. Dist. LEXIS 152954, at *15 (C.D. Cal. Aug. 26, 2024), *citing Tyco Industries v. Sup. Ct.*, 164 Cal.App.3d 148, 156 (1985) ("[T]he falsity of that promise is **sufficiently pled with a general allegation the promise was made without an intention of performance**.").

### (3)   Lemon Sufficiently Pleads X's Intent to Defraud and Induce Reliance.

For the third element, a "fraudulent state of mind includes not only knowledge of falsity of the misrepresentation but also an intent to induce reliance on it." *Beckwith*, *supra*, 205 Cal.App.4th at 1062. An "intent to deceive is not an essential element of the cause of action for the required intent is an intent to induce action." *Id.*; *see In re Ronduen*, 2023 U.S. Dist. LEXIS 116337, at *36 (C.D. Cal. July 6, 2023); *Anderson v. Deloitte & Touche*, 56 Cal.App.4th 1468, 1477 ("The representation must have been made with the intent to induce plaintiff . . . to act in reliance upon the representation"). At the outset, Lemon sufficiently pleads Defendants made false representations with an intent to defraud and induce reliance:

> "62. Defendants intentionally made false representations and/or promises to Lemon knowing that he would rely on those false representations and/or promises to enter into an exclusive partnership deal with Defendants. . . ."

> "65. At the time Defendants made the aforementioned representations and/or promises to Lemon, Defendants made them with the intent of inducing Lemon to rely on them by entering into an exclusive partnership deal so that Defendants could *publicize a partnership between X and Lemon, and thereby associate and promote the X brand with Lemon's good name, likeness, and revered reputation*, in order to: (a) rehabilitate Defendants reputation; (b) promote the partnership and their association with Lemon . . . to sell advertisers on the X platform; and (c) otherwise profit and gain advantage commercially."

(Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 62, 65.)

**"As heightened pleading requirements do not apply to 'malice, intent, knowledge, and other conditions of a person's mind,' [Lemon] made specific, plausible allegations regarding [Defendants] knowledge and intent to survive this motion to dismiss**. *Zhai*, *supra*, 2018 U.S. Dist. LEXIS 223804, at *16, *citing* Fed. R. Civ. P. 9(b). However, even if more were required, Lemon satisfies this requirement:

**First, Defendants had a clear financial motivation to make these false representations to Lemon, which is probative of fraudulent intent and an intent to defraud**. *United States v. Harkonen*, 510 F.App'x.633, 636 (9th Cir. 2013) (a "clear financial incentive," in connection with other circumstantial evidence, is sufficient to support a jury verdict that defendant had specific intent to defraud"); *Galaxia Elecs. Co. v. Luxmax*, 2024 U.S. Dist. LEXIS 78060, at *26 (C.D. Cal. Mar. 6, 2024). Lemon alleges Defendants made knowingly false statements as part of a fraudulent scheme "to use Lemon's name, likeness, reputation, and identity to rehabilitate Defendants reputation," "draw in advertisers to the X platform," and "otherwise profit and gain advantage commercially" when Defendants were "under

intense criticism," "losing advertisers," and "advertising revenues [were declining] 60% year-over-year." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 15, 20, 29, 41.) After Lemon "expressed reservations about entering into a partnership with X due to the ongoing controversies surrounding the X platform," Defendants followed through with this fraudulent scheme by making false representations and promises "to induce Lemon to enter into an exclusive to a partnership deal with X." (*Id.* at ¶ 19.)

**Second**, X continuously "use[d] Lemon's name, likeness, identity, and reputation in marketing and promotional activities on Defendants' website, social media accounts, at promotional events, in meetings, and elsewhere for [X's] commercial benefit" while "***fail[ing] to issue a single payment to Lemon despite his requests pursuant to their express agreement***," even after Lemon "spent a considerable amount of time, effort, and resources in creating exclusive content for Defendants [by] spen[ding] hundreds of thousands of dollars creating his own media company." (*Id.* at ¶¶ 36, 38.) ***These actions carry an inference that X never intended to follow through on their representation***. *See, e.g., R Power Biofuels, LLC v. Chemex LLC*, 2017 U.S. Dist. LEXIS 47129, at \*31 (N.D. Cal. Mar. 29, 2017) (fraudulent intent found if actions taken after promise carry inference that person never intended to perform); *Thrifty-Tel v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 (misrepresentation implied by conduct); *Universal By-Products v. City of Modesto* (1974) 43 Cal.App.3d 145, 151 (same).

