IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON LEMON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ELON MUSK, et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-06487-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Before the Court are defendant X Corporation's ("X Corp.") "Motion to Dismiss Plaintiff's Complaint and Motion to Strike," and defendant Elon Musk's ("Musk") "Motion to Dismiss for Lack of Personal Jurisdiction, Improper Service, and Failure to State a Claim," both filed September 23, 2024. Also before the Court is plaintiff Don Lemon's ("Lemon") "Motion to Remand Case to State Court and Request for Attorney's Fees of $14,400.00 from Defendant Elon Musk, or in the Alternative, Request for Leave to Pursue Jurisdictional Discovery," filed October 2, 2024.

All said motions have been fully briefed. Having read and considered the papers submitted in support of and in opposition thereto, the Court rules as follows.[1]

---

[1] By orders filed October 22, 2024, and October 29, 2024, respectively, the Court

## BACKGROUND

Plaintiff Lemon is an American journalist who is best known for his previous work with CNN. (See Compl. at 1:5-6.) Defendant Musk is the majority owner of X Corp., as well as Chief Technology Officer (CTO) and Executive Chairman. (See Second Decl. of Nicole Hollander in Supp. of Def.'s Opp'n. to Mot. to Remand ("Second Hollander Decl.") ¶¶ 11, 17.)[2] Defendant X Corp. owns, operates and controls "X," the social networking platform formerly known as Twitter. (See Compl. ¶ 2.) Lemon is a resident of New York. (See Compl. ¶ 1.) Musk is a resident of Texas (see Compl. ¶ 2), and X Corp. is incorporated in Nevada (see id.). Non-party Linda Yaccarino ("Yaccarino"), Chief Executive Officer (CEO) of X Corp., is a resident of New York. (See Compl. ¶ 3.)

In April 2011, Twitter, Inc. moved its headquarters to 1355 Market Street, Suite 900, in San Francisco, California, which remained its headquarters upon Musk's acquisition of Twitter in October 2022, after which Twitter was renamed X. (See First Decl. of Nicole Hollander in Supp. of Def.'s Not. of Removal ("First Hollander Decl.") ¶ 3; Second Hollander Decl. ¶ 3.) On April 30, 2024, X Corp. executed a three-year commercial lease on property located in Bastrop, Texas (see First Hollander Decl. ¶ 5). On September 13, 2024, X Corp. assertedly closed its San Francisco office. (See Second Hollander Decl. ¶ 15.)

On August 1, 2024, Lemon filed suit in the Superior Court of California, County of San Francisco (see Not. of Removal at 2:3-6), alleging, under state law, claims for fraud, negligent misrepresentation, misappropriation of name and likeness, breach of contract,

---

took the matters under submission. (See Orders, Doc. Nos. 32, 39.)

[2] According to said declaration, Nicole Hollander has, since April 3, 2023, held the position of X Corp.'s Director, Real Estate and Workplace.

unjust enrichment, and violation of California Civil Code § 3344 (see Compl. ¶¶ 48-101), all arising out of a failed business relationship between Lemon and the above two defendants (see id.). On September 16, 2024, Musk timely removed the suit to this District. Shortly thereafter, the above three motions were filed. The Court first addresses the motion to remand.

**LEGAL STANDARD**

**A. Motion to Remand**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal removal jurisdiction is upon the party seeking removal," Emrich v. Toche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988), and there is a "strong presumption against removal jurisdiction," see Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation and citation omitted); see also Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996) (holding "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance") (internal quotation and citation omitted). "To determine whether the removing party has met its burden, a court may consider the contents of the removal petition and 'summary-judgment-type evidence.'" Tanious v. Gattoni, 533 F.Supp.3d 770, 775 (N.D. Cal. 2021) (quoting Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2007)).

**B. Local Defendant Rule**

"A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). For purposes of resolving the question of federal diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State…by which it has been

3

incorporated and of the State…where it has its principal place of business," see 28 U.S.C. § 1332(c)(1), the latter having been defined by the Supreme Court as a corporation's "nerve center," i.e., "the place where a corporation's officers direct, control, and coordinate the corporation's activities," see Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010). The nerve center is a single place within a state, and is often, but not always, a corporation's headquarters. See id. Although, in establishing the nerve center test, the Supreme Court did not list any particular factors to be considered, courts have, for example, looked to the location of key executives or officers, see Robertson v. GMAC Mortg., LLC, 702 F. App'x 595, 598 (9th Cir. 2017), the location of the corporation's CEO, see Pool v. F. Hoffman-La Roche, Ltd., 386 F. Supp. 3d 1202, 1221 (N.D. Cal. 2019), the responsibilities of the executives and officers, see id. at 1220, the location of the corporation's high-level decision-making as demonstrated by activities such as board meetings and various operations, including "marketing, sales, customer relations, strategic planning, financial control and review," see Pharmatech Sols., Inc. v. Shasta Techs., LLC, No. 14-CV-03682-BLF, 2015 WL 1802764, at *4 (N.D. Cal. Apr. 20, 2015), and legal forms and filings, see Malamed v. First W. Cap. Mgmt. Co., No. LACV1607735JAKPJWX, 2017 WL 1393023, at *3 (C.D. Cal. Feb. 24, 2017).