**Third**, in addition to contract nonperformance, the California Supreme Court has cited to "hasty repudiation[s] of [a] promise" and "failure[s] to attempt performance" as evidence of fraudulent intent. *R Power Biofuels, LLC*, *supra*, 2017 U.S. Dist. LEXIS 47129, at \*31, *citing Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985). Likewise, here, ***Lemon alleges that not only was there nonperformance of the contract and little to no attempt at performance, but that within one day of Lemon interviewing Musk, X made a hasty repudiation of his representations and promises*** by sending Lemon's agent in California a text message that his "contract [with Defendants] is cancelled." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 39.) Worse, this only happened "once Defendants were enriched and gained the benefits of using Lemon's name, likeness, identity, and reputation." (*Id.*)

**Fourth**, after cancelling the contract, "Defendants claimed they never entered into a partnership deal with Lemon, which demonstrates the fraudulent nature of Defendants' promises and representations in that they *had already* entered into an express agreement with Lemon and were instead violating that

partnership." (*Id.* at ¶ 40.) Moreover, "[c]lose to this time, Weitz spoke with Lemon by phone and told Lemon that Defendants were not going to pay him or follow through with the promises and representations made to him because there was no signed agreement, despite Musk previously representing to Lemon that there would be no need for a formal written agreement or to 'fill out paperwork.'" (*Id.* at ¶ 39.) Thus, ***Lemon alleges inconsistent testimony which is probative of Defendant acting with fraudulent intent***. *Galaxia Elecs. Co.*, *supra*, 2024 U.S. Dist. LEXIS 78060, at *26 (inconsistent testimony supports inference that a defendant acted with fraudulent intent).

### (4)   Lemon Sufficiently Pleads Actual and Justifiable Reliance.

For the fourth element, Lemon must allege that he actually relied on a misrepresentation and was reasonable in doing so. *Curley v. Wells Fargo*, 2014 U.S. Dist. LEXIS 177338, at *23 (N.D. Cal. Dec. 23, 2014). Actual reliance occurs when a "representation has played a substantial part, and so has been a substantial factor, in influencing [a plaintiff's] decision," *Engalla*, *supra*, 15 Cal.4th at 977. It is "not necessary" that the reliance "be the sole or even the predominant or decisive factor in influencing his conduct." *Id.* Furthermore, for the reliance to be reasonable, "the plaintiff need only show that the misrepresentations were material, and that a 'reasonable trier of fact could infer reliance from such misrepresentations.'" *Sunrise Senior Living Mgmt. v. Midstone, Inc.*, 2022 U.S. Dist. LEXIS 181036, at *11 (C.D. Cal. Sep. 30, 2022), *quoting Engalla*, 15 Cal.4th 951 at 977.)

***First***, Lemon specifies that he actually and reasonably relied on X's misrepresentations:

> "26. . . . Lemon entered into this exclusive partnership deal in reliance upon Defendants' material representations and promises referenced above. Lemon would not have agreed to enter into this exclusive partnership deal with Defendants if he had known that Defendants would fail to deliver on these representations and promises."

> "27. Lemon, at the time the aforementioned promises and representations were made by Defendants and at the time he took the actions herein alleged, was ignorant of the falsity of Defendants' promises and representations and believed them to be true. In reliance on these representations, Lemon was induced to and entered this exclusive partnership deal with Defendants. . . ."

> "54. At all relevant times, Lemon was ignorant of the falsity of Defendants' representations and promises, and believed them to be true. In reliance on Defendants' representations and promises, Lemon was induced to and did enter into an exclusive partnership deal with X and spent a considerable amount of time, effort, and resources in creating exclusive content for Defendants. Had Lemon known the actual facts and intentions of Defendants, he would not have taken such action. Lemon reasonably relied on Defendants' misrepresentations and false promises, and Lemon's reliance was justified."

-18-

1   (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 26, 27, 54.)

2         **Second**, Lemon's reliance was also reasonable based upon the circumstances. *Dow v. Swain* (1899)

3   125 Cal.674, 683 (reasonableness should be judged based on the circumstances); *Seeger v. Odell* (1941)

4   18 Cal.2d 409, 415 (reasonableness includes situations where a defendant knows of a weakness and takes

5   advantage of it). Defendants made these false representations to Lemon "knowing that he was in a

6   particularly vulnerable and susceptible state" following his termination at CNN and "that the next step in

7   his career . . . was a pivotal one." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 21, 23.) Moreover, "Lemon was

8   rushed by Defendants into agreeing to the exclusive partnership deal [as] Defendants informed Lemon

9   that the terms of their offer would be withdrawn unless he attended the CES Conference [and] make a

10  social media post announcing their partnership to the public on the same day." (*Id.* at ¶ 27(b).)