Remand under the local defendant rule is not a jurisdictional matter, see Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 936 (9th Cir. 2006) (holding local defendant rule is "a procedural, or non-jurisdictional, rule"), but the burden remains on the defendant to establish removal is proper, see Gaus v. Miles, Inc., 980 F.2d at 566 (holding "[t]he 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper").

**DISCUSSION**

Lemon seeks an order remanding the above-titled action to state court, on the

4

ground that the instant removal was improper under the local defendant rule.

**A. Remand**

In his notice of removal, Musk invokes federal diversity jurisdiction as the sole basis for federal jurisdiction. Lemon does not dispute diversity of citizenship, nor the sufficiency of the amount in controversy. (See Pl.'s Mot. to Remand at 4:3-5.) He does, however, contend X Corp. was a citizen of the state of California at the time the complaint was served and at the time of removal, the former, according to Lemon, being the only relevant date for purposes of determining citizenship under the local defendant rule. In response, Musk argues the only relevant date is the date of removal, at which time, according to Musk, X Corp. was a citizen of Texas.[3] In setting forth their respective positions, Lemon argues that, as of September 16, 2024, the date of removal, X Corp.'s principal place of business was still in San Francisco, California, whereas Musk argues that, as of no later than September 13, 2024, X Corp.'s principal place of business has been in Bastrop, Texas. As set forth below, the Court is not persuaded that, as of September 16, 2024, the California office no longer operated as X Corp.'s principal place of business.

To establish Bastrop, Texas, as X Corp.'s principal place of business, Musk, in both his notice of removal and opposition to Lemon's motion to remand, relies on the following: the above-referenced lease on property in Bastrop, Texas, executed by X Corp. on April 30, 2024 (see First Hollander Decl. ¶ 5), corporate forms and legal filings listing Bastrop, Texas, as X Corp.'s corporate address (see First Hollander Decl. ¶ 8;

---

[3] The Court need not resolve the parties' disagreement as to whether the date of service or date of removal governs citizenship under the local defendant rule, as use of the later date does not, as discussed herein, change the Court's ultimate determination.

Second Hollander Decl. ¶ 14), the residences of both Musk and CEO, Linda Yaccarino (see Def.'s Opp'n. at 12:1-6, 13:3-5), statements about the location and structure of X Corp.'s decision-making (see Second Hollander Decl. ¶¶ 4-8, 16-17), and the closing of the San Francisco office on September 13, 2024 (see Second Hollander Decl. ¶ 15).[4]  As set forth below, such items of evidence, whether considered individually or collectively, are insufficient to support a finding of Texas citizenship at the time of removal.

First, Musk's showing as to the lease essentially stops where it starts. Musk has not alleged, let alone submitted evidence showing, what operations or decision-making, if any, have taken place at the leased site, nor has he provided any details about the lease or the property to which it applies; indeed, there is no evidence that the property even has an office building on it.

Second, Musk points to X Corp.'s filing of a change of address form with the United States Postal Service on August 26, 2024, listing the Bastrop, Texas, address as its headquarters, and, on August 30, 2024, notifying its process server to make such change (see Second Hollander Decl. ¶¶ 12-13; id. Ex. 1), as well as ongoing efforts, assertedly commencing in July 2024, to change X Corp.'s corporate address on "company policies, terms of service, and third-party agreements" (see id. ¶ 14 & Exs. 2-6). Other evidence in the record, however, undermines the inference Musk asks the Court to draw therefrom. In that regard, although as noted, Musk relies on address changes assertedly commencing in July 2024, the earliest date of the documents submitted in support thereof is October 11, 2024 (see id. Exs. 2-6); moreover, in Answers

---

[4] Although, in addition to the above, Musk relies on a series of news articles purporting to report various announcements by Musk and Yaccarino regarding the closing of the California Office and an intent to move X Corp.'s headquarters to Bastrop, Texas, Lemon's hearsay objections to those articles (see Pl.'s Objections to Evidence in Opp'n. to Def.'s Not. of Removal ¶¶ 1, 4-7) are hereby SUSTAINED.

filed on August 8, 2024, in two separate lawsuits, X Corp. admitted "that its principal place of business is in San Francisco, California" (see Kirsh Decl. Exs. 4-5).  When viewed in the context of all the evidence, the forms and filings on which Musk relies are more consistent with a showing of preparation in advance of a headquarters transition rather than the transition itself.