11        **Third**, trust and confidence between parties is a factor when assessing justifiable reliance. *Hsieh v.*

12  *Xu*, 2016 U.S. Dist. LEXIS 197737, at *40 (C.D. Cal. Apr. 7, 2016). Thus, Lemon's reliance was also

13  justified because he knew "Yaccarino to be a successful, well-respected media executive . . . before

14  agreeing to join X as the CEO in or around May 2023." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶ 27(a).)

15        **Fourth**, X claims Lemon cannot prove justifiable reliance as a matter of law because he had a team

16  of agents during the negotiation process and relies on *Wilhelm v. Pray, Price, Williams & Russell* (1986)

17  186 Cal.App.3d 1324. However, this reliance is misguided and misleading. In *Wilhelm*, opposing counsel

18  in pending litigation met with the plaintiff, an 87-year-old, and made false representations that convinced

19  her to dismiss her pending litigation. *Id.* at 1328-1329, 1331. "While it may not be reasonable for a person

20  represented by counsel and engaged in litigation to rely on representations made by opposing counsel

21  about why they should drop their pending lawsuit, that is not the case here." *Medallion Film LLC v. Loeb*

22  *& Loeb LLP*, 100 Cal.App.5th 1272, 1294 (2024). Lemon and Defendants were not litigating against one

23  another and during the relevant period, there are no allegations to suggest the Parties were adversaries.

24  "As the situations here and in *Wilhelm* markedly differ, *Wilhelm* does not demonstrate that [Lemon] could

25  not justifiably rely on [Defendants] representations as a matter of law." *Id.*

26        **Fifth**, Defendants set forth other minor contentions as to why Lemon's reliance was not justifiable.

27  However, these are not suitable on a motion to dismiss because except "in the rare case where the

28  undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's

reliance is reasonable is a question of fact." *UMG Recordings, Inc.*, *supra*, 2015 U.S. Dist. LEXIS 192159, at *49, *quoting Alliance Mortg. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995)).

### E. Lemon Sufficiently Pled His Fourth Claim for Negligent Misrepresentation.

The essential elements for a claim of negligent misrepresentation are the same as intentional fraud, except the scienter requirement. *Chapman v. Skype*, 220 Cal.App.4th 217, 230-31 (2013). A claim for negligent misrepresentation does not require a plaintiff show that a defendant made an intentionally false statement, and instead requires a defendant making a misrepresentation of fact with "no reasonable grounds for believing the statement to be true." *Id.*; *see also Stockton Mortgage v. Tope* (2014) 233 Cal.App.4th 437, 458 (false promise does not support claim for negligent misrepresentation).

Lemon establishes the scienter requirement for his negligent misrepresentation claim because he alleges that Defendants made the representations set forth above "recklessly," "without regard for their truth," and "with no reasonable grounds for believing them to be truth." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 52, 64); *Galea v. Lincoln Nat'l Corp.*, 2013 U.S. Dist. LEXIS 203509, at *11-12 (S.D. Cal. Oct. 31, 2013) (holding that an allegation that a defendant made representations with "no reasonable ground for believing them to be true . . . satisfies the necessary state of mind for a negligent misrepresentation claim.") As a result, because Lemon has set met all the other elements of his negligent misrepresentation claim as set forth above, Lemon has sufficiently pled a claim for negligent misrepresentation.

### F. Lemon Sufficiently Pled His Third and Fourth Claims of Misappropriation.

To sufficiently plead a common law or statutory claim for misappropriation, a plaintiff must allege the following elements: (1) defendant's use of the plaintiff's identity; (2) appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). X only takes issue with the third and fourth elements in its motion.