Third, Musk's citation to his residency, which concededly is Texas, and Yaccarino's residency, which is not Texas, but rather New York, likewise fails to make a sufficient showing that Bastrop, Texas, became X Corp.'s headquarters prior to the date of removal. At the outset, the Court notes, it is undisputed that beginning in April 2011, until its asserted move in September 2024, a period of more than thirteen years, X Corp., initially as Twitter, established and maintained its headquarters at the San Francisco office. (See First Hollander Dec ¶ 3.) It is also undisputed that the San Francisco office remained X Corp.'s headquarters for a considerable period of time after both the acquisition by Musk (see Second Hollander Decl. ¶ 3), and Yaccarino's installation as CEO (see id. ¶ 6). Further, in an amended registration statement filed with the Iowa Secretary of State on September 13, 2024, and an amended registration statement filed with the Oregon Secretary of State on September 17, 2024, both signed by Musk personally, his official corporate address is listed as "1355 Market St., Suite 900, San Francisco, CA 94103." (See id. Ex. 1).

Fourth, although Musk has submitted evidence that, leading up to the date of removal, his time spent in the San Francisco office decreased (see id. ¶ 8), Musk provides no facts describing where he or Yaccarino, who as noted, is a resident of New York, not Texas, did conduct their work or what decision-making that work entailed, either prior to or after removal. Rather, Musk's primary evidence consists of broadly worded and conclusory statements, such as "the only people at X who are ultimately responsible for

7

executive, administrative, financial, human resources, and management decisions are Mr. Musk and Ms. Yaccarino" (see id. ¶ 16), and that "most major decisions on behalf of the company are made in Texas" (see First Hollander Decl. ¶ 12), which add little to the analysis. See Pool v. F. Hoffman-La Roche, Ltd., 386 F. Supp. 3d 1202 at 1221 (finding declaration averring corporate "decisions are made out of Little Falls" insufficient to show nerve center; noting "statement is entirely conclusory in nature"); Nestle USA, Inc. v. Inn Foods, Inc., 2017 WL 11665627, at *3 (finding relocation of CEO and CFO, along with contention that "they 'directed the company's overall activities,'" inadequate to establish principal place of business, absent "details of [corporation's] operations").

Similarly, Musk has offered no evidence as to where, at the time of removal, the great majority of X Corp.'s forty employees "at or above the Senior Director level companywide" (see Def.'s Opp'n. at 12:17), were based, nor does Musk provide any information as to their roles or responsibilities at such time. "Without an understanding of what each director or officer actually does for [the defendant] as a practical matter, where the nerve center of the company is cannot be determined." See Pool v. F. Hoffman-La Roche, Ltd., 386 F. Supp. 3d at 1220; see also Nestle USA, Inc. v. Inn Foods, Inc., 2017 WL 11665627, at *3 (finding lack of diversity jurisdiction where plaintiff offered no information about "the number and titles" of its officers other than CEO and CFO, "the nature of their roles in the company," or their "location.")

Fifth, without evidence of a functioning office and/or decision-making occurring in Bastrop, Texas, the asserted closing of X Corp.'s San Francisco office on September 13, 2024 (see Second Hollander Decl. ¶ 15), assumes a diminished role. Although Musk has

submitted evidence that on August 5, 2024, Yaccarino sent an email[5] to all X Corp. employees announcing X Corp.'s San Francisco office "would be closing 'over the next few weeks'" (see First Hollander Decl. ¶ 7), as well as evidence that "[a]ll X employees who previously worked out of that office (other than a small number of building security personnel and other non-executive functions) have transferred to other locations or are working remotely" (see Second Hollander Decl. ¶ 15), primary decision-making and operations may well have continued in San Francisco, albeit remotely, or may have been relocated to another office in California. Indeed, amended registration statements filed in mid-September 2024 with the Secretaries of State for California, Iowa, Oregon, and Louisiana, list the San Francisco office as X Corp.'s official mailing address (see id. Ex. 1),[6] and, Yaccarino, in her email announcement, informed all recipients that X Corp. would "work to transition to [its] new primary locations in the Bay Area," including offices in San Jose and Palo Alto (see Kirsh Decl. Ex. 31).

In sum, while X Corp.'s relocation may eventually be far enough along to establish a nerve center in Bastrop, Texas, Musk fails to meet his burden to show such nerve center was established as of September 16, 2024. See Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (holding "[t]he court resolves all ambiguity in favor of remand to state court.")

Accordingly, the Court finds X Corp. is a local defendant, rendering removal improper, and consequently the case will be remanded.

---

[5] Lemon's hearsay objection to said paragraph is hereby OVERRULED.

[6] The first two were filed on September 13, 2024, and the latter two on September 17, 2024, and September 19, 2024, respectively.

**B. Attorneys' Fees**

In connection with his Motion to Remand, Lemon seeks an award of attorneys' fees in the amount of $14,000.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances," however, "attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." See Martin v. Franklin Cap. Corp., 546 U.S. 132, 136 (2005). Further, "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." See Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008). As set forth above, a court's analysis under the local defendant rule is fact-intensive, and, here, the Court finds Musk's argument in support of removal was not wholly lacking an objectively reasonable factual basis.

Accordingly, Lemon's request for attorneys' fees is hereby DENIED.

**CONCLUSION**

For the reasons discussed above, Lemon's Motion to Remand is hereby GRANTED.

In light thereof, Musk's Motion to Dismiss and X Corp.'s Motion to Dismiss and to Strike are hereby DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: December 20, 2024

MAXINE M. CHESNEY
United States District Judge