#### (1) Lemon Did Not Consent to X's Use of His Name or Likeness.

*First*, X references Lemon appearing at a conference in January 2024 and a meeting in February 2024 and claims at Lemon's conduct "evinces consent for X to use his likeness." However, these disregard Lemon's explicit allegations that: **(a)** "Defendants knowingly and intentionally used Lemon's name, likeness, photo, reputation, and/or identity to promote, market, and advertise their products and

services;" **(b)** Defendant "did not have a license, authorization, or consent to use Lemon's name, likeness, image, photo, reputation, and identity when they knowingly and intentionally did so without his authorization or consent, which was improper based upon fraud;" and **(c)** any "consent or authorization . . . is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or Defendants' unclean hands." (Kirsh Decl., ¶ 2, Exh. 1, Compl., ¶¶ 81-84; *see also id.* at ¶¶ 71-75.)

*Second*, X's reliance on *People v. Harris*, 93 Cal.App.3d 103 (1979) to claim that is not affected even if obtained through fraud is incorrect and misleading. *Harris* was a criminal case where the court held that absent "statutory language to the contrary, whenever lack of consent is ***a necessary element of a crime***, the fact that consent is obtained through misrepresentation will not supply the essential element of nonconsent." *Id.* at 114. As a result, unlike the applicable authorities, *Harris* does not help here because it does not address the issue of consent obtained through fraud under tort claims of misappropriation:

> "***If the person consenting to the conduct of another is induced to consent*** by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced ***by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm***."

Rest. (2d) of Torts § 892B (1979).

Thus, to the extent there was any consent, Lemon's allegations make clear it was obtained through fraud, and such consent is invalid. *See, e.g., Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1060 (N.D. Cal. 2014); *Lightbourne v. Printroom* (C.D. Cal. 2015) 122 F.Supp.3d 942, 946 (signed writing permitting use of plaintiff's likeness can be undermined by facts that would "vitiate express legal consent"); *Cohen v. Facebook*, 798 F.Supp.2d 1090 (N.D. Cal. 2011) (scope of consent construed narrowly at the pleading stage); *Sanchez-Scott v. Alza Pharm.*, 86 Cal.App.4th 365, 377-78 (2001).

*Third*, whether "an individual consented to the use of [his] likeness is a question of fact for claims brought under California Civil Code § 3344." *Hall v. S. Beach Skin Care*, 2014 U.S. Dist. LEXIS 47065, at *9 (C.D. Cal. Apr. 2, 2014); *Fraley v. Facebook*, 830 F.Supp.2d 785, 805-806 (N.D. Cal. 2011) (finding plaintiff's consent is "a disputed question of fact" and "not proper grounds for dismissal").

### (2)   Lemon was Damaged Due to Defendants Misappropriation.

Under California Civil Code § 3344(a), "an injured party may recover either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized

use." *Orthopedic Sys., Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 547. "Injury to a plaintiff's right of publicity is not limited to present or future economic loss, but 'may induce humiliation, embarrassment, and mental distress.'" *Abdul-Jabbar v. Gen. Motors Corp.* (9th Cir. 1996) 85 F.3d 407, 416. Moreover, the misappropriation statute "can be read to presume that a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is 'injured as a result thereof.'" *Fraley*, *supra*, 830 F.Supp.2d at 806-807 (finding "courts generally presume that the fourth element of the applicable test has been established if there is sufficient evidence to prove the first three elements"). Here, Lemon adequately alleges damages as a result of the misappropriation:

**First**, Lemon suffered economic loss due to X misappropriating his name and likeness. (Kirsh Decl., ¶ 2, Exh. 1, Compl., at ¶¶ 86, 88.) "Lemon is a nationally recognized journalist who is paid to endorse products and services through advertisements and through his association with such products and services" and was damaged by being deprived that right. (*Id.* at ¶ 86.) Specifically, "Lemon was deprived of the monetary value of having his name, likeness, photo, reputation, and identity used by Defendants and therefore, was deprived of money to which he was entitled." (*Id.* at ¶ 86.) Moreover, Lemon is also entitled to recover the profits that X received from the unauthorized use, which would include advertising revenue that X obtained through the publicity associated with X announcing an exclusive partnership deal with Lemon and Lemon generating a wealth of traffic on the X platform. (*Id.* at ¶¶ 31-32.)

**Second**, Lemon also suffered emotional injury due to X's misappropriation of his name and likeness. (*Id.* at ¶¶ 83, 88.) Specifically, that Defendants "did not have a license, authorization, or consent to use Lemon's name, likeness, image, photo, reputation, and identity when it did so without his authorization or consent, which was improper based upon fraud and has operated to undermine years of Lemon's careful career planning" and further resulted in "emotional distress damages and loss of reputation and standing in the community." (*Id.*) This emotional injury is further magnified by the fact that Lemon had "reservations about entering into a partnership with X due to the ongoing controversies surrounding the X platform" that began after "Musk completed his move to purchase X" and "major companies suspended and decreased their advertising on X amid growing concerns." (*Id.* at ¶¶ 15, 19.)

### G.   Lemon Sufficiently Pled His Sixth Claim for Unjust Enrichment.

**First**, X argues that Lemon's unjust enrichment claim fails because it is not an independent cause

of action under California law. However, when a plaintiff alleges unjust enrichment, a court should "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015), *quoting Rutherford Holdings v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014). "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *Idc Logistics Inc. v. Dile Sols. LLC*, 2023 U.S. Dist. LEXIS 128050, at *47-49 (C.D. Cal. June 16, 2023) (citations omitted), *quoting McBride v. Boughton*, 123 Cal.App.4th 379, 388 (2004). Restitution may also be awarded when "the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Id.*

***Second***, despite X's argument to the contrary, Lemon alleges that X was enriched by the benefits and services he provided to X. The Complaint alleges that **(a)** "Lemon provided benefits and services to Defendants with an expectation that he would be fairly and fully compensated in return for providing those benefits and services;" **(b)** that "***once Defendants were enriched and gained the benefits*** of using Lemon's name, likeness, identity, and reputation, they reneged on their express agreement with Lemon and have failed to compensate him, citing to false pretenses for their breach of the partnership agreement; **(c)** that as "a result of the illegal and wrongful conduct alleged herein, Defendants have been and will be unjustly enriched at the expense of Lemon if they are allowed to retain the income, profits, gains, benefits, and other monies that Defendants illegally and/or wrongfully obtained at the expense of Lemon; **(d)** that "Lemon is entitled to restitution from Defendants;" **(e)** that "Defendants should be required to disgorge and return to Lemon all income, profits, gains, benefits, and other monies that Defendants illegally and/or wrongfully obtained at the expense of Lemon" and **(f)** to the extent necessary, pleads this claim "in the alternative." (Kirsh Decl., ¶ 2, Exh. 1, Compl., at 2:3-6, ¶¶ 96, 97, 100-101.)

Thus, to the extent this claim overlaps with Lemon's breach of contract claim, this Court should "construe[] the claim as pled in the alternative." *Hidden Empire Holdings*, *supra*, 2023 U.S. Dist. LEXIS 82247, at *32-34; *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Defendants contend that the Court should dismiss Plaintiffs' unjust enrichment claims because they have adequate remedies at law. The Court finds no basis for doing so. The Ninth Circuit has instructed district courts to construe claims for unjust enrichment under California law as quasi-contract claims.")

1  In addition, "to the extent the unjust enrichment claim is premised on [Defendants] receipt of [Lemon's]

2  services for which they failed to pay [him], [Lemon] clearly states a claim for unjust enrichment." *Id.*

3      **H.   Lemon's Claims Are Not Covered By Nor Invoke The Anti-SLAPP Statute.**

4      ***First***, as pled and contrary to X's motion, Lemon's claims do not depend on X featuring and/or

5  promoting Lemon on the X platform prospectively. For example, to date, Lemon continues to have an

6  account on the X platform and is entitled to post his content on the X platform.

7      ***Second***, a claim may be struck under the anti-SLAPP statute "only if the speech or petitioning

8  activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some

9  different act for which liability is asserted. *Wilson v. Cable News Network*, 7 Cal.5th 871, 890 (emphasis

10  in original). This case is fundamentally different from *Hunter v. CBS Broadcasting* (2013) 221

11  Cal.App.4th 1510, 1520, which concerned the decision to not feature a particular person on a network all

12  together. *Id.* This case concerns *breach of contract, fraud, misappropriating one's name, likeness and*

13  *reputation, and the failure to compensate* for professional services. (*See* Kirsh Decl., ¶ 2, Exh. 1, Compl.)

14  Though there is interest *from* the public in both Lemon and Musk, the business relationship between them

15  is not in the public interest. X seeks to invoke the protection of the Anti-Slapp statute "must show not

16  only that its speech referred to an issue of public interest, but also that its speech *contributed* to public

17  discussion or resolution of the issue" *Wilson*, *supra*, 7 Cal.5th at 900 (emphasis added). Here Musk's

18  statement to Lemon was made *in private* and X does not and cannot show they actually *contributed* to

19  any public discussion.

20      ***Second***, although cited to by X, *Collondrez v. City of Rio Vista,* (2002) 61 Cal.App.5th 1039, 1049

21  is not to the contrary and does not stand for the proposition asserted. *Collondrez* concerned a peace officer

22  who brought a lawsuit against the City of Rio Vista for publication of his personnel information and one

23  of his claims alleged a breach of contract based on this disclosure. *Id.* The Court of Appeal held that the

24  Anti-Slapp statute applied because the challenge *act,* the disclosing of the personnel file, was protected,

25  whether it was labeled a breach of contract or otherwise. *Id.* Therefore, this case actually supports Lemon

26  because Lemon is not challenging protected activity, only private tortious actions.

27      ***Third***, even if the Anti-Slapp statute applied (it does not), X's motion should still be denied. In the

28  Ninth Circuit, Anti-Slapp motions are evaluated on the same standard as a FRCP 12(b)(6) motion.

*Planned Parenthood v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018). The Anti-Slapp motion is therefore wholly duplicative of X's motion to dismiss and should be denied on this basis and as set forth above. "[W]hen a "complaint is both legally sufficient and supported by sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited," it is not subject to being stricken as a SLAPP. *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th at 820-821 (2002) (overruled on other grounds as stated in *Hart v. Darwish*, 12 Cal.App.5th 218, 226 (2017); *Navellier v. Sletten* 29 Cal.4th 82, 93 (2002). Because Lemon can show a likeliness of success on the merits, the Anti-Slapp motion should be denied. As the California Supreme Court has held, Anti-Slapp motions are not "immunity" from suit but only a requirement that "some minimal merit" to the suit must be shown before it is allowed to proceed. Lemon has made such a showing here for the reasons mentioned above. His lawsuit should therefore be allowed to proceed.

## I.   Leave to Amend Should be Granted if This Court is Inclined to Grant X's Motion.

"Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegations of different or additional facts." *Murdock v. Marolina Outdoor*, 2024 U.S. Dist. LEXIS 73100, at *5 (C.D. Cal. Apr. 22, 2024), *citing Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). In determining whether to grant leave to amend, a district court is guided by FRCP Rule 15, which provides that leave to amend a pleading "shall be freely given when justice so requires." *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990). "If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Lemon can add new facts to cure any deficiency, as further bases exist for his claims, and therefore Lemon respectfully requests leave to amend should the Court not be able to fully deny X's motion as pled.

## 7.   CONCLUSION.

Plaintiff, Don Lemon, respectfully requests that this Court rule on defendants pending motions because subject matter jurisdiction is a threshold issue. Alternatively, Lemon respectfully requests this Court deny defendant X Corp.'s motion to dismiss/strike, and if necessary, grant Lemon request for leave to amend any pleading deficiency in his operative Complaint.

1  Dated:  October 7, 2024                    SHEGERIAN & ASSOCIATES, INC.

2

3                                      By:    _____

4                                             Carney R. Shegerian, Esq.

5                                             Attorneys for Plaintiff,
                                               DON LEMON
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS AND MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

    I hereby certify that on October 7, 2024, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

Dated:  October 7, 2024               SHEGERIAN & ASSOCIATES, INC.

By:    _____
                    Carney R. Shegerian, Esq.

                    Attorneys for Plaintiff,
                    DON LEMON

PLAINTIFF'S OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS AND MOTION TO STRIKE

**LEMON v. MUSK, et al.**                          **USDC CASE NO.: 3:24-cv-06487-MMC**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I am an employee in the County of Riverside, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3764 Elizabeth Street, Riverside, California 92506.

On October 7, 2024, I served the foregoing document, described as **"PLAINTIFF DON LEMON'S OPPOSITION TO DEFENDANT X CORP.'S COMBINED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE,"** on all interested parties in this action as follows:

**Ari Holtzblatt, Esq.**
**Claire Bergeron, Esq, (pro hac vice)**
**WILMER CUTLER PICKERING**
    **HALE AND DORR LLP**
**2100 Pennsylvania Avenue NW**
**Washington, DC 20037**
**ari.holtzblatt@wilmerhale.com**
**claire.bergeron@wilmerhale.com**

**Noah S. Guiney, Esq.**
**WILMER CUTLER PICKERING**
    **HALE AND DORR LLP**
**One Front Street, Suite 3500**
**San Francisco, CA 94111**
**noah.guiney@wilmerhale.com**

☒     **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒     **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 7, 2024, at Riverside, California

_Delmy Garcia_
Delmy Garcia